STATE COURT OF CHATHAM COUNTY
STATE OF GEORGIA

133 MONTGOMERY STREET, SUITE 308, SAVANNAH, GEORGIA 31401
TELEPHONE: (912) 652-7224 • FACSIMILE: (912) 652-7229

| | |
|---|---|
| Brian Joseph Huffman, Esq.,<br>As Administrator of The Estate of<br>ELIUD MONTOYA-ARCOS, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>THE DAVEY TREE EXPERT COMPANY,<br>WOLF TREE, INC., MARJORIE L. CONNER,<br>CHRISTOPHER BRANCH, OSCAR CRUZ,<br>and PABLO RANGEL a/k/a PABLO<br>RANGEL-RUBIO,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO: STCV1801084<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

RECEIVED FOR FILING
STATE COURT CLERK
CHATHAM CO. GA
2018 JUL -3 AM 11:16
Brian K. Hart

SUMMONS

TO THE DEFENDANTS:

The Davey Tree Expert Company
c/o CT Corporation System, Registered Agent
289 South Culver Street
Lawrenceville, GA 30046-4805

Wolf Tree, Inc.
c/o CT Corporation System, Registered Agent
289 South Culver Street
Lawrenceville, GA 30046-4805

Marjorie L. Conner
8827 German Road
North Benton, OH 44449

Christopher Branch
586 E. Sixth Way
Greenville, FL 32331

Oscar Cruz
11011 Middleground Road
Apt., 11
Savannah, GA 31419

Pablo Rangel a/k/a Pablo Rangel-Rubio
Emanuel County Jail
769 Kite Road
Swainsboro, GA 30401

You are hereby summoned and required to file with the Clerk of said Court and serve upon Plaintiff's Attorney, whose name and address is:

Robert Bartley Turner, Esq.
Savage, Turner, Durham, Pinckney & Savage
102 East Liberty Street, 8th Floor
Savannah, Georgia 31401

an answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint.
Also served: Plfs 1st Interr to Defendants, Plfs 1st RPD to Defendants, Notices to Take Deposition of Conner, Branch, Cruz and Rangel.

This ___3rd___ day of _____July_____, 2018.

Brian K. Hart, Clerk of Court
State Court of Chatham County, Georgia

By: _____
Deputy Clerk, State Court of Chatham County Georgia

EXHIBIT
A

**General Civil and Domestic Relations Case Filing Information Form**

RECEIVED FOR FILING
CLERK
CHATHAM CO.GA

2018 JUL -3 AM 11: 01

☐ Superior or ☒ State Court of _Chatham_ _____ County

| For Clerk Use Only | | |
|---|---|---|
| Date Filed _07-03-2018_ | Case Number _Brian K. Hart_ | |
| MM-DD-YYYY | | |

**Plaintiff(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Huffman | Brian | Joseph | Esq. | |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |

**Defendant(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| The Davey Tree Expert Company | | | | |
| Wolf Tree, Inc. | | | | |
| Last | First | Middle I. | Suffix | Prefix |
| Conner | Marjorie | L. | | |
| Last | First | Middle I. | Suffix | Prefix |
| Branch | Christopher | | | |
| Last | First | Middle I. | Suffix | Prefix |

Plaintiff's Attorney _Robert Bartley Turner_   Bar Number _006440_   Self-Represented ☐

**Check One Case Type in One Box**

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☒ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☑ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_STCV1701873_ _____   _____
Case Number                        Case Number

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☑ Is an interpreter needed in this case? If so, provide the language(s) required. _Spanish_
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____

_____

Version 1.1.18

IN THE STATE COURT OF CHATHAM COUNTY
STATE OF GEORGIA

RECEIVED FOR FILING
STATE COURT CLERK
CHATHAM CO.GA

2018 JUL -3 AM 11: 17

*Brian K. Hart*

| | |
|---|---|
| Brian Joseph Huffman, Esq., ) | |
| As Administrator of ) | |
| The Estate of ELIUD MONTOYA-ARCOS, ) | |
| Deceased, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | CIVIL ACTION NO: _____ |
| ) | |
| THE DAVEY TREE EXPERT COMPANY, ) | |
| WOLF TREE, INC., MARJORIE L. CONNER, ) | |
| CHRISTOPHER BRANCH, OSCAR CRUZ, ) | |
| and PABLO RANGEL a/k/a PABLO ) | |
| RANGEL-RUBIO, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Brian Joseph Huffman, Esq., as the Administrator of the Estate of Eliud Montoya-Arcos, deceased, Plaintiff in the above-captioned case, and hereby files this Complaint against The Davey Tree Expert Company, Wolf Tree, Inc., Marjorie L. Conner, Christopher Branch, Oscar Cruz and Pablo Rangel a/k/a Pablo Rangel-Rubio, Defendants, showing this Honorable Court the following:

### I.    PARTIES, JURISDICTION AND VENUE

1.    Plaintiff is the Estate of Eliud Montoya-Arcos, deceased, by and through the Administrator of the Estate, Brian Joseph Huffman, Esq. A copy of the Letters of Administration are attached hereto as Exhibit A.

2.    Defendant The Davey Tree Expert Company (Davey Tree) is a foreign business entity organized and existing under the laws of the State of Ohio, with its principal place of business located at 1500 North Mantua Street, Kent, Portage County, Ohio 44240.

3.    Davey Tree can be served with process through its registered agent, CT Corporation System, 289 South Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805.

4.    Defendant Wolf Tree, Inc. (Wolf Tree) is a foreign business entity organized and existing under the laws of Tennessee, with its principal place of business located at 1500 North Mantua Street, Kent, Portage County, Ohio, 44240.

5.    Wolf Tree can be served with process through its registered agent, CT Corporation System, 289 South Culver Street, Lawrenceville, Gwinnett County, Georgia 30046-4805.

6.    Defendant Wolf Tree is a wholly owned subsidiary of Defendant Davey Tree.

7.    Defendant Marjorie L. Conner (hereinafter "Conner") is a citizen and resident of the State of Ohio, and can be served with process at 8827 German Church Road, North Benton, Ohio 44449. At all times relevant to this matter, Conner was a corporate officer of Defendant Davey Tree.

8.    Defendant Christopher Branch (hereinafter "Branch") is a citizen and resident of the State of Florida, and can be served with process at his residence, located at 586 East Sixth Way, Greenville, Madison County, Florida 32331.

9.    Defendant Oscar Cruz is a citizen and resident of Chatham County, Georgia, and can be served with process at his residence, located at 11011 Middleground Road, Apartment 11, Savannah, Georgia 31419. A photograph of Defendant Cruz is attached hereto as Exhibit B.

10. Defendant Pablo Rangel a/k/a Pablo Rangel-Rubio is a citizen of Mexico and, upon information and belief, can be served with process at The Emanuel County Jail, located at 769 Kite Road (Georgia Highway 57 West), Swainsboro, Georgia 30401.

11. The events giving rise to this cause of action took place in Chatham County, Georgia.

12. At all times relevant to this cause of action, Defendants Davey Tree and Wolf Tree continuously and systematically conducted business on a regular basis in Chatham County, Georgia, thereby purposely availing themselves of the privileges and benefits of doing business in Georgia, especially Chatham County.

13. This Court may exercise jurisdiction over the parties and subject matter of this action pursuant to O.C.G.A. § 9-10-91, as Defendants have committed tortious acts within the State of Georgia.

14. Venue is properly laid in this Court pursuant to the Georgia Constitution, Article 6, Section 2, Paragraph VI and O.C.G.A. § 14-2-510.

## II. FACTS

### Davey Tree & Wolf Tree's Illegal Workforce and the Fraud Upon Their Customer

15. Davey Tree and Wolf Tree are in the business of trimming trees along power lines for utility companies. Davey Tree formed Wolf Tree as a wholly-owned subsidiary in 2008, after purchasing the assets of Wolf Tree Expert Company.

16. After the asset purchase, Davey Tree then hired the Wolf Tree Expert Company employees to work for the newly-formed Wolf Tree.

17. Davey Tree purposefully chose not to use the U.S. Department of Homeland Security program, E-Verify, to determine the eligibility of Wolf Tree employees to work in the

United States. In fact, many of the individuals hired to work for Wolf Tree in 2008 were illegal aliens, and Davey Tree and Wolf Tree knew it.

18. In the Savannah area, Wolf Tree contracted with Georgia Power Company (Georgia Power) to provide tree-trimming services along Georgia Power's utility lines.

19. The Georgia Power contracts with Wolf Tree were very lucrative for both Davey Tree and Wolf Tree. In the past six years alone, Georgia Power paid over $20 million under the tree-trimming contracts with Davey Tree and Wolf Tree. Upon information and belief, Georgia Power made payments to Davey Tree and Wolf Tree for tree-trimming and other services through electronic transfers of money.

20. From 2008 through in or around August of 2017, a large majority of the Wolf Tree employees working on the Georgia Power contracts in the Savannah area were illegal aliens.

21. For each bid submitted and each contract signed by Wolf Tree and Davey Tree for the Georgia Power contracts during this time period, Davey Tree and Wolf Tree would time-and-again falsely and fraudulently certify and represent to Georgia Power that Davey Tree and Wolf Tree would verify the legality of their workforce. Upon information and belief, the false and fraudulent representations and certifications of Davey Tree and Wolf Tree were transmitted to Georgia Power through email, and through the U.S. Mail and commercial carriers.

22. Defendant Pablo Rangel, aka Pablo Rangel-Rubio (Rangel), was a Wolf Tree employee and the Supervisor of all Wolf Tree employees working in the Savannah area.

23. Rangel himself was an illegal alien, which was patently obvious from the false

- 4 -

identification documents within Rangel's personnel and I-9 files maintained by Davey Tree and Wolf Tree.

24.   Davey Tree and Wolf Tree placed Rangel in charge of hiring Wolf Tree employees in the Savannah area.  The Wolf Tree employees hired by Rangel on behalf of Davey Tree and Wolf Tree were largely illegal aliens.

25.   Rangel would often provide illegal-alien employees false and fabricated identification documents in exchange for money.  Those false and fabricated identification documents were then placed in the Davey Tree and Wolf Tree I-9 and personnel files, as cover for the true employment ineligibility of the illegal-alien Wolf Tree employees.

26.   Davey Tree and Wolf Tree knowingly and recklessly accepted as proof of eligibility for employment false documents or documents that did not match the identity of the Savannah-area workers presenting them.  Davey Tree and Wolf Tree also knowingly and recklessly accepted as proof of eligibility for employment in the Savannah area documents that reflected successive different names for a single person.

27.   Davey Tree and Wolf Tree, through Cruz and Rangel, would provide false and fictitious identification documents to Georgia Power in order to trick Georgia Power into issuing Georgia Power identifications to illegal-alien Wolf Tree employees.  Moreover, Wolf Tree and Davey Tree, through Rangel and Cruz, would purposefully not assign illegal-alien employees to work restricted-areas within the Georgia Power contracts, such as the Port of Savannah, knowing that such restricted areas would scrutinize the illegal-aliens' false and fictitious identifications.

28.   To pay the illegal-alien workforce, Rangel would direct Davey Tree to either mail

-5-

employee paychecks to his home address or direct-deposit employee paychecks into his bank accounts.   Rangel would then withdraw large amounts of cash from various financial institutions, which Rangel and his Assistant, Defendant Oscar Cruz (Cruz), would use to pay the illegal-alien workforce.   The monies wired from Davey Tree accounts to Rangel would be used, in part, to promote the unlawful harboring of illegal aliens and the fraud and deception upon Georgia Power.

29.   Cruz, a citizen of the United States, was aware that a large majority of Wolf Tree's Savannah-area workforce was illegal.

30.   Rangel abused the illegal aliens he hired to work for Wolf Tree.  In addition to charging illegal aliens for false and fabricated identifications, Rangel skimmed money out of their paychecks.

31.   To invoke fear among the Savannah area workforce, Rangel would travel in Wolf Tree trucks from site to site with firearms in his possession.

32.   As part of its contract with Georgia Power, Wolf Tree would periodically receive payments for removal and trimming work performed by its Savannah-area employees after extreme weather events, such as thunder storms and hurricanes.  Such storm work would often take place outside of the Savannah area.  During this storm work, Davey Tree and Wolf Tree would knowingly and recklessly house and transport a large number of its illegal-alien employees who were working storm sites outside of the Savannah area.

33.   Upon information and belief, payments by Davey Tree and Wolf Tree to house its illegal-alien workforce during storm work was made through electronic transfer of monies from Davey Tree bank accounts to various credit card accounts.

34.   In addition harboring illegal-alien employees during storm work, Davey Tree and Wolf
      Tree also participated in Rangel's harboring of the numerous illegal-alien employees at
      Rangel's residences, through the electronic transfer of numerous paychecks into Rangel's
      bank account.

### *Eliud Montoya-Arcos' Whistleblower Complaints*

35.   Eliud Montoya-Arcos (Montoya), deceased, was a United States Citizen, a husband and a
      father.  For over ten years, Montoya worked as a tree trimmer and team leader for Wolf
      Tree and its predecessor company on the Savannah-area Georgia Power contracts.

36.   Davey Tree and Wolf Tree's Whistleblower Reporting Policy provided that "Company
      employees [we]re required to report . . . all evidence of activity by a Company . . .
      employee . . . that may constitute . . . [a] violation of federal, state, provincial or local law
      [or] a violation of safety policies, laws or regulations that creates a potential or actual
      danger to the employee's or public's health and safety."

37.   In their Whistleblower Policy, Davey Tree and Wolf Tree guaranteed the protection of
      Whistleblowers against retaliation: "Any Company employee who in good faith reports
      such incidents will be protected from actual or threatened retaliation as a result of the
      disclosure of such reports."

38.   Davey Tree and Wolf Tree's Whistleblower Policy further guaranteed that Whistleblower
      reports would be investigated "promptly and thoroughly" and that "appropriate action"
      would be taken.

39.   As a member of Wolf Tree's Savannah-area crew, Montoya witnessed numerous
      violations of Georgia and federal law relating to the hiring of illegal aliens and Rangel's

mistreatment of same.

40.    In compliance with Davey Tree and Wolf Tree's Whistleblower Policy, Montoya contacted Davey Tree in March of 2016 to report illegal and dangerous conduct by his Supervisor, Rangel.

41.    Montoya reported the following in his 2016 whistleblower report: (a) that 80% of the Wolf Tree employees working the Savannah-area Georgia Power contract were illegal, including the Supervisor, Pablo Rangel; (b) that Rangel had social security numbers of actual U.S. citizens that were illegally used by illegal-alien Wolf Tree employees; (c) that Rangel used the names and social security numbers of employees that had left Wolf Tree for the illegal aliens then working for Wolf Tree; (d) that Rangel paid illegal-alien Wolf Tree employees in cash; and, (e) that many of the employees driving Wolf Tree trucks did not have valid licenses.

42.    In his 2016 whistleblower report to Davey Tree, Montoya stated he wished to remain anonymous.    Montoya also stated he intended to speak with the Department of Transportation and the Department of Labor about the illegal and dangerous conduct he had witnessed.

43.    Davey Tree and Wolf Tree's Whistleblower Policy required that Montoya's 2016 complaint of illegal conduct be investigated promptly and thoroughly; that appropriate action be taken; that Montoya's report be kept confidential; and, that Montoya would be protected against actual or threatened retaliation.

44.    In violation of Davey Tree and Wolf Tree's Whistleblower Policy, no investigation was conducted concerning Montoya's 2016 report of illegal and dangerous conduct.    Instead,

- 8 -

upon information and belief, Davey Tree and Wolf Tree told Rangel about Montoya's 2016 anonymous whistleblower report.

45.    A year later, in April of 2017, Montoya again contacted Davey Tree to report illegal and dangerous conduct, again in compliance with Davey Tree and Wolf Tree's Whistleblower Policy.

46.    Both orally and in writing, Montoya reported to Davey Tree and Wolf Tree the following in his April of 2017 whistleblower reports: (a) that most of Wolf Tree's Savannah-area workers were illegal; (b) that Wolf Tree's Savannah-area Supervisor, Pablo Rangel, would sell false identifications to the illegal-alien Wolf Tree employees; (c) that Rangel would pay the illegal-alien workforce in cash; (d) that Rangel would steal from Wolf Tree's illegal-alien workforce; and, (e) that Rangel allowed illegal aliens to operate Wolf Tree trucks without valid licenses.

47.    In his 2017 whistleblower reports, Montoya also informed Davey Tree and Wolf Tree that he had reported the illegal and dangerous conduct to the Georgia Department of Labor.

48.    Davey Tree and Wolf Tree's Whistleblower Policy required that Montoya's 2017 report of illegal and dangerous conduct be investigated promptly and thoroughly; that appropriate action be taken; that Montoya's report be kept confidential; and, that Montoya would be protected against actual or threatened retaliation.

### Protecting the Unlawful Criminal Enterprise through Threats, Intimidation and Murder

49.    Instead of promptly, confidentially and lawfully addressing Montoya's whistleblower reports of serious illegal and dangerous conduct, each of the Defendants above-named, aided and abetted by each other, engaged in a systematic effort to silence Montoya,

- 9 -

through threats, deception, intimidation, and eventually murder.

50.     During retaliatory efforts to silence Montoya, each of the Defendants were aware Montoya had reported the illegal and dangerous conduct to Georgia authorities, and eventually federal authorities.

51.     Immediately after receiving Montoya's April of 2017 written whistleblower report, Defendant Marjorie L. Conner (Conner), Davey Tree's General Counsel, Defendant Christopher Branch (Branch), Rangel's immediate supervisor, and others decided to provide Montoya's report to Rangel, in flagrant disregard of Davey Tree and Wolf Tree's Whistleblower Policy.

52.     Upon receiving Montoya's written whistleblower report directly from Branch, Rangel confirmed that he had provided Wolf Tree illegal-alien employees with false identifications in exchange for money.

53.     Rangel's admissions to Branch of serious illegal conduct were reported directly to Conner and others.

54.     At no point after either Montoya's 2017 (or 2016) whistleblower reports did Davey Tree or Wolf Tree advise Georgia Power that the Savannah area tree-trimming contracts were being performed predominantly by an illegal-alien workforce.  Instead, Davey Tree and Wolf Tree continued to deceive Georgia Power in order to fraudulently protect and ensure the receipt of millions of dollars from Georgia Power under the tree-trimming contracts.

55.     Despite Montoya's 2016 and 2017 whistleblower reports and actual knowledge of an illegal-alien workforce, Davey Tree and Wolf Tree continued funneling monies to transport and harbor their illegal-alien employees; and continued funneling payments to

their illegal-alien workforce through deposits into Rangel's bank accounts.

56. Instead of halting the illegal and dangerous conduct reported by Montoya, the Defendants' efforts were put toward silencing Montoya, the whistleblower.

57. After receiving a copy of Montoya's April 2017 whistleblower report, Rangel and Cruz called a meeting in early May of all of the Savannah-area Wolf Tree employees, including Montoya. During the meeting, Rangel read Montoya's whistleblower report aloud to the Wolf Tree employees, all the while threatening and intimidating Montoya.

58. Montoya immediately reported Rangel's threatening and retaliatory actions to Davey Tree and Wolf Tree, but there was no response. Branch, Conner and other Davey Tree and Wolf Tree officials were well aware of Rangel's threatening and retaliatory actions against Montoya, but they purposefully did nothing.

59. Rangel's retaliation against Montoya was sanctioned and aided by all of the Defendants, and was meant to deter and intimidate Montoya from making further reports to Davey Tree, Wolf Tree and government authorities.

60. In mid-May of 2017, Montoya asked to speak in private with Davey Tree's Regional Safety Manager, who was in Savannah inspecting Wolf Tree's Savannah-area workforce.

61. Montoya provided the Davey Tree Regional Safety Manager with a copy of his written April 2017 whistleblower report; he also identified for the Regional Safety Manager the Wolf Tree illegal-alien employees who were working under false names; and, he informed the Regional Safety Manager that company vehicles were being driven by unlicensed, illegal aliens.

62. Davey Tree's Regional Safety Manager was "stunned" and "blown away" by Montoya's

report.   He memorialized his conversation with Montoya, then contacted his own supervisor and Branch to determine what should be done.  Davey Tree's Regional Safety Manager was quickly told not to take any further action, except to forward his notes on the matter to Conner.

63.   Faced again with a decision of whether to halt the illegal and dangerous conduct reported by Montoya, the Defendants again chose to retaliate, threaten and intimidate.

64.   A few days after Montoya provided his whistleblower report to Davey Tree's Regional Safety Manager, Defendant Cruz cited Montoya with an "unsatisfactory work" employee violation notice.  In his more than ten years working for Wolf Tree and its predecessor, Montoya had never received an employee violation notice.

65.   The alleged violation was concocted by Rangel, Cruz and others. In reality, the employee violation notice to Montoya was issued in retaliation for his whistleblower reports, and was meant to deter and intimidate Montoya from providing additional reports to Davey Tree, Wolf Tree and government authorities.

66.   Upon information and belief, Conner and Branch attempted to falsely assure Montoya that his 2017 whistleblower reports were being taken seriously by Davey Tree and Wolf Tree.  Conner's and Branch's statements to Montoya were intentionally misleading, and were meant to cause or induce Montoya not to make further reports to Davey Tree, Wolf Tree and government authorities regarding Montoya's knowledge of illegal and dangerous conduct.

67.   With no action taken for over two months by Davey Tree or Wolf Tree to address the illegal and dangerous activities, Montoya provided directly to Conner in July of 2017

three signed statements by Wolf Tree illegal-alien employees.  The three statements again confirmed: (a) that Wolf Tree employees in the Savannah area were illegal; (b) that Rangel was providing multiple false identification documents to illegal-alien employees; and (c) that Rangel was stealing from illegal alien employees.

68.    Faced again with a decision of whether to halt the reported illegal and dangerous conduct, the Defendants yet again chose to retaliate against, threaten and intimidate Montoya, the whistleblower.

69.    Both Rangel and Cruz were provided the statements by the three Wolf Tree illegal-alien employees.  In response, Rangel and Cruz threatened at least two of the three illegal-alien employees that had provided the damning written statements.

70.    Within days of Rangel and Cruz' threats to illegal-alien employees, the Defendants again set their sights on retaliating against, and attempting to silence Montoya.  On August 16, 2017, Wolf Tree's Operations Manager, who was over all of the Wolf Tree employees in Florida, Georgia, Louisiana and Arkansas, traveled to Savannah and specifically targeted Montoya by suspending him three days for a false and fabricated "safe practice violation." Conner, Branch, Rangel and Cruz were all aware of Montoya's suspension based upon a false and fabricated violation.

71.    The Defendants' suspension of Montoya was in retaliation for his whistleblower reports, and was meant to deter and intimidate Montoya from making additional reports to Davey Tree, Wolf Tree and government authorities.

72.    After receiving the retaliatory suspension, Montoya informed Conner that he intended to report the illegal and dangerous conduct of Rangel, Davey Tree, Wolf Tree and others to

- 13 -

the U.S. Equal Employment Opportunity Commission (EEOC).

73. On Thursday, August 17, 2017, Montoya reported the illegal and dangerous conduct of Rangel, Davey Tree, Wolf Tree and others to the EEOC. A copy of the Charge of Discrimination, EEOC Form 5, filed by Eliud Montoya, is attached as Exhibit C.

74. After Montoya's August 17, 2017 report to the EEOC, each of the Defendants were aware that their previous efforts to mislead, threaten and intimidate had failed to silence Montoya.

75. On Friday, August 18, 2017, Rangel and Cruz informed the Savannah-area Wolf Tree employees that work for Saturday, August 19, 2017 had been canceled. The Wolf Tree employees in the Savannah area always worked Saturdays, and they were already far behind in meeting the requirements of the then-existing Georgia Power contract.

76. The next day, on August 19, 2017, Eliud Montoya was brutally murdered, shot in the back of the head twice, and once in the mouth.

### III. CAUSES OF ACTION

### COUNT 1
### *CIVIL RICO*
### *O.C.G.A. §16-4-4(a)*
### *(Acquiring or Maintaining Property through a Pattern of Racketeering Activity)*

77. Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

78. O.C.G.A. §16-14-4(a) provides, in part, "It is unlawful for any person, through a pattern of racketeering activity . . . to acquire or maintain, . . . real property, or personal property of any nature, including money."

79.  O.C.G.A. § 16-14-3(8) defines "pattern of racketeering activity" as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents . . . ."

80.  Under O.C.G.A. § 16-14-3(9)(A), racketeering activity "means to commit, to attempt to commit, or to solicit, coerce, or to intimidate another person to commit any crime which is chargeable by indictment under the following laws of" Georgia: crimes related to homicide; crimes related to bodily injury; crimes related to thefts; crimes related to influencing witnesses; crimes related to threatening witnesses; and, crimes related to identity fraud. See O.C.G.A § 16-14-3(9)(A)(iv), (v), (ix), (xv), (xxxiii) and (xxxvi).

81.  Under O.C.G.A. § 16-14-3(9)(A)(xxix), racketeering activity also "means to commit, to attempt to commit, or to solicit, coerce, or to intimidate another person to commit . . . [a]ny conduct defined as 'racketeering activity' under 18 U.S.C. Section 1961(1)(A), (B), (C), and (D) . . . ."

82.  Under 18 U.S.C. § 1961(1)(B), racketeering activity includes: mail fraud under 18 U.S.C. § 1341; wire fraud under 18 U.S.C. § 1343; money laundering under 18 U.S.C. § 1956; and, the use of false identification documents to fraudulently verify employment eligibility on 1-9 forms under 18 U.S.C. § 1546.

83.  Beginning in and around 2008 and continuing through August of 2017, the Defendants, with some joining later than others, accepted identification documents and other documents that authorized employment in the United States that the Defendants knew or

had reason to know were not lawfully issued for the bearer's use, were false and/or were obtained by false statements, in violation of 18 U.S.C. § 1546(a).

84.     Beginning in and around 2008 and continuing through at least August of 2017, the Defendants, with some joining later than others, used identification documents that Defendants knew or had reason to believe were false and/or not lawfully issued to the bearer to falsely verify the eligibility of the persons presenting them to work at Wolf Tree, and recording information from those documents on I-9 forms, in violation of 18 U.S.C. § 1546(b).

85.     Beginning in and around 2008 and continuing through at least August of 2017, the Defendants, with some joining later than others, obtained millions of dollars from Georgia Power by deceitful means and artful practice; that is: by falsely certifying and representing to Georgia Power that Davey Tree and Wolf Tree would verify the legality of their workforce on the Savannah-area contracts; by creating the impression of Georgia Power that the Wolf Tree workforce consisted of legal workers, which Defendants knew to be false; and, by failing to correct the false impression of Georgia Power that the Wolf Tree workforce consisted of legal workers; all done in violation of O.C.G.A. § 16-8-3 (Theft by Deception).

86.     Beginning in and around 2008 and continuing through at least August of 2017, the Defendants, with some joining later than others, having devised a scheme and artifice to defraud Georgia Power of millions of dollars through the hidden use of an illegal workforce, transmitted and caused to be transmitted in interstate commerce, wire communications such as money transfers and email communications, for the purpose of

executing the scheme and artifice to defraud Georgia Power, in violation of 18 U.S.C. § 1343 (Wire Fraud).

87.  Beginning in and around 2008 and continuing through at least August of 2017, the Defendants, with some joining later than others, having devised a scheme and artifice to defraud Georgia Power of millions of dollars through the hidden use of an illegal workforce, sent or caused to be sent by U.S. mail or commercial carrier items such as correspondence and contracts, for the purpose of executing the scheme and artifice to defraud Georgia Power, in violation of 18 U.S.C. § 1341 (Mail Fraud).

88.  Beginning in and around 2008 and continuing through at least August of 2017, the Defendants, with some joining later than others, willfully and fraudulently used and possessed counterfeit and fictitious identifying information concerning fictitious and real persons; that is: the false and fraudulent identification documents possessed by Davey Tree and Wolf Tree relating to Wolf Tree's Savannah-area illegal workforce; for the purpose of committing and facilitating the theft by deception upon Georgia Power, in violation of O.C.G.A. § 16-9-21 (Identity Fraud).

89.  Beginning in and around 2008 and continuing through at least August of 2017, Defendants Davey Tree and Wolf Tree conducted and attempted to conduct financial transactions involving the proceeds of unlawful activity; that is: wire transfers to Rangel and credit card companies involving the proceeds of theft by deception and mail and wire fraud; with the intent to promote the carrying on of certain specified unlawful activities; those are: mail and wire fraud and the unlawful harboring of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii); all done in violation of 18 U.S.C. §

- 17 -

1956(a)(1)(A)(i)(Money Laundering).

90.   In April of 2017, Montoya submitted a whistleblower report to Davey Tree and Wolf
      Tree.  Both orally and in writing, Montoya reported: (a) that most of Wolf Tree's
      Savannah-area workers were illegal; (b) that Wolf Tree's Savannah-area Supervisor,
      Pablo Rangel, would sell false identifications to the illegal-alien Wolf Tree employees;
      (c) that Rangel would pay the illegal-alien workforce in cash; (d) that Rangel would steal
      from Wolf Tree's illegal-alien workforce; and, (e) that Rangel allowed illegal aliens to
      operate Wolf Tree trucks without valid licenses.  Montoya also informed Davey Tree and
      Wolf Tree that he had reported the illegal and dangerous conduct to the Georgia
      Department of Labor.

91.   Instead of halting the illegal and dangerous conduct reported by Montoya, the
      Defendants' efforts were put toward silencing Montoya, the whistleblower.

92.   In or around May of 2017, in front of all of the Wolf Tree Savannah-area employees,
      Rangel, individually and as an agent of Wolf Tree and Davey Tree, indirectly and directly
      threatened Montoya's person and employment.  In so doing, Rangel, with the intent to
      deter and intimidate Montoya from making further reports to Davey Tree, Wolf Tree and
      government authorities, threatened to influence a witness in violation of O.C.G.A. § 16-
      10-93.

93.   On or about June 1, 2017, Cruz, individually and as an agent of Wolf Tree and Davey
      Tree, indirectly and directly threatened Montoya's employment by citing him with a false
      and retaliatory employee violation.  In so doing, Cruz, with the intent to deter and
      intimidate Montoya from making further reports to Davey Tree, Wolf Tree and

government authorities, threatened to influence a witness in violation of O.C.G.A. § 16-10-93.

94.     From on or about April of 2017 through August 19, 2017, Conner and Branch, individually and as agents of Davey Tree and Wolf Tree, attempted to falsely assure Montoya that his 2017 whistleblower reports were being taken seriously by Davey Tree and Wolf Tree.   Conner's and Branch's statements to Montoya were intentionally misleading, and were meant to cause or induce Montoya not to make further reports to Davey Tree, Wolf Tree and government authorities regarding Montoya's knowledge of illegal and dangerous conduct.  In so doing, Conner and Branch engaged in misleading conduct to influence a witness in violation of O.C.G.A. § 16-10-93.

95.     On or about August 16, 2017, an agent of Davey Tree and Wolf Tree, aided and abetted by Rangel, Cruz, Conner and others, indirectly and directly threatened Montoya's employment by suspending Montoya for three days based upon a false and retaliatory safety violation.  In so doing, Davey Tree and Wolf Tree, Rangel, Cruz and Conner, with the intent to deter and intimidate Montoya from making further reports to Davey Tree, Wolf Tree and government authorities, threatened to influence a witness in violation of O.C.G.A. § 16-10-93.

96.     On or about August 19, 2017, Rangel, individually and as an agent of Davey Tree and Wolf Tree, with malice aforethought, and with the intent to silence Montoya from further reporting the illegal and dangerous conduct to government authorities and others, caused the murder of Montoya, in violation of O.C.G.A. § 16-5-1.

97.     The Defendants engaged in the pattern of racketeering activity set forth in paragraphs 81

- 19 -

through 95 in order to acquire and maintain their interests in, directly and indirectly, money and other personal property; those are: payments from Georgia Power, salaries, bonuses and stock shares.

98. The pattern of racketeering activity engaged in by the RICO Defendants was in furtherance of schemes having the similar intents, results, accomplices, victims and methods of commission, and was for the common purpose of maintaining an illegal-alien workforce, defrauding customers, committing identity fraud, laundering the proceeds of their crimes, and silencing the Plaintiff from exposing their crimes.

99. By engaging in the pattern of racketeering activity set forth above, the Defendants have violated O.C.G.A. §16-14-4(a), which provides in part: "It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in . . . personal property of any nature, including money."

100. Plaintiff suffered injuries and damages by reason of the Defendants' violation of O.C.G.A. §16-14-4(a).

101. The Defendants' violation of O.C.G.A. §16-14-4(a) proximately caused the injuries and damages suffered by Plaintiff.

102. Plaintiff is entitled to recover threefold the actual damages sustained, as well as attorneys' fees and the costs of investigation and litigation.

103. In addition, Defendants' actions showed wilfull misconduct, malice, fraud, wantonness, oppression and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Plaintiff to

receive punitive damages sufficient to deter, penalize, or punish Defendants in light of the circumstances of the case.

## COUNT 2

### CIVIL RICO
### O.C.G.A. §16-4-4(b)
### (Participating in an Enterprise through a Pattern of Racketeering Activity)

104.   Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

105.   O.C.G.A. §16-14-4(b) provides, "It is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."

106.   O.C.G.A. §16-14-3(6) defines an "Enterprise" as "any person, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity; or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises . . . as well as other entities."

107.   From 2008 through at least August of 2017, the Defendants conducted and participated in an association-in-fact enterprise, with some Defendants joining the enterprise later than others.  The Defendants conducted and participated in the association-in-fact enterprise through the pattern of racketeering activity identified above in paragraphs 81 through 95.

108.   Plaintiff suffered injuries and damages by reason of the Defendants' violation of O.C.G.A. §16-14-4(b).

109.   The Defendants' violation of O.C.G.A. §16-14-4(b) proximately caused the injuries and

- 21 -

damages suffered by Plaintiff.

110. Plaintiff is entitled to recover threefold the actual damages sustained, as well as attorneys' fees and the costs of investigation and litigation.

111. In addition, Defendants' actions showed wilfull misconduct, malice, fraud, wantonness, oppression and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Plaintiff to receive punitive damages sufficient to deter, penalize, or punish Defendants in light of the circumstances of the case.

## COUNT 3

### *CIVIL RICO*
### *O.C.G.A. §16-4-4(c)*
### *(Racketeering Conspiracy)*

112. Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

113. From 2008 through at least August of 2017, the Defendants have endeavored to violate O.C.G.A. §16-14-4(a) and (b), in violation of O.C.G.A. §16-14-4(c), with some of the Defendants endeavoring to violate O.C.G.A. §16-14-4(a) and (b) later than others.

114. The Defendants have also conspired with each other, and others both known and unknown, to violate O.C.G.A. §16-14-4(a) and (b), in violation of O.C.G.A. §16-14-4(c), with some of the Defendants joining the conspiracy later than others.

115. The Defendants have committed overt acts, which include the acts of racketeering identified above, in furtherance of the conspiracy. These overt acts include violations of: O.C.G.A. § 16-8-3 (Theft by Deception); 18 U.S.C. § 1546 (Use of False Identifications);

- 22 -

18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 1341 (Mail Fraud); O.C.G.A. § 16-9-21 (Identity Fraud); 18 U.S.C. § 1956(a)(1)(A)(i) (Money Laundering); O.C.G.A. § 16-10-93 (Threatening and Influencing Witness); and, O.C.G.A. § 16-5-1 (Murder).

116.   Plaintiff suffered injuries and damages by reason of the Defendants' violation of O.C.G.A. §16-14-4(c).

117.   The Defendants' violation of O.C.G.A. §16-14-4(c) proximately caused the injuries and damages suffered by Plaintiff.

118.   Plaintiff is entitled to recover threefold the actual damages sustained, as well as attorneys' fees and the costs of investigation and litigation.

119.   In addition, Defendants' actions showed wilfull misconduct, malice, fraud, wantonness, oppression and an entire want of care that raises the presumption of conscious indifference to consequences and specific intent to cause harm, entitling Plaintiff to receive punitive damages sufficient to deter, penalize, or punish Defendants in light of the circumstances of the case.

## COUNT 4

### *Battery*

120.   Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

121.   Upon information and belief, Defendants put in place actions to the cause the death of Montoya.

122.   The conduct of the Defendants was the direct and proximate cause of Montoya's death.

## COUNT 5

*Assault*

123. Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

124. Defendants, through Cruz and Rangel, threatened Montoya with violence and had the apparent ability to perform said acts of violence.

## COUNT 6

*Negligence*

125. Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

126. Defendant Conner, in her role as corporate counsel for Davey and Wolf, received Montoya's whistleblower report on or around April 24, 2017.

127. Defendant Conner, through her employment as an officer and as corporate counsel for Davey and Wolf, had a duty to provide Montoya and others a safe work environment free from harassment and intimidation by company employees such as Branch, Rangel and Cruz.

128. Defendant Conner had a duty to adequately review and address Montoya's April of 2017 whistleblower reports, which referenced numerous illegal and dangerous activities.

129. After reviewing Montoya's whistleblower report, Conner was involved in providing the report to Rangel and/or Cruz for the purpose of taking steps to silence Montoya.

130. Defendant Conner failed to address the serious criminal and dangerous conduct outlined in Montoya's whistleblower reports.

131. Defendant Conner's forwarding of Montoya's whistleblower report to Rangel, who was

the subject of said report which outlined a litany of illegal and dangerous activities, breached the duty or ordinary care.

132.    Defendant Conner's failure to seriously address or adequately address the allegations in Montoya's whistleblower report and to simply forward the complaint to Rangel, breached the duty of ordinary care and acted as an acquiescence and encouragement of the above mentioned criminal actions by Defendants Wolf Tree and Davey Tree.

133.    It was foreseeable that Rangel and others would retaliate against Montoya upon learning of the whistleblower report that described Rangel's and others' illegal and dangerous activities.

134.    As a direct and proximate result of Defendant Conner's breach of the duty of ordinary care, Rangel, Cruz and others took retaliatory actions against Montoya, which ulitmately led to Montoya being brutally murdered.

## COUNT 7

### *Respondeat Superior*

135.    Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

136.    At all times relevant to this Complaint, Conner was an employee of Davey Tree.

137.    At all times relevant herein, Conner acted within the course and scope of her employment with Davey Tree.

138.    As such, Davey Tree is responsible for all negligent acts and omissions of Conner.

## COUNT 8

### *Negligence*

- 25 -

139.   Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

140.   As the Area Supervisor for Defendant Wolf, Defendant Branch had a duty to provide a safe workplace for Wolf employees including, but not limited to, Montoya.

141.   Defendant Branch had a duty to ensure that Montoya's whistleblower reports, which alleged multiple illegal and dangerous acts on behalf of Rangel and others, was adequately and sufficiently addressed.

142.   Branch had a duty to inquire into Montoya's whistleblower reports, and Branch had a duty to take appropriate action against Defendants Rangel and Cruz.

143.   Branch forwarded Montoya's anonymous whistleblower report to Defendants Rangel and Cruz.

144.   Branch breached the duty of ordinary care by failing to address Montoya's whistleblower reports.

145.   Branch breached the duty of ordinary care by forwarding Montoya's whistleblower report to Defendants Rangel and Cruz, as Montoya had accused Rangel and others of serious illegal and dangerous activities.

146.   It was foreseeable that Rangel and others would retaliate against Montoya upon learning of the whistleblower reports that described Rangel's and others' illegal and dangerous activities.

## COUNT 9

### *Respondeat Superior*

146.   Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if

fully restated herein.

147.   At all times relevant to this Complaint, Branch was an employee of Wolf Tree.

148.   At all times relevant herein, Branch acted within the course and scope of his employment
with Wolf Tree.

149.   As such, Wolf Tree is responsible for all negligent acts and omissions of Branch.

150.   For a period of years, Defendants Davey Tree and Wolf Tree maintained policies,
practices and customs of hiring illegal aliens as employees. Their actions, which led to
Montoya's death, were for the sole purpose of avoiding attention to their illegal practices.

### COUNT 10

#### *Negligent Hiring and Retention*

151.   Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if
fully restated herein.

152.   Davey Tree and Wolf Tree had a duty to exercise reasonable care in the selection of
employees to ensure that they were legal, competent, and qualified for the positions for
which said employees were hired.

153.   Defendants further had a duty, in the exercise of ordinary care, not to retain employees
who were not legal, competent, and qualified for the positions for which said employees
were hired.

154.   Defendants had a duty, in the exercise of ordinary care, not to retain employees who
committed such acts as described in Montoya's whistleblower reports.

155.   Davey Tree, Wolf Tree, Conner and Branch had a duty to use reasonable care to ensure
that Rangel, at the time he was hired and throughout his employment, was competent and

- 27 -

legal to act as a manager of work crews.

156. Throughout his employment with Davey Tree and Wolf Tree, Rangel was continuously engaged in criminal activity.

157. Rangel was an illegal alien and thereby not legally permitted to employment in the United States.

158. Defendants Davey Tree, Wolf Tree, Branch and Conner knew or reasonably should have known that Rangel was not legally permitted to employment in the United States.

159. Defendants Davey Tree, Wolf Tree, Branch and Conner knew or reasonably should have known that Rangel had engaged or was engaging in serious criminal activity relating to his employment with Wolf Tree and Davey Tree.

160. Defendants Davey Tree, Wolf Tree, Branch and Conner breached the aforementioned duties by failing to ensure that Rangel was legally permitted to be employed in the United States prior to hiring him to manage crews of workers.

161. Defendants Davey Tree, Wolf Tree, Branch and Conner breached the aforementioned duties by continuing to employ Rangel after Montoya's whistleblower reports.

162. Defendants Davey Tree, Wolf Tree, Branch and Conner breached the aforementioned duties by continuing to employ Rangel and Cruz after Montoya's EEOC complaint.

163. Defendants Davey Tree, Wolf Tree, Branch and Conner's failure to investigate Rangel's background prior to or during his employment, when said Defendants gave him control over numerous employees and employee payroll, constitutes negligence in both the hiring and retention of Rangel.

164. Defendants Davey Tree, Wolf Tree, Branch and Conner's retention of Rangel as an

- 28 -

employee when said Defendants knew or reasonably should have known that he would retaliate against Montoya for his whistleblower reports, and reports to Georgia and federal authorities and the EEOC.

165.   It was foreseeable that Rangel and others would retaliate against Montoya upon learning of the whistleblower reports that described Rangel's and others' illegal and unlawful activities.

166.   For a period of years, Defendants Davey Tree and Wolf Tree maintained policies, practices and customs of hiring illegal aliens. Their actions, which lead to Eliud Montoya's death, were for the sole purpose of avoiding attention to their illegal activities.

## COUNT 11

### *Survival Claim*

167.   Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

168.   Plaintiff brings this action to recover damages for personal injury, pain and suffering inflicted upon Montoya prior to his death, together with funeral, burial and other expenses incurred in connection with the final rites and burial of Montoya.

## COUNT 12

### *Attorney's Fees*

169.   Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

170.   Defendants' have acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

## COUNT 13

### *Punitive Damages*

171. Plaintiff renews and reaffirms each and every allegation of all preceding paragraphs as if fully restated herein.

172. The acts and omissions of the Defendants set forth above show willful misconduct, wantonness, and/or the entire want of care which would raise the presumption of conscious indifference to the consequences.

173. The acts and omissions of the Defendants demonstrate a specific intent to harm Montoya.

**WHEREFORE**, Plaintiff prays:

(a)     That service be perfected upon Defendants as provided by law;

(b)     That Plaintiff has judgment against all Defendants in an amount to be proved at trial;

(c)     That, under RICO Counts 1 through 3, Plaintiff recover threefold the actual damages sustained, as well as attorneys' fees and the costs of investigation and litigation;

(d)     That Plaintiff be awarded attorneys fees;

(e)     That Plaintiff be awarded punitive damages; and,

(f)     That Plaintiff have such other relief as this Court deems just and proper.

Respectfully submitted this, the _____ day of July, 2018.

Robert Bartley Turner
Georgia Bar No. 006440
James D. Durham

- 30 -

Georgia Bar No. 235515
William Jarrell Degenhart
Georgia Bar No. 384018

**SAVAGE, TURNER, DURHAM, PINCKNEY & SAVAGE**
102 East Liberty Street, 8th Floor
P. O. Box 10600
Savannah, Georgia 31412
(912) 231-1140

John Charles Watts, Jr.
Georgia Bar No. 741960

**WATTS & WATTS**
145 Habersham Street
Savannah, Georgia 31401
(912) 234-1482

*Attorneys for Plaintiffs*

- 31 -

# IN THE PROBATE COURT
## COUNTY OF CHATHAM
## STATE OF GEORGIA

IN RE: ESTATE OF )
      **ELIUD MONTOYA-ARCOS,** )    **ESTATE NO. P17-01543-PB**
            **DECEASED** )

## LETTERS OF ADMINISTRATION
(Bond, Inventory and Returns Required)

At a regular term of Probate Court, this Court granted an order allowing **BRIAN JOSEPH HUFFMAN, JR.** to qualify as Administrator(s) of the above-named Decedent, who was domiciled in this County at the time of his or her death or was domiciled in another state but owned property in this County at the time of his or her death, and that upon so doing, Letters of Administration be issued to such Personal Representative(s).

THEREFORE, the said Administrator(s), having taken the oath of office and complied with all necessary prerequisites of the law, is/are legally authorized to discharge all the duties and exercise all powers of Personal Representative(s), according to Georgia law.

IN TESTIMONY WHEREOF, I have hereunto affixed my signature as Judge of the Probate Court of said County and the seal of this office this **2nd** day of **July, 2018**.



_____
Judge of the Probate Court

*NOTE: The following must be signed if the Judge does not sign the original of this document:*

Issued by:

_____
Chief Clerk of the Probate Court



*(SEE INSTRUCTIONS)*

**EXHIBIT**
**A**



EXHIBIT

B

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 415-2017-00854 |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Eliud A. Montoya | | 1975 |

| Street Address | City, State and ZIP Code |
|---|---|
| 59 Village Drive, Garden City, GA 31408 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| DAVEY TREE EXPERT COMPANY | 500 or More | (800) 447-1667 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1300 North Mantua,  Kent, OH 44240 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 04-24-2017   Latest 08-16-2017

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I was hired in 2006-2007, as a Driver & Foreman. I currently hold the Trimmer position. On April 24, 2017, I filed an internal written complaint regarding: intimidation; wages; unsafe workplace; retaliatory actions from management and a hostile work environment at the work-place affecting me and other Hispanic employees. In May 2017, Pablo Rangel, Supervisor, met with Margie Conner, Esq., Legal Representative; H.R./Employee Relations, for Respondent. Mr. Rangel returned to the work-site intimidating me and the rest of the Hispanic workers, approximately 30 employees), stating that nothing was to become of my complaint and made a mockery of the situation, belittling me in front of the other employees. He wanted to teach all a lesson whereas if we complained of the unlawful employment practices, we would be retaliated against. During my tenure, I performed successfully, until my complaint, where I am being accused of false safety violations and a paper trail is being produced to get rid of me .Oscar Cruz, current supervisor, was put under Mr. Rangel's supervision and was named our direct supervisor. On June 1, 2017, I received a written reprimand for alleged safety violations. Again on August 16, 2017, I received another false safety-violation reprimand and a three-day suspension without pay. On August 16, 2017, I contacted Ms. Conner to update her of the current and on-going situation at the work-place.

| | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Aug 17, 2017 _____ Date          Charging Party Signature | RECEIVED SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) AUG 1 7 2017 |

SCANNED
10/3/17

EEOC-SLO

EXHIBIT
C

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 415-2017-00854 |
| | | and EEOC |

_State or local Agency, if any_

II. Neither management nor Ms. Conner, are given any reason for the above-mentioned actions. Ms. Conner has continuously told me since April through the present, that my complaint is under investigation. No reason has been given for failing to take quick and appropriate action regarding my complaint and management's ill treatment of Hispanic workers.

III. I believe that I have been discriminated against because of my national origin, Hispanic/Mexican and in retaliation for opposing unlawful employment practices at the work-place, in violation of Title VII of the Civil Rights Act of 1964, as amended.

IV. I believe that Hispanic employees, as a class, are being discriminated against because of their national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Aug 17, 2017    X _Signature_<br>Date      Charging Party Signature | RECEIVED<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)    AUG 1 7 2017<br><br>EEOC-SLO |