## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| BRIAN J. HUFFMAN, as Administrator of the Estate of ELIUD MONTOYA-ARCOS, Deceased, | ) ) ) | |
| | ) | Case No. 18-cv-00184 |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Hon. R. Stan Baker |
| | ) | |
| THE DAVEY TREE EXPERT COMPANY; WOLF TREE, INC.; MARJORIE L. CONNER; CHRISTOPHER BRANCH; OSCAR CRUZ; and PABLO RANGEL, also known as Pablo Rangel-Rubio, | ) ) ) ) ) ) | **Oral Argument Requested** |
| *Defendants.* | ) ) | |

## THE DAVEY TREE EXPERT COMPANY AND WOLF TREE, INC.'S
## REPLY IN FURTHER SUPPORT OF THEIR
## MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants The Davey Tree Expert Company ("Davey Tree") and Wolf Tree, Inc. ("Wolf Tree," and collectively, "Company Defendants"), by and through their undersigned counsel, respectfully file their Reply in Further Support of their Motion to Dismiss the Amended Complaint (ECF No. 144) ("Motion to Dismiss" or "MTD"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The Plaintiff's improper attempt to overreach, misuse and to weaponize the RICO statute in a tragic but otherwise unexceptional state civil tort case is unsupported by the law in this Circuit and this District, and the Amended Complaint should be dismissed.

As the Motion to Dismiss makes clear, the Plaintiff's failure to sufficiently plead ***any*** predicate act that was purportedly ***committed by*** the Company Defendants that had a ***direct nexus***

to the injuries suffered by Eliud Montoya is *fatal* to his RICO claims.  The Plaintiff's Consolidated Response in Opposition to Defendants' Motions to Dismiss (ECF No. 157) ("Response" or "Resp.") only serves to further *confirm* that – on this record – he has not marshaled any set of facts to sufficiently overcome this threshold hurdle.

Rather, a careful and searching examination of the plain text of the Amended Complaint (ECF No. 123) ("Complaint" or "Compl.") clearly shows that the Plaintiff has *failed* to plead the requisite predicate acts that have allegedly harmed Mr. Montoya.  And further, has also failed to show that any such acts are the crimes that Plaintiff purports them to be.

At bottom, in his Response the Plaintiff has failed to provide the Court with any response that would act to *counter* the Company Defendants' methodical takedown of those predicate acts. Which set out the required elements, and exposed the absence of any factual allegations or other language that would satisfy the requirement that they be *sufficiently pled*.  Once the Court undertakes the analysis – to "scrutinize proximate causation at the at the pleading stage" and to "carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations" – it will similarly conclude that the Plaintiff has not and cannot plead a predicate act by the Company Defendants that caused the specific injuries that are alleged here.  *Corcel Corp. v. Ferguson Enters., Inc.*, 551 F. App'x 571, 575 (11th Cir. 2014).

The vast remainder of the Plaintiff's Response is based on his erroneous premise that the Company Defendant's reliance on federal RICO cases is somehow misplaced, because (he claims) Georgia RICO is different from federal RICO.   But the Eleventh Circuit has concluded time and time again that "[t]he federal and Georgia RICO acts are essentially identical, meaning [a] failure to state a claim under the federal act warrants dismissal under the Georgia act."  *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1220–21 (11th Cir. 2020) (citation and quotation omitted); *Feldman*

*v. Am. Dawn, Inc.*, 849 F.3d 1333, 1342 (11th Cir. 2017); *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 706 (11th Cir. 2014).  This is particularly true in view of the fact that the Georgia RICO statute was explicitly *modeled* off of its federal counterpart.  And it is therefore unsurprising that Georgia courts have routinely applied and relied on federal RICO precedent – particularly in cases where, as here, there is a clear *absence* of any specific Georgia authority to the contrary.

Thus, while the Plaintiff erroneously claims that Georgia RICO has somehow dispensed with the requirement that – to prove a Section 4(b) claim – a "RICO person" must be distinct from a "RICO enterprise" – he has failed to provide any credible authority that would support any such argument.  He cites but a single Georgia appellate case, dating from 1994 – *Reaugh v. Inner Harbour Hosp. Ltd.*, 214 Ga. App. 259 (2014) – to argue that the Company Defendants can be considered both a "RICO person" *and* the "RICO enterprise."  Because, he claims, they are the *beneficiaries* of racketeering activity.

But that's simply *not* what the *Reaugh* court said.  Because in its analysis, *Reaugh* not only relied on very dated *federal* precedent – but more importantly, it did not actually address the particular RICO provision – Section 4(b) – that's at issue here.

Simply put, while *Reaugh* has *alluded* to differences between federal and Georgia RICO claims, *it does not squarely address* the issue of whether or not Georgia RICO law has eliminated "distinctness" in asserting a Section 4(b) claim.  Because in the *absence* of any such clear and valid authority, the Plaintiff is required to allege that the Company Defendants are *distinct* from the purported RICO *enterprise* to which they were supposedly participants.  The Complaint, however, improperly *blurs* that critical distinction by alleging that the Company Defendants were – in sum and substance – one and the same as the purported RICO *enterprise*.  Ans in so doing, has failed to meet the applicable standards that his RICO allegations be adequately pled.

3

The Plaintiff also erroneously relies on the purported differences between the state and federal RICO statutes to argue that – in support of his Section 4(a) claim – he is not required to plead a distinct "acquisition" injury.  But again, he has failed to identify even a single case that dispenses with that requirement, or which has held that Georgia RICO is materially different from its federal analog on the issue of *acquisition injury*.  And, in fact, the plain language of both the Georgia and the federal statutes – which are virtually *identical* to each other, and which focus on the acquisition of a *property interest* – only confirm that they should be interpreted *consistently*.

And as to the RICO *conspiracy claim*, the Plaintiff's Response makes no effort to counter the Company Defendants' argument that it is insufficiently pled in *wholly conclusory terms* – leaving the Court and the defendants to guess as to which of the alleged *acts* were committed by which of the *parties*.  The Plaintiff's inadequate and fatally flawed response is simply that a conspiracy makes each of its participants responsible for the acts of their co-conspirators.  And he asserts that he is not actually required to specify his allegations.  But the case law is clear that it is mandatory that the Plaintiff must still specify *whose* acts he seeks to impute onto the Company Defendants.  And his passing citations to generic principles of conspiracy law do not remedy the facial defects in his Complaint.  Having failed to specify who committed which acts – and having failed to satisfy even the most basic standards as to notice pleading – the conspiracy claim must also fail.

And here – with a Complaint that is plainly lacking in any plausible or sufficient basis to advance the RICO claims – the Court could only consider the remaining state-law negligence claims in the event that it was to invoke its supplemental jurisdiction.  But the Eleventh Circuit has *discouraged* courts from doing so.  And here – where the same negligence claims have already been litigated by these very same lawyers in a companion case in Chatham County, Georgia *for*

4

*the past six years* – there is even less reason to ever exercise such supplemental jurisdiction.  And even *if* this Court were to opt to exercise supplemental jurisdiction over the state-law tort claims, the Plaintiff's insufficient pleadings and his utter failure to allege even the most basic facts in support of his claims as to intentional infliction of emotional distress, as to assault, and as to battery – would warrant the dismissal of these claims.

For these and the reasons that follow, the Company Defendants respectfully request that this Court grant their Motion to Dismiss the Complaint with prejudice.

## ARGUMENT

### I.     The Complaint Fails to Meet the Standards for Pleading "Proximate Cause".

Plaintiff's Response fails to refute the well-settled proposition that, as a threshold matter, he *lacks standing to assert a RICO* claim – if he cannot adequately plead and demonstrate a ***direct nexus*** between a <u>predicate act</u> that was allegedly committed by ***Davey Tree*** or ***Wolf Tree*** – and the corresponding <u>harm</u> that was allegedly suffered by Eliud Montoya.  (MTD at 10–18.)

In their Motion to Dismiss, the Company Defendants methodically examined *all six categories* of the alleged predicate acts.[1]  Laying out, chapter and verse the reasons that demonstrate that the Plaintiff has (1) failed to adequately plead the elements of each predicate act; and/or (2) failed to establish a "***direct nexus***" between the predicate act and Mr. Montoya's injuries.[2]  And, after this analysis, *not <u>one</u> predicate act* – that was allegedly committed ***by*** the

---

[1]     The six categories are: (1) Pablo Rangel's scheme to hire undocumented workers ("Unauthorized Workers Scheme"); (2) an alleged scheme to defraud Georgia Power (the "Georgia Power Scheme"); (3) threatening/interfering with a witness; (4) the events of the May 2017 Meeting; (5) murder; and (6) the alleged "cover up" of the Unauthorized Workers and Georgia Power Schemes.  (MTD at 11.)

[2]     As explained in the Motion to Dismiss, "[t]o have standing to bring a civil claim under Georgia's RICO Act, . . . a plaintiff must show 'a ***direct nexus*** between at least ***one*** of the predicate acts listed under the RICO Act and the ***injury*** [the plaintiff] purportedly sustained.'"  *Rosen v. Protective Life Ins.*, 817 F. Supp. 2d 1357, 1381 (N.D. Ga. 2011) (emphasis added and citation

Company Defendants and ***targeted towards*** Mr. Montoya – still stands.

The Plaintiff's failure to plead or to show, in essence, that *not one predicate act* by the Company Defendants' *proximately caused* Mr. Montoya's injuries – is *fatal* to his claims.[3]

In *Turk v. Morris, Manning & Martin, LLP* – a Georgia RICO case involving multiple defendants – the judge adopted the exact approach that should be utilized and should apply in a case like this one.  593 F. Supp. 3d 1258 (N.D. Ga. 2022).  Specifically, the *Turk* court analyzed – on a *defendant-by-defendant* basis – whether the plaintiffs had sufficiently pled the predicate acts alleged against *each particular* defendant.  And then also analyzed whether "that same conduct proximately caused Plaintiffs' alleged damages." *Id.* at 1300, 1303–10.  The *Turk* court then dismissed the RICO claims against any defendant where *no predicate acts remained*. *Id.* (dismissing Georgia RICO claims against defendants in multi-defendant case where (1) elements of predicate acts not properly pled for *that* defendant and/or (2) proximate cause not shown for acts allegedly committed by *that* defendant).[4]

---

omitted), *aff'd sub nom. Rosen v. Am. Guar. & Liab. Ins.*, 503 F. App'x 768 (11th Cir. 2013); *Wylie v. Denton*, 323 Ga. App. 161, 166 (2013) ("to survive a motion to dismiss, a plaintiff asserting a RICO claim . . . must show that her injury was the direct result of a predicate act ***targeted toward her***, such that she was the intended victim.") (emphasis added).

[3]     Plaintiff erroneously asserts that – in order for him to comply with the standards for sufficient pleading, and to make out a RICO claim – he *need not* allege that *each* RICO defendant engaged in a *pattern* of racketeering activity (*i.e.*, at least *two predicate acts*).  (Resp. at 10.)  But more recent cases analyzing the Georgia RICO statute have demonstrated that it is a *requirement* that a pattern of racketeering activity *by each defendant* must be alleged.  *Turk*, 593 F. Supp. 3d at 1300 (emphasis added) ("In analyzing Plaintiffs' Georgia RICO claims, the Court will begin with the requirement that Plaintiffs establish a pattern of racketeering activity *as to each Defendant*."); *Cisneros*, 972 F.3d at 1208–09, 1217, 1219 (dismissing federal RICO claim on the basis that "plaintiff must plead that each defendant engaged in the conduct of the affairs of the RICO enterprise through a pattern of racketeering activity involving at least two predicate criminal acts" and then dismissing the Georgia RICO claim "for the same reasons that the federal RICO claims were dismissed").

[4]     *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1331 (N.D. Ga. 2021) (considering proximate causation with respect to the predicate acts allegedly committed by each defendant in a multi-defendant Georgia RICO claim); *Pierson v. Zuber*, 2010 WL 11496944, at *10 (N.D. Ga. Jan. 13,

### A.      The Predicate Acts Linked to the May 2017 Meeting are Insufficiently Pled.

Plaintiff erroneously contends that the May 2017 work crew meeting at which Mr. Montoya's HR complaint was read aloud – and which then allegedly prompted certain workers to threaten Mr. Montoya – amounted to the crimes of "influencing a witness" (O.C.G.A. § 16–10–93) and "terroristic threats" (O.C.G.A. § 16–11–37).  But the conduct as pled fails to meet the plain language in those two statutes.  Starting with this:  the Georgia statutes criminalizing the acts of "influencing a witness" and of making "terroristic threats" contain *multiple subsections* that criminalize a variety of *different conduct* (of different acts).  The Complaint, however, failed to plead any *specific sub-sections* of these statutes.  That is:  Failed to plead *which exact portion* of the statute was violated by *which defendant*–whether Oscar Cruz ("Cruz"), Christopher Branch ("Branch"), Marjorie Conner ("Conner"), or any other party.  (*See* Compl. ¶¶ 125–26.)

Belatedly, and inadequately, the Plaintiff has now tried to use his Response to try to "patch up" this glaring and facial deficiency in his pleading. (Resp. at 12–13.)  And now says (in his brief) that the defendants violated O.C.G.A. § 16–10–93 *subsection* (b)(1)(C) and O.C.G.A. § 16–11–37 *subsection* (b)(1).  But that comes far too late.  And as the court admonished the plaintiffs in the case *In re Androgel Antitrust Litig. (No. II)*, 687 F. Supp. 2d 1371, 1381 (N.D. Ga. 2010) (citation omitted):  "A plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss."

And even *if* this Court were to evaluate the sufficiency of the Complaint under the rubric of these very specific crimes, it would still conclude that Plaintiff's *factual allegations* – as plead

---

2010) (dismissing claim against RICO defendant, in part, because complaint failed to allege that particular defendant "harmed the Plaintiffs"); *see also Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (affirming judgment on pleadings because plaintiffs could not "establish any valid predicate acts" where plaintiff failed to show proximate cause for some acts and elements of crimes for others).

– do not satisfy *each and every element* of these crimes.  The specific "influencing a witness" crime that Plaintiff has belatedly alleged in his Response brief – sub-section 93(b)(1)(C) – prohibits a person to "knowingly [] use intimidation, physical force, or threats . . . with intent to . . . [h]inder, delay, or prevent the communication to a ***law enforcement officer*** . . . of information relating to the commission or possible commission of a criminal offense." (emphasis added.)

While the Plaintiff falsely contends that the Georgia Department of Labor – a <u>civil</u> agency with <u>no criminal law enforcement authority</u> – somehow constitutes an agency with  "law enforcement officers" – he cites zero authority for this "demonstrably false" and "patently untrue" false assertion.[5]  Nor has he explained how a Department of Labor employee could ever meet the legal definition of a "law enforcement officer" – which the Georgia Code defines as "a person employed or appointed by a state or political subdivision who is granted, by state law, the authority ***to enforce criminal, traffic, or penal laws*** of his or her respective state and ***who possesses the power to effect arrests***."  O.C.G.A. § 35–1–15(a)(2); MTD at 15 n.8.  And he does not and cannot point to single case or example where anyone has been prosecuted under Section 93(b)(1)(C) for hindering or delaying a communication specifically to the *Department of Labor*.  As a result, the Complaint utterly fails on its face to plead the requisite elements in support of a Section 93(b)(1)(C) violation.

Plaintiff also fails to sufficiently plead and allege the ***solicitation*** of terroristic threats by Pablo Rangel.  (Compl. ¶ 126.)  The elements of O.C.G.A § 16–11–37 are:  "(a) that the defendant

---

[5]     This Court need not credit Plaintiff's demonstrably false allegation that the Georgia Department of Labor is a law enforcement agency, and that its employees who receive complaints are "law enforcement officers."  *See e.g.*, *Jacobsen v. Bank of Am., N.A.*, 2010 WL 5140686, at *3 (W.D. Va. Dec. 13, 2010) ("Although the court owes the complaint a presumption of truth, it need not accept as true that which is demonstrably false."); *Francis v. Giacomelli*, 588 F.3d 186, 195 (4th Cir. 2009) (granting motion to dismiss where the allegations were "patently untrue").

threatened to commit a crime of violence against the victim, and (b) that the defendant did so with the purpose of terrorizing the victim." *State v. Stubbs*, 365 Ga. App. 630, 633 (2022). Here, the required *intent* element is *missing* from the Complaint. The Plaintiff also fails to specify the *content* of the alleged threats – other than vague, generalized references to bodily injury and death – and *which* worker at the May 2017 meeting made them. Moreover, there are no allegations of **solicitation** – *i.e.*, that there was a "relatively overt statement or request intended to bring about" the commission of a **felony**. *Eng. v. State*, 290 Ga. App. 378, 380 (2008); O.C.G.A. § 16–4–7.[6] The crime of terroristic threats is a **misdemeanor**, unless there is a death threat (O.C.G.A. § 16–11–37(d)(1)); and nowhere does the Plaintiff allege that Pablo Rangel overtly asked the other employees to make threats on Mr. Montoya's life. Finally, and even *if* the Plaintiff had adequately pled each of the elements (and he did *not*), he entirely *failed to allege* that Wolf Tree or Davey Tree, in particular, made the threats.

### B.  Plaintiff Has *Failed to Sufficiently* Plead the Predicate Acts of "Threatening" or "Influencing a Witness."

In his Response, the Plaintiff doubles down on his unfounded contention that the issuance of an allegedly fabricated "employee violation notice" for "unsatisfactory work," and for "safe practices violation" – resulting in a suspension – somehow constitutes the crime of threatening a witness (O.C.G.A. § 16–10–32(b)). (Resp. at 14–15.) But again, he has not plead any of the *specific facts* that would be needed in order to satisfy each and every element of this crime. The crime of "threatening a witness" prohibits:

> threaten[ing] or caus[ing] physical or economic harm to another person . . . with the intent to hinder, delay, prevent or dissuade any person from:  1. Attending or

---

[6]      "A person commits the offense of criminal **solicitation** when, with intent that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in such conduct."  O.C.G.A. § 16–4–7(a) (emphasis added).

testifying in an ***official proceeding***; [or] 2. Reporting in good faith to a ***law enforcement officer***, . . . the commission or possible commission of an offense under the laws of this state.

O.C.G.A. § 16–10–32(b)(1), (2) (emphasis added).  Plaintiff does not specify that an allegedly *pretextual workplace citation* was issued in order to impede Mr. Montoya's attendance at an "official proceeding" – or to deter a report to a "law enforcement officer."  (*See* Compl. ¶¶ 127, 130.)

And because Plaintiff's assertion that the Department of Labor is a "law enforcement agency" is "demonstrably false" – he has failed to sufficiently plead a violation of this component of the statute.  Moreover, his inadequate allegation here was that the pretextual write-ups were in "retaliation" for Mr. Montoya's *internal* HR complaints.  And that they were designed to deter him from "further reports to [*unspecified*] government authorities" – but *not* to a requisite "law enforcement officer."  (Compl. ¶¶ 69, 80.)

Plaintiff also has failed to sufficiently plead a violation of the "official proceeding" element.  While an "official proceeding" need not be "pending," per se, Plaintiff nevertheless fails to explain how an alleged attempt to deter *a report* to the Department of Labor (*id.* ¶¶ 45, 51) would – by *itself* – somehow constitute interference with an "official proceeding."  Which is a term that the statute defines as any "*hearing* or *trial* conducted by . . . an agency of the executive, legislative, or judicial branches of government of this state."  O.C.G.A. § 16–10–32(c)(1) (emphasis added).  The Complaint does not even plead or specify whether an actual or hypothetical *hearing* ever existed or was pending, or to plead as to how a report to the Department of Labor would automatically and uniformly lead to one.

At its core, the Complaint improperly attempts to misuse and to weaponize the RICO statute by criminalizing alleged conduct that, at worst, amounts to acts of ordinary employment

retaliation.  It is therefore unsurprising that the court in *Lockhart v. Columbian Chemicals Co., Inc.*, 2007 WL 9706424, at *7 (N.D. Ga. Aug. 31, 2007) concluded that a defendant's termination of an employee – and refusal to consider him for promotion – were not "explicit allegations of threats or actual physical or economic harm."  And that the putative RICO claimant had therefore *failed to allege a predicate act* under Section 16–10–32.

Moreover, the Complaint fails to sufficiently plead or to make out a violation of Section 16–10–93(b)(1)(C) – influencing a witness – in connection with the Company Defendants' response to Mr. Montoya's internal HR complaint.  Here again, the allegations that Ms. Conner and Mr. Branch attempted to assure Mr. Montoya that his complaint was being investigated simply do not amount to any *crime*.  (*See* MTD at 15.)  The Complaint only alleges that Ms. Conner and Mr. Branch sought to prevent "reports" to unspecified "government authorities." But it fails to allege that they *intended* to prevent Mr. Montoya from going to a bona fide *law enforcement officer*.  (Compl. ¶ 72.)  And the Plaintiff has not cited a *single reported Georgia case* designating similar conduct as a criminal act of "influencing a witness."

### C.     The "Unauthorized Workers Scheme" and the "Georgia Power Scheme" Did Not Directly Harm or Target Mr. Montoya.

In his Response, the Plaintiff fails to challenge the Company Defendants' argument (MTD at 11–13) that the alleged predicate acts underlying the "Unauthorized Workers" or "Georgia Power Schemes" *did not directly harm* Mr. Montoya.[7]   Instead of countering those arguments head on, the Plaintiff merely contends that the Company Defendants have conflated the concept

---

[7]     Plaintiff also fails to counter the Company Defendants' argument that the *sixth* category of predicate acts (the alleged post-death "cover up" by Ms. Conner and Mr. Cruz) *fails to confer standing* on Plaintiff to bring claims against the Company Defendants – because there are no allegations they were involved – or indeed, against *anyone*.  Since *post-death acts* cannot, by definition, be targeted towards the *deceased*.  (MTD at 17–18.)

of "standing" with the element of "proximate causation" by citing two on-point cases– *Parker* and *Anderson* (Resp. at 17).  This is both misleading and incorrect, for at least two reasons.[8]

*First*, the Plaintiff *misstates the proposition* for which the Company Defendants cite these cases.  The Company Defendants cite *Parker* and *Anderson* for the proposition that Plaintiff cannot show *a direct nexus* between the *predicate acts* alleged as part of the Unauthorized Workers Scheme (*i.e.*, hiring unauthorized workers and fraudulent misuse of documents) – and any *adverse employment actions* allegedly taken *by the Company Defendants*.  (MTD at 13.)  In each of those cases, the court found that the putative RICO claimants had not sufficiently demonstrated that the *employment-related predicate acts caused their injuries* (*i.e.*, retaliatory termination in *Parker,* and retaliatory termination plus harassment in *Anderson*).  *See Parker v. Diverse Staffing Georgia, Inc.*, 2020 WL 10575029, at *10 (N.D. Ga. Dec. 23, 2020), *R. & R. adopted,* 2021 WL 3367263, at *1 (N.D. Ga. Jan. 12, 2021); *Anderson v. Brown Indus.,* 2012 WL 12860887, at *8–9 (N.D. Ga. June 13, 2012).  As in *Parker* and *Anderson*, the predicate acts alleged as part of the Unauthorized Workers Scheme *do not confer standing* on the Plaintiff to assert claims against the Company Defendants.

*Second*, the Plaintiff's own cases are inapposite and wholly *distinguishable* from the facts of this case.  In *O'Neal v. Garrison*, the Eleventh Circuit found that the predicate act of federal obstruction of justice (which is simply *not* at issue here) had proximately caused the employee's injuries – where the obstruction took the form of placing employees who testified in a grand jury

---

[8]    Georgia courts recognize that standing and proximate cause are "related and significantly overlapping concepts" that a *civil* RICO plaintiff must show to meet the statutory requirement that their injury occurred "by reason of" the defendant's violation of RICO.  *Anderson*, 2012 WL 12860887, at *8.  As indicated in the Company Defendants' motion (MTD at 11 n.6), both federal and Georgia RICO include the "by reason of" requirement.  *See* 18 U.S.C. § 1964(c); O.C.G.A. § 16–14–6(c).

on leave – and then terminating them, to *prevent their testimony in federal criminal trials*.  263 F.3d 1317, 1323 (11th Cir. 2001).  Similarly, *DeGuelle v. Camilli*, 664 F.3d 192, 201 (7th Cir. 2011) is also inapplicable, because it relates to whether 18 U.S.C. § 1513(e) (interference with employment for providing information to a federal law enforcement officer)[9] is sufficiently related to the underlying crimes reported to form a *pattern* of racketeering activity.  And not whether violations of immigration laws confer RICO standing on a whistleblower who was not directly harmed by *those* specific violations.  And *Dorsey v. State* is also distinguishable, as it concerns whether predicate acts with *different objectives* can be sufficiently related to form a *pattern* of RICO activity.  279 Ga. 534, 541 (2005).

### D.  The Company Defendants Were Not Involved in Mr. Montoya's Execution.

Given that the *public record* and the findings of the United States District Court make clear that Pablo Rangel and his two co-conspirators *alone* were indicted and convicted for their roles in Mr. Montoya's assassination, Plaintiff cannot plausibly or sufficiently allege that the Company Defendants were involved, in *any way whatsoever*, with Mr. Montoya's murder.  As a result, murder and retaliation against a federal witness cannot serve as predicate acts to confer RICO standing on the Plaintiff to bring a claim against the Company Defendants.  (MTD at 17.)

Plaintiff argues, in a throwaway assertion, and without any citation, that "Defendants' denials of factual allegations" are irrelevant on a motion to dismiss.  (MTD at 17.)  But that is *not*

---

[9]     Plaintiff does not plead or specify as to which subsection of 18 U.S.C. § 1513 the Defendants Conner, Cruz, and Branch supposedly violated, when they allegedly informed Mr. Rangel about Mr. Montoya's EEOC complaint.  (Compl. ¶¶ 131, 132.)  Moreover, since an EEOC employee is not a federal "law enforcement officer" as that term is defined by the statute, the Plaintiff has *not alleged* 18 U.S.C. § 1513(e) as a *viable predicate act* here.  *See* 18 U.S.C. § 1515 (a)(4) (defining "law enforcement officer" for the purpose of Section 1513 as a federal government employee "authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense" or serving as a probation or pretrial services officer).

the rule in this Circuit.  While the general rule is that "all facts alleged by the plaintiff are accepted

as true," there "are a few exceptions to this rule, such as when the facts alleged . . . ***run counter*** to

facts of which the Court can take judicial notice."  *Gersten v. Rundle*, 833 F. Supp. 906, 910 (S.D.

Fla. 1993) (emphasis added), *aff'd,* 56 F.3d 1389 (11th Cir. 1995).

　　　Here, this Court may take judicial notice of the convictions of record in the three criminal

cases in this District, convicting the three men who conspired to and did murder Mr. Montoya.[10]

*Curry v. TD Ameritrade, Inc.*, 662 F. App'x 769, 771 n.3 (11th Cir. 2016) (taking judicial notice

of defendant's indictment and related settlement).  In doing so, this Court need not credit any false

and unfounded factual assertions made by plaintiff that "***run counter***" to the convictions.  *See*

*Jacobson v. Pfizer Inc.*, 2014 WL 11443909, at *4 (S.D. Fla. July 17, 2014) (noting *Gersten* rule,

taking *judicial notice of judgment indicating guilty plea* inconsistent with "facts" as alleged by

plaintiff, and dismissing complaint), *R. & R. adopted*, 2014 WL 11430934 (S.D. Fla. Aug. 19,

2014); *see also Cicalese v. Univ. of Texas Med. Branch*, 456 F. Supp. 3d 859, 872 (S.D. Tex. 2020)

(citing *Gersten* and finding that when considering 12(b)(6) motion, court need not accept factual

assertion "refuted by a fact of which the court has taken judicial notice").

## II.　　Plaintiff Has Failed to Sufficiently Plead a Distinct RICO Enterprise.

### A.　　The "Distinctness" Requirement Applies to Section 4(b) Claims.

---

[10]　　In contrast, this Court should not credit Plaintiff's utterly false and misleading claim (Resp.
at 2 (emphasis added)) that the Company Defendants "recently paid . . . almost $4 million to
resolve criminal allegations *associated with the murder of Montoya.*"  Because that false statement
is flatly *contradicted* by the Department of Justice press release that is cited by the Plaintiff, which
states in the *very first sentence* that the purpose of the settlement payment was "to resolve criminal
and civil claims *related to illegal labor practices* reported by a whistleblower." (*See*
https://www.justice.gov/usao-sdga/pr/companies-employed-labor-whistleblower-and-his-killers-
reach-criminal-civil-resolution (emphasis added).)  The Court can take judicial notice that the Non-
Prosecution Agreement, linked in that same DOJ press release, *does not tie the Company
Defendants to the murder in any way*.  *See Giuffre v. Andrew*, 579 F. Supp. 3d 429, 436 (S.D.N.Y.
2022) (judicial notice of non-prosecution agreement on motion to dismiss, where relevant to
interpretation of settlement agreement at issue).

Under longstanding RICO authority, a plaintiff must plead the existence of a *distinct enterprise* – **separate and apart from the defendant company and its employees** – to prevail on a Section 4(b) claim.  Plaintiff, however, contends that the "distinct enterprise" requirement is a creature of the federal RICO statute, and that under Georgia RICO, an "enterprise may consist of the corporation and its agents or employees" in cases where the "defendant corporation was both the perpetrator and direct beneficiary of the pattern of racketeering."  (Resp. at 21.)  But here, the relevant case authorities shows that the Plaintiff is just flat-out wrong.

*First*, as this very Court recognized, "the Georgia [RICO] statute *mirrors* the federal statute in both purpose and language."  *Ricks v. Handi-House Mfg. Co.*, 2019 WL 1338415, at *10 (S.D. Ga. Mar. 25, 2019) (emphasis added) (Baker, J.).  Thus, courts have routinely "found federal authority persuasive in interpreting the Georgia RICO statute."  *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 430 (2005); *see MacDonald v. SunTrust Mortg., Inc.*, 2010 WL 11647012, at *15–16 (N.D. Ga. Aug. 10, 2010) (citing cases).  And while courts have identified some differences between Georgia RICO and federal RICO – the "distinct enterprise" requirement is not one of them.  *See InterAgency, Inc. v. Danco Fin. Corp.*, 203 Ga. App. 418, 419 (1992) (requirements to establish "pattern of racketeering activity," proscription against the acquisition of certain types of property, etc.).

*Second*, courts have recognized differences between the two statutes where the *express language* of their *companion provisions* are *worded differently*.  *Compare* O.C.G.A. § 16–14–4(a) (prohibiting acquisition of "any interest in or control of any enterprise, real property, or personal property of any nature, including money") *with* 18 U.S.C. § 1962(b) (prohibiting acquisition of "any interest in or control of any enterprise" only).  But that is simply *not the case here*.  The *operative language* of Section 4(b) (*i.e.*, O.C.G.A. § 16–14–4(b)) is *virtually identical* to the

15

language of its federal counterpart, 18 U.S.C. § 1962(c).  Both statutes make it "unlawful for any person employed by or associated with any enterprise" to "conduct or participate" in such enterprise "through a pattern of racketeering activity."  *Compare* O.C.G.A. § 16–14–4(b) *with* 18 U.S.C. § 1962(c).  Thus, the cases interpreting the federal RICO statute should guide this Court's interpretation of the Georgia statute on the issue of whether a RICO *person – i.e.*, the corporation – must be distinct from the RICO *enterprise*.

*Third*, Plaintiff places false emphasis on a 1994 appellate case from the Georgia Court of Appeals – *Reaugh v. Inner Harbour Hosp., Ltd.*, 214 Ga. App. 259 (1994).  Falsely characterizing it as the seminal authority on the "distinctness" requirement under Georgia RICO.  (Resp. at 21–22.)  But the *Reaugh* case does not exactly stand for the point that Plaintiff purports it does – because it did not precisely analyze the "distinctness" requirement of *Section 4(b)*.  In *Reaugh*, the court held that "a corporation may be both the 'person' and the 'enterprise,' if it is the direct or indirect beneficiary of the pattern of racketeering activity."  But it reached this holding specifically based on an interpretation of *Section 1962(a)* and *Section 1962(b)* (the federal analog to Section 4(a)).  *Id.* at 264.  And other than a passive reference to Section 1962(c) – the counterpart to Section 4(b) – it's clear on the face of the decision that in fact the court *made no effort to analyze the distinct enterprise requirement* under Section 4(b).  *See id.* at 263–64.  And ironically, *Reaugh* formulated its holding based on a federal circuit case interpreting federal RICO.  *Id.* at 263  (citing *Haroco, Inc. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 747 F.2d 384, 402 (7th Cir. 1984)).[11]

> **B.   Plaintiff Has Misconstrued the Law on Pleading a *Distinct* RICO Enterprise.**

---

[11]   See also John E. Floyd, RICO State by State: A Guide to Litigation Under the State Racketeering Statutes (American Bar Ass'n 2011 ed.), 8 RICO St. by. St. 279 ("A corporation may be both the enterprise and a defendant under § 16-14-4(a) if it was both the perpetrator and direct beneficiary of a pattern of racketeering activity, and not merely a victim or passive instrumentality.") (emphasis added).

Plaintiff also attempts to advance an argument that *if* in fact the "distinctness" requirement *does* exist under Georgia law – then he has satisfied it here.  But his Complaint does not actually plead or allege a distinction between the Company Defendants – as RICO persons who, along with the individual defendants, have participated in a separate RICO enterprise.  Instead, what the Plaintiff has tried to do is to somehow excuse himself from pleading the "distinctness" requirement at all – by concocting a novel proposition that is unsupported by the law.  The Plaintiff first concedes that he "may not plead the existence of a RICO enterprise between a corporate defendant and its agents and employees *acting within the scope of their roles for the corporation*."  But then tries to manufacture a way to get out from under that requirement.  By citing an artificial "corollary" that "if a corporate defendant associates with an employee to violate RICO through conduct *outside* the scope of their employment, there is no distinctness problem."  (Resp. at 22 (emphases in original).)  In essence, the Plaintiff argues that because the Company Defendants' employees, like Pablo Rangel, supposedly engaged in unlawful acts *outside* the scope of their employment, then such allegations would relieve the Plaintiff from the requirement that he plead the existence of a *distinct* enterprise.   (*Id*. at 23–24.)

But no such "corollary" has ever been recognized.  And in any event, the Plaintiff has fundamentally *misconstrued* the law on pleading a *distinct* RICO enterprise.  The law *does not distinguish* between "authorized" and "unauthorized" acts of employees that are "committed in the course of their employment" with a corporation.  The focus is on the *scope* of their "roles."  *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016).  Thus, if "employees . . . commit a pattern of predicate acts" – whether ***legal or illegal, authorized or unauthorized*** – "in the course of their employment and on behalf of the corporation, the employees in association with the corporation **do not form** an enterprise **distinct** from the corporation."  *Viridis Corp. v. TCA Glob.*

*Credit Master Fund, LP*, 155 F. Supp. 3d 1344, 1360 (S.D. Fla. 2015) (citation omitted and emphasis added) (interpreting Eleventh Circuit law).  That the employees may have engaged in illegal acts – simply does not put their conduct *outside* of the scope of their employment with the corporation – or magically enable the Plaintiff to do away with pleading the *distinctness* requirement.

Here, the Plaintiff goes to great lengths to argue that Pablo Rangel's conduct in operating an "illegal labor recruiting/labor broker operation that supplied illegal alien workers," or his procurement of "false identifications and false identification documents for those illegal alien employees," or the fact that such acts occurred "[b]efore and after regular working hours," were all beyond the scope of his responsibilities as a supervisor for the Company Defendants.  (Resp. at 23–24.)  But at their core, these are arguably precisely the things for which Pablo Rangel was hired to do – to recruit and hire workers in Savannah, and process the necessary paperwork and verification documents for his crew members.   The "mere fact" that he and others in the corporation "conspire[d] together to commit criminal acts ***within the scope of their employment*** does not, in and of itself, create a valid enterprise for purposes of RICO liability."  *Viridis Corp.*, 155 F. Supp. 3d at 1360 (emphasis added); *Shrum v. Metro. Life Ins. Co.*, 2008 WL 11474876, at *8 (S.D. Tex. Jan. 14, 2008) (alleged defendant "performed the business of Defendant MetLife on the insurance company's behalf" and the acts "consisted of nothing more than Defendant Met Life's ordinary course of business").

## III.    Plaintiff Has Failed to Sufficiently Plead and Allege an "Acquisition" Injury.

In a telling sign – that the Plaintiff is unable to cite any authority to counter the Company Defendant's argument that he failed to plead an "acquisition" injury in support of his Section 4(a) claim – the Plaintiff in his Response leans almost exclusively on legislative history and intent

arguments, rather than on what courts have actually held on the issue.  The thrust of his argument is that Georgia RICO is different than federal RICO, and that a recitation of its long and winding legislative history now somehow acts to excuse him from following the case authorities and plain text of the statute – and from pleading a distinct acquisition injury in his Complaint.  (Resp. at 26–29.)

But again, while it may be true that there are some "differences" between Georgia RICO and federal RICO – no Georgia court has ever identified the "acquisition" injury requirement as a *distinct and exclusive feature* of the *federal RICO statute*.  Nor does the Plaintiff's three-page recitation of the Georgia RICO Act's *general* legislative history – making the simple and unremarkable point that the Georgia statute is "broader" than the federal statute – have any specific relevance to the "acquisition" injury issue.  Both Section 4(a) and its federal analog (Section 1962(b)) prohibit a person from "acquir[ing] or maintain[ing]" a property interest in the enterprise. *Compare* O.C.G.A. § 16–14–4(a) *with* 18 U.S.C. § 1962(b).  Both statutes may implicate the acquisition of *different types* of property interests – and in this regard, the Georgia statute may be broader – but they are nevertheless identically focused on the *acquisition* of such interests.

Thus, "in the absence of Georgia authority" on this precise issue, this Court should "look to federal decisions for guidance on the interpretation of similar provisions of the Georgia RICO Act."  *Wade Park Land Holdings, LLC v. Kalikow*, 522 F. Supp. 3d 1341, 1354 (N.D. Ga. 2021) (citation omitted).  The federal cases that have *squarely addressed* this issue have held that because Section 1962(b) requires a "RICO complainant [to] prove that it has been injured by acquiring or maintaining … an interest in or control over" an enterprise –, therefore an "acquisition injury" is necessary. *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F. Supp. 2d 1276, 1288 (S.D. Ga. 2003) (dismissing claim because "Defendants have failed to demonstrate any injury resulting

from Plaintiff's acquisition of an enterprise"); *see Compagnie de Reassurance d'Ile de France v. New England Reins. Corp.*, 57 F.3d 56, 91–92 (1st Cir. 1995); *D'Addario v. D'Addario*, 901 F.3d 80, 97–99 (2d Cir. 2018).

Keenly aware that there is already a body of cases that *require* an acquisition injury when pleading the federal equivalent of a Section 4(a) claim, the Plaintiff has resorted to deflecting the weight of that authority by simply arguing that these cases have never been cited by a Georgia state court.  (*See* Resp. at 30 ("*no Georgia Appellate decision has ever cited Club Car, much less relied on it*" and *Compagnie de Reassurance* "contains no discussion of Georgia RICO").)  But that is *not* any kind of compelling reason for why this Court should *disregard* these cases.  If anything, as Georgia courts have made clear, in the absence of any affirmative Georgia-specific precedent, these federal cases are plainly applicable and analogous.  And that they should drive this Court's analysis of a Georgia RICO provision that is worded in virtually identical terms as its federal counterpart.

## IV.     Plaintiff Fails to Plead the Elements of a RICO Conspiracy.

As an initial matter, while the Plaintiff again suggests that a conspiracy claim under Georgia RICO is somehow fundamentally "different" from federal RICO (*see* Resp. at 33), courts in this Circuit have made clear that "[t]here is no apparent substantive difference between the requirements for establishing a conspiracy to violate Federal RICO claim and a conspiracy to violate Georgia RICO claim."  *Lechter*, 565 F. Supp. 3d at 1332.  And Eleventh Circuit courts *routinely dismiss* civil RICO conspiracy claims where, as here, the underlying substantive RICO claims are *deficient*, and the conspiracy claim *adds no new allegations* of its own.  *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (dismissal where court "already found that the complaint failed to state a substantive RICO claim, and the RICO conspiracy adds nothing").

The Plaintiff's Response hones in on general principles of conspiracy law, arguing that because "each actor in a conspiracy is responsible for the overt actions undertaken by all the other co-conspirators in furtherance of the conspiracy," the unlawful act of one is the unlawful act of all others.  (Resp. at 33.)  While that may be true, it does not excuse the Plaintiff from the requirement that, in order to meet the standards, he must plead *which* purported co-conspirator committed *which* alleged act.  In other words, the Company Defendants are still entitled to know (and receive notice) *whose* conduct the Plaintiff seeks to impute onto them.

And citations to general principles on conspiracy *do not remedy* that the conspiracy allegations here are a "'formulaic recitation[]' of a conspiracy claim that the Supreme Court declared insufficient in *Twombly* and *Iqbal*."  *Omnipol, A.S. v. Multinat'l Def. Servs., LLC*, 32 F.4th 1298, 1310 (11th Cir. 2022).  That is, Plaintiff has done no more than "simply allege[]" that Defendants collectively endeavored to violate Sections 4(a) and (b) – *without pleading a single specific factual detail* about any alleged agreement among the Defendants – or which Defendant did what.  *See id.* at 1309–10; *Parker*, 2020 WL 10575029, at *11 (dismissing RICO conspiracy claim that failed to allege with particularity an agreement to commit a conspiracy, the dates when such conspiracy formed, or when the specific defendants joined the conspiracy).  The Complaint's failure to plead any facts regarding *which* Defendant allegedly agreed to *what* – deprives all of the Defendants of any notice of what they are being accused of doing to specifically violate Section 4(c).  (*See* MTD at 24 (citing *Christian v. Okefenokee Charlton Tr.*, 2020 WL 5242931, at *3–4 (S.D. Ga. Sept. 2, 2020 (failure to distinguish defendants and their alleged misconduct)).  In other words, the Plaintiff "cannot simply include magic words such as 'conspiracy' . . . in a complaint to plead a claim where years of relatively clear, consistent jurisprudence have set forth clear standards.  Those standards require plaintiff[] to put defendants on notice of **specific acts,**

***statements, documents, places, and people*** behind the magic words." *Hi-Tech Pharms., Inc. v. Hodges Consulting, Inc.*, 230 F. Supp. 3d 1323, 1334 (N.D. Ga. 2016) (emphasis added).[12]

Here, Plaintiff has utterly failed to "plausibly allege" – with specific facts – that the Company Defendants "made 'an illegal agreement to violate a substantive provision of the RICO statute.'" *Lechter*, 565 F. Supp. 3d at 1331 (quoting *Jackson*, 372 F.3d at 1269).  Or put another way, that the Company Defendants "knowingly and willfully agreed to become a member of [a] conspiracy." *Ricks,* 2019 WL 1338415, at *9.  Nor did he plead specific facts sufficient to show that the Company Defendants  "words and actions objectively manifested an agreement to participate in" a conspiracy to violate RICO.  *Id.*  Thus, here, any assertion that the Company Defendants and the individual defendants "conspired with each other for the purpose of committing these predicate acts is at best conclusory." *Lechter*, 565 F. Supp. 3d at 1332 (analyzing federal and Georgia RICO claims under the same rubric).

## V.     The Court Should *Decline Jurisdiction* Over the Remainder of the Claims.

It appears that the Plaintiff may have misapprehended the Company Defendants' argument that the remaining, non-RICO claims should be dismissed for lack of jurisdiction.  (*See* MTD at 24–25.)   A dismissal of the RICO claims here would not only eliminate federal-question jurisdiction, but would also *allow* this Court to *relinquish jurisdiction* – be it pendent or supplemental jurisdiction under 28 U.S.C. § 1367, or under *any other* basis – altogether.  Indeed, that is precisely why the Company Defendants in their opening motion cited *McCulloch v. PNC Bank Inc.* – a case in which the court expressly "decline[d] in its discretion to exercise supplemental jurisdiction over the state-law claims."  298 F.3d 1217, 1227 (11th Cir. 2002); *see*

---

[12]     "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (citation omitted).

also *Pierson*, 2010 WL 11496944, at *12.  The outcome should be the same here – particularly

since there are already substantially similar *state-law claims* that have been litigated on behalf of

Eliud Montoya's widow *for the past six years* by the *very same lawyers* in this action.

## VI.    Plaintiff Has Failed to Plead the Intentional Tort Claims.

Plaintiff ignores (Resp. at 35–36) that the Company Defendants also moved to dismiss the

intentional infliction of emotional distress ("IIED") and assault and battery claims by explicitly

adopting the arguments made by Defendant Branch.  (MTD at 25.)

### A.    The IIED Claims Fail.

The Court should dismiss all of the IIED claims based on the insufficiency of allegations

concerning "severe emotional distress" – a deficiency that the Plaintiff fails to address in his

Response.

> In order to properly allege a claim based on the intentional infliction of emotional
> distress, a complaint must contain at least four elements:  '(1) [t]he conduct must
> be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3)
> [t]here must be a causal connection between the wrongful conduct and the
> emotional distress; and (4) [t]he emotional distress must be severe.'

*Joyner v. Lifeshare Mgmt. Grp., LLC*, 2018 WL 6092743, at *4 (S.D. Ga. Nov. 21, 2018) (Moore,

J.) (citation omitted).  Ordinary mental distress is not enough.  "The law intervenes *only where the*

*distress inflicted is so severe that no reasonable man could be expected to endure it*."  *Bridges v.*

*Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 230 (1985) (emphasis added).[13]

Crucially, Plaintiff has not set forth a single fact concerning emotional distress, let alone

*severe* emotional distress.  For example, he does not allege that Mr. Montoya expressed or suffered

---

[13]    The IIED claims should also be dismissed because they consist of a rote recitation of the
elements of the tort accompanied by blanket citations to the entire fact section of the Complaint.
*See, e.g.*, *Monsrud v. Regnerative Orthopaedics & Spine Inst., P.C.*, 2020 WL 12654451, at *9
(N.D. Ga. Sept. 9, 2020) (dismissing IIED claim because "mostly formulaic recitations of the
elements of the IIED claim[] fall short of meeting the relevant pleading standard"), *R. & R.
adopted*, 2020 WL 12654449 (N.D. Ga. Sept. 29, 2020).

from any particular type of emotional distress (*e.g.*, terror, anxiety), experienced any physical manifestations or mental health symptoms (*e.g.*, psychotic break, despondency), or that he sought out or obtained any medical or psychological treatment.[14]  The absence of such allegations is fatal to the IIED claim.  *See e.g.*, *Monsrud,* 2020 WL 12654451, at *10 (dismissal where plaintiff "fail[ed] to allege facts showing that she has suffered extreme emotional distress" and that plaintiff was "under stress and forced to seek medical care, with no allegation about any resulting treatment or diagnosis of severe emotional distress, [were] insufficient"); *Roberts v. JP Morgan Chase Bank, Nat'l Ass'n*, 342 Ga. App. 73, 77 (2017) (citation omitted) (dismissal where complaint "says nothing at all about humiliation, embarrassment, fright, extreme outrage, or severe emotional distress"); *Timmons v. Bryson*, 2016 WL 4082710, at *7 (S.D. Ga. Aug. 1, 2016).  The deficiency also dooms the *respondeat superior* claims because there can be no IIED claim against the individual defendants without adequate allegations concerning the element of severe emotional distress.

**B.    The Assault and Battery Claims Fail.**

The tort of battery requires an unlawful touching.  *Lawson v. Bloodsworth*, 313 Ga. App. 616, 618 (2012); O.C.G.A. § 51–1–13.  And assault requires the "intention to commit an injury, coupled with an apparent ability to do so."  *Wallace v. Stringer*, 250 Ga. App. 850, 853 (2001) (citation omitted); O.C.G.A. § 51–1–14.  But the only acts alleged in these counts of the Complaint are that *Juan Rangel* shot Mr. Montoya; that *Juan Rangel* "threatened" him with "physical injury . . . in the moments leading up to his death;" and that *Pablo Rangel* and *Mr. Cruz* made unspecified threats of violence "beginning in early May of 2017." (Compl. ¶¶ 177, 181–82.)  There are *zero*

---

[14]    Plaintiff also does not explain *which* of the Defendants' conduct is extreme and outrageous, and instead relies on every single factual allegation in the Complaint.  And since he does not allege any emotional distress, he also fails to plead the *causation* element of the claim.

allegations that the Company Defendants unlawfully touched or intended to injure Mr. Rangel. And these torts cannot be committed "through" someone else, or brought about through a chain of events, as alleged by Plaintiff.

## CONCLUSION

For the foregoing reasons and for the reasons set out in their opening brief in support of their Motion to Dismiss, the Company Defendants respectfully request that this Court dismiss, with prejudice, Counts 1–3 for lack of standing and failure to state a claim; Counts 4–22 for lack of jurisdiction; and Counts 4, 5, 12, 14, 16, 18, and 19 for failure to state a claim; and grant all such other and further relief as is just and proper.

Dated: October 10, 2023
     New York, New York

KASOWITZ BENSON TORRES LLP

*/s/ Edward E. McNally*
Edward E. McNally (admitted *pro hac vice*)           Christopher W. Phillips
Brian S. Choi (*pro hac vice forthcoming*)               Georgia Bar No. 002920
Marcellene E. Hearn (*pro hac vice forthcoming*)      HUNTER, MACLEAN, EXLEY & DUNN P.C.
1633 Broadway                                                    P.O. Bo 9848
New York, New York 10019                               Savannah, GA 31412-0048
Telephone:  (212) 506-1700                               Telephone:  (912) 236-0261
Facsimile:  (212) 506-1800                               Facsimile:  (912) 236-4936
Email:  emcnally@kasowitz.com                        Email:  cphillips@huntermaclean.com

*Attorneys for Defendants The Davey Tree Expert Company and Wolf Tree, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify on this 10th day of October, 2023, due to technical issues impacting the

ECF system, the foregoing was served upon all counsel via email, and I caused the foregoing to

be served via regular U.S. mail on the following:

Pablo Rangel-Rubio (*Pro Se*)
Register No. 22405-021
USP Atwater
U.S. Penitentiary
P.O. BOX 019001
Atwater, CA  95301

KASOWITZ BENSON TORRES LLP

*/s/ Edward E. McNally*
Edward E. McNally (admitted *pro hac vice*)
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  emcnally@kasowitz.com