IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| BRIAN J. HUFFMAN, as Administrator of the Estate of Eliud Montoya-Arcos, Deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CV 418-184 |
| THE DAVEY TREE EXPERT COMPANY, et al., | ) ) ) ) |
| Defendants. | ) |

**O R D E R**

For the reasons discussed below, the Court **DENIES** Defendant Pablo Rangel's Motion to Disqualify Counsel. (Doc. no. 186.)

**I.     INTRODUCTION**

This civil action arises out of a workplace complaint in April 2017 by Eliud Montoya-Arcos alleging a payroll-skimming scheme by Mr. Rangel, Mr. Montoya's supervisor at Defendant Wolf Tree, Inc. In 2022, Mr. Rangel was convicted in this Court of crimes related to the scheme and Mr. Montoya's murder. See United States v. Pablo Rangel-Rubio, No. CR 418-064 (S.D. Ga. July 10, 2018) (hereinafter "CR 418-064"); United States v. Pablo Rangel-Rubio, No. CR 422-030 (S.D. Ga. Jan. 8, 2023) (hereinafter "CR 422-030"). On November 9, 2017, Mr. Montoya's surviving spouse brought suit in the State Court of Chatham County, Georgia, asserting claims arising out of the scheme and murder. Montoya v. Davey Tree

Expert Co., Civ. Act. No. STCV1701873 (St. Ct. Chatham Cnty.) (hereinafter "Montoya"). This state companion case is set for trial in July 2024 against Defendant The Davey Tree Expert Company only, as the state court recently dismissed all other defendants. See Order, Montoya (Mar. 6, 2024). The case *sub judice* involves the same allegations and defendants but was filed by the Estate Administrator.

Plaintiff's attorney Mr. James D. Durham, a former prosecutor for the United States Attorney's Office for the Southern District of Georgia ("USAO"), was appointed Acting United States Attorney on March 11, 2017, and remained in that role until he resigned from the USAO on September 22, 2017. (Doc. no. 187-1, pp. 1-2.)

Mr. Montoya was murdered on August 19, 2017. (Id. at 2; see also doc. no. 123, p. 22.) On August 20, 2017, local law enforcement investigators obtained and executed a search warrant at Mr. Rangel's property for evidence connected to the murder. (Doc. no. 187-2, pp. 11-12.) Based on the fruits of the search warrant, Mr. Durham, along with two other members of the USAO, signed indictments for three individuals who were found in possession of firearms illegally at Mr. Rangel's property. (Doc. no. 187-2, pp. 13-21.) However, no complaint, information, or indictment was issued against Mr. Rangel while Mr. Durham was employed by the USAO. See CR 418-064; CR 422-030; United States v. Pablo Rangel-Rubio, No. CR 418-274 (S.D. Ga. Nov. 21, 2022).

In October 2017, Mr. Durham entered private practice and later that year began working on the Montoya action in state court. (Doc. no. 187-1, p. 3.) Mr. Durham also began working on the instant case, filed in July 2018. (Id.)

Mr. Rangel contends Mr. Durham cannot serve as counsel for Plaintiff because of his involvement in these criminal matters during his final weeks of employment at the USAO.

2

(Doc. no. 186.)  Mr. Rangel also alleges recent acts of misconduct by Mr. Durham in his capacity as counsel for Plaintiff.  (Id.)

**II.      DISCUSSION**

    **A.      Legal Standards for Disqualifying Counsel**

When considering a motion to disqualify counsel, the Court must balance between the need to ensure ethical conduct on the part of lawyers and the litigant's right to freely chosen counsel.  Cox v. Am. Cast Iron Pipe Co., 847 F.2d 725, 731 (11th Cir. 1988) (citing Woods v. Covington Cnty. Bank, 537 F.2d 804, 807 (5th Cir. 1976)).  A party is presumptively entitled to the counsel of his choice, and that right may be overridden only if "compelling reasons" exist.  In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003) (citing Tex. Catastrophe Prop. Ins. Ass'n v. Morales, 975 F.2d 1178, 1181 (5th Cir. 1992)).

Disqualification of a party's chosen counsel is a harsh sanction and an extraordinary remedy that should be resorted to sparingly.  Herrmann v. GutterGuard, Inc., 199 F. App'x 745, 754 (11th Cir. 2006) (*per curiam*) (citing Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n.4 (11th Cir. 1982)).  An allegation of a conflict of interest should be viewed cautiously because it can be misused as a harassment technique.  Ga. R. Pro. Conduct 1.7, Comment [15]; Cochran v. Five Points Temporaries, LLC, No. 210-CV-3522, 2012 WL 4726285, at *3 (N.D. Ala. Sept. 27, 2012).  Moreover, a motion to disqualify counsel should be made with reasonable promptness after a party discovers the facts which lead to the motion.  Jackson v. J.C. Penney Co., 521 F. Supp. 1032, 1034-35 (N.D. Ga. 1981).  The party seeking to disqualify counsel bears the burden to prove the grounds for disqualification.  BellSouth, 334 F.3d at 961; Whitest v. Crisp Cnty. Sch. Dist., No. 22-11826, 2023 WL 8627498, at *4 (11th Cir. Dec. 13, 2023) (*per curiam*).  To properly disqualify counsel, the Court must identify

the specific rule of professional conduct applicable to the relevant jurisdiction and must determine the attorney violated the rule. Herrmann, 199 F. App'x at 755.

"Motions to disqualify are governed by two sources of authority: First, attorneys are bound by the local rules of the court in which they appear. . . . Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of parties." Herrmann, 199 F. App'x at 752 (citations omitted). The Local Rules of this Court incorporate both the Georgia Rules of Professional Conduct ("Georgia Rules") and the American Bar Association's Model Rules of Professional Conduct ("Model Rules"). Loc. R. 83.5(d).

Mr. Rangel fails to identify any particular provision of the applicable rules of professional conduct or any statute he alleges Mr. Durham violated. (See doc. no. 186.) The Court evaluates Mr. Durham's conduct under Georgia Rules of Professional Conduct 1.11 ("Rule 1.11") and 8.4 ("Rule 8.4"), as well as 18 U.S.C. § 207. See Herrmann, 199 F. App'x at 755; United States v. Diaz-Rosado, 725 F. App'x 847, 853-55 (11th Cir. 2018) (*per curiam*) (affirming district court's *sua sponte* analysis of possible conflict of interest under 18 U.S.C. § 207).

### B. There Is No Basis for Disqualification of Mr. Durham

#### 1. Mr. Rangel Fails to Provide Any Evidentiary Support for his Dubious Allegations

Mr. Rangel alleges Mr. Durham: (1) "conspired with CJA defense counsel[] . . . to plead Defendant guilty to the murder without benefits," (2) contacted Mr. Rangel's defense attorneys in 2023 while Mr. Rangel's appeal was pending in the Eleventh Circuit in an "attempt to persuade [Mr. Rangel] to cooperate in the ongoing lawsuit against Wolf/Davey" and "falsify

4

facts," (3) sent a "proxy" with Mr. Rangel's criminal defense counsel on a prison visit at USP-Atwater in or about September 2023, who "proposed a substantial monetary bribe and legal aid" in exchange for Mr. Rangel's cooperation in the civil actions, including "authenticat[ion of] some fake documents," and (4) "maintained direct contact with [USAO] and was kept informed on every aspect of" Mr. Rangel's prosecution after leaving government employment. (Doc. no. 186, pp. 2-3.)

Mr. Rangel concluded his motion with the following statement: "I, Pablo Rangel Rubio declare the foregoing material facts to be true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746." (Doc. no. 186, p. 4.) However, an unsworn statement cannot serve as a substitute for a sworn affidavit under the plain language of § 1746 unless it verifies the facts are true under "penalty of perjury." 28 U.S.C. § 1746; Roy v. Ivy, 53 F.4th 1338, 1348 (11th Cir. 2022). Mr. Rangel's failure to do so renders his allegations insufficient to serve as competent evidence. See Udoinyion v. Guardian Sec., 440 F. App'x 731, 735 (11th Cir. 2011) (*per curiam*) (rejecting district court's reliance on documents not satisfying standard for unsworn declaration under § 1746); Roy, 53 F.4th at 1347-50 (affirming district court's rejection of non-compliant declarations under § 1746). As a result, the motion fails because it relies solely on Mr. Rangel's unsworn allegations and does not support each factual assertion, as Local Rule 7.1(b) requires, "by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion."

While the motion is fatally defective without any further discussion, it is also worth noting several obvious characteristics of Mr. Rangel's unsupported allegations that make them appear dubious, at best. First, Mr. Rangel alleges Mr. Durham conspired with both the prosecutors and criminal defense attorneys to force the allegedly innocent Mr. Rangel into a

5

guilty plea then harangue, harass, and bribe Mr. Rangel to commit fraud in the civil cases to aid Mr. Durham's pursuit of victory. In stark contrast, during his change of plea hearing before United States District Judge Lisa Godbey Wood, Mr. Rangel swore under penalty of perjury (1) he was in fact guilty of the crimes to which he pled guilty; and (2) his guilty plea was completely voluntary, and no one forced or pressured him into pleading guilty. See Court's recording system, *For the Record*, CR 422-030, Jan. 30, 2023, 2:40:09-2:40-59, 3:09:01-3:09:13, 3:15:48-3:15:55, 3:17:43-3:18:00, 3:29:33-3:30:13; see also CR 422-030, doc. no. 17, pp. 3, 23. The Court declines to accept Mr. Rangel's new allegations over his sworn testimony. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986).

Second, many of the vague accusations asserted by Mr. Rangel fall far outside of his personal knowledge, and he never offers any explanation of how he became aware of these facts. It is no surprise, therefore, that Mr. Rangel cites § 1746 but fails to include the required verbiage that would expose him to perjury charges were his fantastical allegations proven to be false.

The Court finds these deficiencies warrant denial of Mr. Rangel's motion outright. See Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979) (holding failure to comply with the Local Rules may result in summary denial of motion). Nonetheless, for the sake of completeness, the Court will explain why there is no basis for disqualification under Rule 1.11 and 18 U.S.C. § 207(a).

### 2. As a Government Attorney, Mr. Durham Did Not Participate Personally and Substantially in Any Matter Connected to the Current Proceedings

Both Rule 1.11(a)[1] and 18 U.S.C. § 207(a)(1)[2] provide that a lawyer may not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee absent written, informed consent from the government employer. Ga. R. Prof. Conduct 1.11(a); 18 U.S.C. § 207(a)(1). Although neither the Georgia Rules nor the Model Rules define "personal and substantial" participation, in discussing Rule 1.11's predecessor, the American Bar Association explained the phrase "'substantial responsibility' envisages a much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the matter in question. It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative process." ABA Formal Op. 342 (1975).

---

[1] Rule 1.11(a) provides in full: "Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government entity gives informed consent, confirmed in writing."

[2] 18 U.S.C. § 207(a)(1) provides in relevant part:

Any person who is an officer or employee . . . of the executive branch of the United States . . . and who, after the termination of his or her service or employment with the United States . . . , knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States . . . , on behalf of any other person . . . in connection with a particular matter—
    (A) in which the United States or the District of Columbia is a party or has a direct and substantial interest,
    (B) in which the person participated personally and substantially as such officer or employee, and
    (C) which involved a specific party or specific parties at the time of such participation,
shall be punished as provided in section 216 of this title.

Here, Mr. Durham merely signed three indictments for individuals alleged to be in possession of firearms on Mr. Rangel's property when a search warrant was executed. (Doc. no. 187-2, pp. 11-21.) Though not dispositive, the state court found Mr. Rangel failed to carry his burden to demonstrate Mr. Durham's signature on the indictments established personal and substantial involvement. (See doc. no. 187-3, p. 7.) This Court agrees for two reasons.

First, the indictments signed by Mr. Durham lack the requisite connection to Mr. Durham's representation of Plaintiff in this case to establish a violation of Rule 1.11 or 18 U.S.C. § 207(a)(1). Rule 1.11 provides in relevant part, "a lawyer shall not represent a private client *in connection with a matter* in which the lawyer participated personally and substantially as a public officer or employee," Ga. R. Prof. Conduct 1.11(a) (emphasis added), while § 207(a)(1) imposes a similar restriction on private representation "in connection with a particular matter" the attorney personally and substantially worked on as a government employee, 18 U.S.C. § 207(a)(1).

Mr. Durham's signature on three indictments, solely alleging one count each of possession of a firearm by a person illegally or unlawfully in the United States in violation of 18 U.S.C. § 922(g)(5), is not sufficiently connected to the current proceedings to impose disqualification under Rule 1.11 or § 207(a)(1). The three indictments were for separate crimes occurring after Mr. Montoya's murder, were not issued against Mr. Rangel, and were prosecuted separately from the charges related to Mr. Montoya's murder. See United States v. Martinez-Martinez, No. CV 417-217 (S.D. Ga. June 13, 2018); United States v. Jhonatan Rangel, No. CV 417-218 (S.D. Ga. Apr. 16, 2018); United States v. Juan Rangel-Rubio, No. CV 417-219 (S.D. Ga. May 23, 2018); see also, e.g., United States v. Juan Rangel-Rubio, No. CV 418-274 (S.D. Ga. Apr. 18, 2023); United States v. Pablo Rangel-Rubio, No. CV 422-030

8

(S.D. Ga. Nov. 21, 2022). By contrast, the case *sub judice* relates only to the events surrounding the payroll-skimming scheme and Mr. Montoya's murder, and names none of the individuals against whom Mr. Durham signed an indictment. (See doc. no. 123.) In short, the firearm charges are entirely separate "matters," such that Mr. Durham's involvement in those criminal cases does not preclude his representation of Plaintiff here.

Second, even if there was a sufficient connection between the firearms charges and the instant suit, which there is not, Mr. Durham's signature on the three indictments is insufficient on its own to demonstrate "personal and substantial involvement" in the underlying investigation and prosecutions for the firearm offenses. Although a "single act of approving or participating in a critical step may be substantial," United States v. Montemayor, No. CR 109-551, 2017 WL 2493906, at *8 (N.D. Ga. Apr. 6, 2017), "to participate 'substantially' means that the employee's involvement is of significance to the matter." 5 C.F.R. § 2641.201; see also Registe v. State, 287 Ga. 542, 550, 697 S.E.2d 804, 811 (2010) (citing ABA Formal Op. 342 (1975), which explained the standard "contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative process"). Moreover, "[t]he 'personal and substantial' participation language may indeed be difficult to apply where the lawyer in question was 'the chief official in some vast office or organization,' because that status 'does not ipso facto give that government official or employee the "substantial responsibility" contemplated by the rule in regard to all the minutiae of facts lodged within that office.'" Registe, 287 Ga. at 550 (quoting Outdoor Advert. Ass'n of Ga., Inc. v. Garden Club of Ga., Inc., 272 Ga. 146, 149, 527 S.E.2d 856, 860 (2000)).

Mr. Durham was one of three attorneys who signed the indictment, was not lead counsel on any of the cases, signed the indictments as a matter of course as the Acting U.S. Attorney,

9

and affirms he "had no personal or substantial involvement in any investigation or prosecution stemming from Mr. Montoya's murder." (See doc. no. 187, p. 2-4 & n. 2; doc. no. 187-1, pp. 1-2; doc. no. 187-2, pp. 13-21; see also doc. no. 187-3, p. 2.)  Mere signing of these indictments alone does not constitute personal and substantial involvement in the firearms charges or any other matter at the USAO related to Mr. Rangel or Mr. Montoya's murder.  Rather, Mr. Durham's signature shows "mere perfunctory involvement in the matter in question," which is insufficient to establish a violation of either Rule 1.11(a) or 18 U.S.C. § 207(a)(1).  Outdoor Advert. Ass'n, 272 Ga. at 150; cf. Montemayor, 2017 WL 2493906 (disqualifying former AUSA under 18 U.S.C. § 207(a)(1) and Rule 1.11(a) because they reviewed investigatory information and participated in preparing wiretap applications and affidavits).

Mr. Rangel further alleges in his unsworn motion that, prior to signing the indictments, Mr. Durham was already personally and substantially involved in the murder investigation, because (1) he interviewed Mr. Montoya's widow, Maria Montoya, and (2) the interview served as the basis for the search warrant authorizing the August 20, 2017, search of Mr. Rangel's property, which in turn led to Mr. Montoya's arrest and prosecution. (Doc. no. 186, pp. 1-2.)  Mr. Rangel certainly has no personal knowledge of such events and does not bother to explain where he obtained this information.  (See id.)  More importantly, Mr. Durham explicitly denies ever speaking to Ms. Montoya prior to leaving the USAO, and further explains he did not even know who she was at that time. (Doc. no. 187-1, p. 2.)  Notably, the State Court Order denying Mr. Rangel's motion to disqualify Mr. Durham explains that Detective Rodriguez of the Garden City Police Department conducted the interview of Ms. Montoya. (Doc. no. 187-3, pp. 1-2; see also doc. 187-2, pp. 11-12).

10

In sum, the undisputed evidence conclusively establishes Mr. Durham committed no violation of Rule 1.11(a) or 18 U.S.C. § 207(a)(1), and there is no basis for his disqualification.

### 3. By Waiting More Than Five Years to Raise the Issue, Mr. Rangel Waived his Right to Seek Disqualification Under 18 U.S.C. § 207(a)(2)

In addition to the permanent restriction imposed by 18 U.S.C. § 207(a)(1) discussed *supra*, subsection (2) imposes a two-year restriction on former supervisory AUSAs for matters under their "official responsibility" without regard to whether the attorney was personally and substantially involved in the matter. 18 U.S.C. § 207(a)(2); see United States v. Tapp, No. CR107-108, 2008 WL 345717, at *3 (S.D. Ga. Feb. 6, 2008) (prohibiting former AUSA from representing criminal defendant where ASUA, while employed at USAO, helped "develop[] a case for possible prosecution" against the defendant within the prior two years).

The Court need not reach the merits of whether Mr. Durham's representation of Plaintiff constituted a violation of § 207(a)(2) in the initial two years following his resignation from the USAO, however, because the Court finds Mr. Rangel waived the right to seek disqualification by failing to timely raise the issue. See Cox, 847 F.2d at 729, 731. Mr. Rangel presents no justification for the delay and, in fact, he filed a similar motion to disqualify Mr. Durham in the Montoya action over five years ago before this case was removed to federal court. (Doc. no. 187-2, pp. 1-10.) The delay is fatal to the motion because disqualification may only occur within the two-year window established by § 207(a)(2). See United States v. Obendorf, No. 115-CR-254, 2016 WL 1595347, at *3 (D. Idaho Apr. 20, 2016) ("While the Court acknowledges Breitsameter's representation of Obendorf may once have implicated § 207(a)(2)'s two-year limitation, disqualification is not the proper way to enforce § 207(a)(2) in this case. . . . The Government could have sought disqualification much earlier . . .").

### 4.     Mr. Rangel Fails to Identify Confidential Information Mr. Durham Had Access to as a Government Employee

The Court next considers whether disqualification of Mr. Durham is warranted under Rule 1.11(b), which prohibits representation when there is a risk an attorney in private practice may misuse confidential information obtained while previously employed by the government. Ga. R. Prof. Conduct 1.11(b); Ga. R. Prof. Conduct 1.11, Comment [7]; United States v. Rasco, No. CR 408-100, 2009 WL 1873804, at *3 (S.D. Ga. June 29, 2009).  This prohibition applies without regard to the extent of the attorney's involvement in the matter as a government employee and requires the movant to identify the specific confidential information the attorney possesses at the time of the motion to warrant disqualification.  Rasco, 2009 WL 1873804, at *3.  Mr. Rangel has failed to identify any such confidential information, (see doc. no. 186), and Mr. Durham declares he did not "obtain any confidential government information about Rangel or any Defendant in this action" while at the USAO, (doc. no. 187-1, p. 2). Accordingly, there is no basis for finding a violation of Rule 1.11(b).

### 5.     Mr. Rangel Fails to Support His Remaining Allegations of Misconduct by Mr. Durham

As described *supra*, Mr. Rangel's motion includes allegations Mr. Durham:  (1) "conspired with CJA defense counsel[] . . . to plead Defendant guilty to the murder without benefits," (2) contacted Mr. Rangel's defense attorneys in 2023 while Mr. Rangel's appeal was pending in the Eleventh Circuit in an "attempt to persuade [Mr. Rangel] to cooperate in the ongoing lawsuit against Wolf/Davey" and "falsify facts," (3) sent a "proxy" with Mr. Rangel's criminal defense counsel on a prison visit at USP-Atwater in or about September 2023, who "proposed a substantial monetary bribe and legal aid" in exchange for Mr. Rangel's cooperation in the civil actions, including "authenticat[ion of] some fake documents," and (4)

"maintained direct contact with [USAO] and was kept informed on every aspect of" Mr. Rangel's prosecution after leaving government employment.  (Doc. no. 186, pp. 2-3.)  Mr. Durham asserts these allegations are "false and absurd."  (Doc. no. 187-1, p. 4.)

Liberally construing Mr. Rangel's motion, the Court presumes Mr. Rangel raises these issues as alleged violations of Rule 8.4, which prohibits professional conduct involving dishonesty, fraud, deceit, or misrepresentation.  Ga. R. Pro. Conduct 8.4(a)(4).  However, Mr. Rangel's allegations, as discussed *supra* Part II(B)(1), are vague, unsworn, and unsupported by any evidence.  Accordingly, there is no basis for finding Mr. Durham violated Rule 8.4.  See Neville v. McCaghren, No. CV 617-075, 2019 WL 97836, at *4 (S.D. Ga. Jan. 3, 2019) (denying motions to sanction opposing counsel where movant "identif[ied] no specific rule" counsel violated and the motions were "supported only by purported affidavits in which Plaintiff accuses defense counsel of misconduct with little to no factual support").

### C. No Hearing is Necessary

Mr. Rangel requests a hearing on his motion, (doc. no. 186, p. 4), which Defendants The Davey Tree Expert Company, and Wolf Tree, Inc., support, (see doc. no. 188).  Defendants The Davey Tree Expert Company, and Wolf Tree, Inc., also ask for a period of time to conduct discovery concerning Mr. Rangel's allegations.  (Id.)  "Fed. R. Civ. P. 78(b) permits courts to determine motions solely upon the briefs and 'without oral hearings.'"  Lapinski v. St. Croix Condo. Ass'n, Inc., No. CV 616-1418, 2019 WL 8128771, at *1 (M.D. Fla. Nov. 6, 2019), *aff'd*, 815 F. App'x 496 (11th Cir. 2020); see also Silva v. Swift, No. 419-CV-286, 2020 WL 12178206, at *2 (N.D. Fla. Apr. 28, 2020) ("Indeed, a district court enjoys broad discretion whether to hold a hearing or oral argument to address issues arising in a civil action." (citing Fed. R. Civ. P. 78(b))).  The Court will not waste the parties' time and money chasing evidence

13

concerning Mr. Rangel's unsupported, vague, and dubious allegations of misconduct by Mr. Durham. Litigating the litigation is rarely necessary and nearly always results in nothing important aside from delay and unnecessary expense, which flies in the face of the procedural rules' overarching goals "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

SO ORDERED this 8th day of May, 2024, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA