IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

BRIAN JOSEPH HUFFMAN, ESQ. )
AS ADMINISTRATOR OF THE )
ESTATE OF ELIUD )
MONTOYA-ARCOS, )
  Decedent, )
 )
v. ) CASE NO. 4:18-CV-00184
 )
THE DAVEY TREE EXPERT )
COMPANY, WOLF TREE, INC., )
MARJORIE L. CONNER, )
CHRISTOPHER BRANCH, )
OSCAR CRUZ, PABLO RANGEL )
a/k/a PABLO RANGEL-RUBIO, )

**MARJORIE L. CONNER'S MOTION TO DISMISS**
**AND INCORPORATED BRIEF IN SUPPORT OF THE MOTION**

COMES NOW DEFENDANT MARJORIE L. CONNER and files this motion to dismiss Plaintiff's Amended Complaint and incorporated brief in support of her motion and shows the Court as follows:

**Statement of Facts[1]**

Plaintiff is the Administrator of the Estate of Eliud Montoya-Arcos ("Mr. Montoya"). Mr. Montoya is a former employee of Defendant Wolf Tree, Inc. ("Wolf"), a tree trimming company. Mr. Montoya made a workplace complaint

---

[1] For purposes of this motion, the facts alleged in the Amended Complaint are taken as true. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). However, Ms. Conner denies many of the allegations in the Amended Complaint and nothing in this motion is intended to constitute a waiver or the admittance of the truth of any allegation.

against his supervisor, Pablo Rangel, in April of 2017.  (Amended Complaint, doc. 123, para. 50-51).  Mr. Montoya also took his complaints about his supervisor, Pablo Rangel, to the Department of Labor and to the EEOC.  (Amended Complaint, doc. 123, para. 51, 84).  Mr. Montoya was later murdered near his home on August 19, 2017, by Juan Rangel, Pablo Rangel's brother.  (Amended Complaint, doc. 123, para. 87).

Marjorie L. Conner, (hereinafter referred to as "Ms. Conner"), is an Ohio lawyer who formerly served as in-house counsel for The Davey Tree Expert Company (hereinafter referred to as "Davey").  (Amended Complaint, doc. 123, para. 7).  As in-house counsel for Davey, Ms. Conner conducted the internal legal investigation into Mr. Montoya's allegations against his supervisor Pablo Rangel set forth in the April 2017 workplace complaint.  (Amended Complaint, doc. 123, para.187-195).  Plaintiff has alleged claims against Ms. Conner for civil RICO under the Georgia law, battery, assault, negligence and intentional infliction of emotional distress, as well as claims for punitive damages and attorneys' fees.

## Argument and Citation of Authority

## I.   Legal Standard

Ms. Conner brings this motion pursuant to FRCP 12(b)(6) and challenges the legal sufficiency of Plaintiff's Amended Complaint.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must present factual allegations "enough to raise a

right to relief above the speculative level." Bell v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A pleading that offers labels, conclusions or a formulaic recitation of the elements of a cause of action will not suffice; nor will it suffice if it tenders bare assertions devoid of further factual enhancement. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Additionally, Plaintiff's Amended Complaint alleges fraud and misrepresentation and pursuant to Rule 9(b), "a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendant gained by the alleged fraud." Almanza v. United Airlines, Inc., 162 F. Supp. 3d 1341, 1352 (2016); citing, Am. Dental Association v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010).  In cases involving multiple defendants, such as this one, a plaintiff must set forth facts regarding each defendant's participation. Id.

## II.   <u>Plaintiff Fails to State a Claim Under Georgia RICO.</u>

Under Georgia's RICO statute, it is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money. Wylie v. Denton, 323 Ga. App. 161, 746 S.E.2d 689, 693 (2013), citing, O.C.G.A. Section 16-14-4(a).  A

racketeering activity, also known as a predicate act, is the commission of the attempt to commit, or the solicitation or coercing of another to commit, a "crime which is chargeable by indictment" under one of forty categories of offenses.  Id., citing, O.C.G.A. Section 16-14-3(9)(A)(i)-(xli).  A pattern of racketeering activity means that there have been at least two acts of racketeering activity that are interrelated and that they were done in furtherance of one or more incidents, schemes, or transactions. Id. citing, O.C.G.A. Section 16-14-3(8)(A).  It is additionally unlawful to conspire to violate the substantive provisions of Georgia's RICO Act.  O.C.G.A. Section 16-14-4(c).  Under Georgia law, a person may be found liable for RICO conspiracy if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts.  Id.  To assert a civil claim based upon either a violation of the Georgia RICO statute or a conspiracy to violate that statute, a plaintiff must show the defendant[s] violated or conspired to violate the RICO statute; that as a result of this conduct the plaintiff has suffered injury; and that the defendant's violation of or conspiracy to violate the RICO statute was the proximate cause of the injury.  Id., citing, Cox v. Mayan Lagoon Estates, 319 Ga. App. 101, 109(2)(b), 734 S.E.2d 883 (2012).  It is a mandatory condition to asserting a RICO claim that the plaintiff must show a direct nexus between at least one predicate act alleged and the injury that the plaintiff purportedly sustained.  Wylie v. Denton, 323 Ga. App. 161, 746 S.E.2d 689, 694 (2013).  To survive a motion to

dismiss, a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that he was injured, he must show that the injury was the direct result of a predicate act targeted toward the plaintiff such that the plaintiff was the intended victim. Id. Additionally, O.C.G.A. Section 16-14-4(a) requires that the defendant [have] acquired or maintained, directly or indirectly, an interest in or control of an enterprise, real property, or personal property through the pattern of racketeering activity or proceeds from that activity.[2] Such acquisition is an essential element of a RICO claim under O.C.G.A. Section 16-14-4(a).

Plaintiff has alleged civil RICO claims under Georgia law against Ms. Conner. (Amended Complaint, doc. 123, para. 99-164). Plaintiff alleges that Ms. Conner, an Ohio lawyer, participated in an association-in-fact enterprise from 2008 through at least 2018. (Amended Complaint, doc. 123, para. 99). Plaintiff alleges that this association-in-fact enterprise recruited, employed and harbored illegal migrants. (Amended Complaint, doc. 123, para. 20-26, 35-37). Plaintiff alleges that this association-in-fact enterprise deceived and defrauded Georgia Power regarding its use of illegal migrant labor. (Amended Complaint, doc. 123, para. 29-34). With respect to all RICO allegations asserted by Plaintiff that are not alleged to have

---

[2] Plaintiff has also failed to state a claim under O.C.G.A. Section 16-14-4(a) because Plaintiff has failed to state how Ms. Conner acquired or maintained, directly or indirectly, an interest in or control of an enterprise, real property, or personal property through a pattern of racketeering activity or proceeds from that activity. See, Five Star Athlete Mgt., Inc. v. Davis, 355 Ga. App. 774, 780, 845 S.E.2d 754 (2020) (Summary Judgment merited on RICO claim because Plaintiff failed to show acquisition of personal property, an essential element of claim). Acquisition injury is an essential element of a RICO claim under O.C.G.A. Section 16-14-4(a). Id.

directly caused injury to Plaintiff, Plaintiff has no standing to assert such claims because the statute provides a remedy under RICO only to those directly injured by the violation.  See, O.C.G.A. Section 16-14-6(c).  See also, Nicholson v. Windham, 257 Ga. App. 429, 431, 571 S.E.2d 466 (2002) (Indirect injury from alleged predicate act does not provide standing to assert a RICO claim).  Accordingly, because Plaintiff has suffered no direct injury as the result of any allegations regarding the recruitment, employment, payment and harboring of any illegal migrant, Plaintiff has no standing to assert any RICO claim with respect to these allegations.  O.C.G.A. Section 16-14-6(c); See, Nicholson v. Windham, 257 Ga. App. 429, 431, 571 S.E.2d 466 (2002).   Further, because Plaintiff has suffered no direct injury as the result of any alleged fraud and deception involving Georgia Power, Plaintiff has no standing to assert any RICO claim with respect to these allegations.  O.C.G.A. Section 16-14-6(c); See, Nicholson v. Windham, 257 Ga. App. 429, 431, 571 S.E.2d 466 (2002).

So, what is left then of Plaintiff's allegations regarding RICO claims with respect to Ms. Conner?  In Count 1, para. 107 of the Amended Complaint, Plaintiff alleges that Ms. Conner conducted and participated in efforts to conceal and prevent detection of the enterprise's unlawful activities.  (Amended Complaint, doc. 123, para. 107).  The only specific factual allegation made by Plaintiff in support of this statement is that Ms. Conner, "attempted to conceal the enterprise's unlawful

activities by committing perjury during a deposition in a civil case." (Amended Complaint, doc. 123, para. 107). Even assuming, as we must for purposes of this motion, that Plaintiff's allegation was truthful and correct, the act of perjury in a civil deposition after Mr. Montoya's death did not and could not have proximately caused the injuries claimed by Plaintiff. Plaintiff's injuries, as Administrator of the Estate of Mr. Montoya, are those injuries that stem from the murder of Mr. Montoya and those injuries are personal in nature. There is no direct nexus, no direct proximate cause between perjury in a civil deposition and any personal injury to Mr. Montoya and therefore that allegation provides no basis for a RICO claim against Ms. Conner.

The next allegation made by Plaintiff against Ms. Conner in the RICO claim appears at paragraph 117 and the allegation made is that "Conner aided and abetted the shielding from detection of illegal aliens … through witness intimidation and false statements to law enforcement." (Amended Complaint, doc. 123, para. 117). That allegation does not allege any predicate act that caused any direct injury to Mr. Montoya. Assuming such allegations to be true as we must here, any act to "aid and abet" "shielding from detection of illegal aliens" would necessarily be a predicate act that injured the "illegal aliens" not Mr. Montoya. Any "witness intimidation" other than as to Mr. Montoya would not give rise to a claim on his behalf.

With respect to any argument that Ms. Conner "aided and abetted" someone else to intimidate Mr. Montoya as a witness, Plaintiff does not state what Plaintiff contends that Ms. Conner did. Plaintiff's use of the language "aided and abetted" does not state a predicate act.  A racketeering activity, also known as a predicate act, is the commission of, the attempt to commit, or the **solicitation or coercing of another to commit**, a "crime which is chargeable by indictment" under one of forty categories of offenses. Wylie v. Denton, 323 Ga. App. 161, 746 S.E.2d 689, 693 (2013), citing, O.C.G.A. Section 16-14-3(9)(A)(i)-(xli).  Plaintiff does not allege that Ms. Conner solicited another to commit a crime or coerced another to commit a crime.[3]  Providing information, directly or indirectly, to Pablo Rangel as Plaintiff alleges is not solicitation of Pablo Rangel to commit a crime, nor is it coercion that results in Pablo Rangel committing a crime.

Furthermore, with respect to Plaintiff's allegation of "false statements to law enforcement" Plaintiff's Amended Complaint at para. 89 states Plaintiff's contention that such "false statements to law enforcement" were made "after Montoya's murder" and such statements then, could not have caused any alleged injury to Mr. Montoya. (Amended Complaint, doc. 123, para. 89, 117).

---

[3] Although Plaintiff does allege that Conner "solicited" Pablo Rangel to intimidate and threaten Mr. Montoya, Plaintiff then goes on to state that it was not actually Pablo Rangel but other employees instead who threatened Mr. Montoya.  (Amended Complaint, doc. 123, para. 125-126).

The next RICO allegation against Ms. Conner appears at paragraph 119 of the Amended Complaint. (Amended Complaint, doc. 123, para. 119). That allegation states that Ms. Conner aided and abetted the wire fraud scheme to defraud Georgia Power. (Amended Complaint, doc. 123, para. 119). Taking such allegations as true, as we must here, Georgia Power was injured by the wire fraud scheme[4], not Mr. Montoya and not Plaintiff. To the extent that Plaintiff may contend that the actions alleged in furtherance of such wire fraud scheme, "threatening physical and economic harm, intimidating and engaging in misleading conduct against those who sought to disclose and report the illegal alien workforce" are really the predicate acts alleged against Ms. Conner, Plaintiff does not allege that Ms. Conner ever threatened Mr. Montoya with physical or economic harm or otherwise intimidated Mr. Montoya. At most, Plaintiff specifically contends that Ms. Conner told Mr. Montoya that she was investigating his allegations and provided, directly or indirectly, information and/or documents to Pablo Rangel. (Amended Complaint, doc. 123, para. 56, 72, 77, 83).

The next RICO allegation made against Ms. Conner appears at paragraph 128 of the Amended Complaint. In paragraph 128, Plaintiff alleges that Ms. Conner

---

[4] Additionally, allegations of mail and wire fraud in a civil RICO action must not only be pled in accordance with the heightened pleading standard of O.C.G.A. Section 9-11-9(b) but also are required to include such matters as the time, place, and content of the alleged misrepresentations, as well as who made the alleged misrepresentations and to whom. Z-Space v. Dantanna's CNN Center, LLC, 349 Ga. App. 248, 254, 825 S.E.2d 628 (2019).

falsely assured Mr. Montoya that his allegations were being investigated, that such assurances were intentionally misleading and meant to "hinder, delay or prevent Montoya's reports to a law enforcement officer of information relating to the commission or possible commission of criminal offenses."  Plaintiff asserts that Ms. Conner thus engaged in misleading conduct to influence a witness in violation of O.C.G.A. Section 16-10-93(b).  However, according to his April 2017 letter, Mr. Montoya had already reported his allegations to the Department of Labor.  Mr. Montoya, four months later, made the same report to the EEOC.  (Amended Complaint, doc. 123, para. 51, 84).  Thus, even if Ms. Conner told Mr. Montoya that she was investigating his allegation for purpose alleged and with the requisite intent required under O.C.G.A. Section 16-10-93(b)(1)(C), Mr. Montoya had already reported the allegations to one government agency as of April 2017 and then, four months later, reported his allegations to a second government agency.[5]  Therefore, Mr. Montoya in fact did not act or fail to act in reliance on anything Ms. Conner said to him.

Plaintiff fails to allege that Mr. Montoya reasonably relied upon any such statement to his detriment and Plaintiff fails to allege that Mr. Montoya suffered damages as a result.  Plaintiff's allegations fail to state a violation of O.C.G.A.

---

[5] The Department of Labor and the EEOC are government agencies.  The statute differentiates between "law enforcement officer" and "an agency."  See, O.C.G.A. Section 16-10-93(b)(1)(C) and O.C.G.A. Section 16-10-93(b)(3)(A).

Section 16-10-93(b) and fail to state the essential elements for fraud.  See, Cox v. Bank of America, N.A., 321 Ga. App. 806, 807, 742 S.E.2d 147 (2013) (Granting motion to dismiss where Plaintiff failed to plead sufficient facts to make out a prima facie case of fraud).

The next RICO allegation against Ms. Conner appears at paragraph 129 of the Amended Complaint.  (Amended Complaint, doc. 123, para. 129).  That allegation is that Ms. Conner provided witness statements by three "illegal aliens" employed by the companies to Pablo Rangel intending to solicit Pablo Rangel to make terroristic threats against the illegal aliens.  Taking this allegation as true for purposes of this motion, Mr. Montoya was not harmed directly by any such act and Plaintiff, therefore, lacks standing to assert a RICO claim on this basis.  Wylie v. Denton, 323 Ga. App. 161, 166, 746 S.E.2d 689 (2013).

The next RICO allegation against Ms. Conner appears at paragraph 131 of the Amended Complaint.  (Amended Complaint, doc. 123, para. 131).  The allegation is that Ms. Conner informed Pablo Rangel of "Montoya's reporting of criminal activities to the federal authorities" (EEOC) and "in so doing, Conner …  aided, abetted and solicited retaliation against a federal witness in violation of 18 U.S.C. 1513."  (Amended Complaint, doc. 123, para. 131).  The act alleged is that Ms. Conner provided information to Pablo Rangel, specifically, that Mr. Montoya was reporting criminal activities to the federal authorities (EEOC).  What is missing in

this allegation is how providing information regarding an EEOC report amounts to aiding, abetting and soliciting retaliation against a federal witness in violation of 18 U.S.C. 1513.  There is no specific allegation, for example, that Ms. Conner directed, requested, commanded or otherwise importuned Pablo Rangel to murder Mr. Montoya or to harm Mr. Montoya, or even to threaten Mr. Montoya for filing a report with the EEOC.  There is no allegation that Ms. Conner coerced Pablo Rangel to take any action against Mr. Montoya.  The allegations do not state a predicate act.

The final RICO allegations against Ms. Conner both involve her actions after Mr. Montoya's death.  At paragraph 134 of the Amended Complaint, Plaintiff alleges that Ms. Conner made false statements to law enforcement after Mr. Montoya's death. (Amended Complaint, doc. 123, para. 134).  At paragraph 135 of the Amended Complaint, Plaintiff alleges that Ms. Conner gave false testimony in a deposition regarding "the timing" of her investigation, also after Mr. Montoya's death.  (Amended Complaint, doc. 123, para. 135).  These allegations concern actions taken after Mr. Montoya's death.  Neither allegation concern actions that caused any direct injury to Mr. Montoya because Mr. Montoya was deceased.  Because the actions caused no direct injury to Mr. Montoya, Plaintiff has no standing to assert a RICO claim based on these alleged predicate acts.  Wylie v. Denton, 323 Ga. App. 161, 166, 746 S.E.2d 689 (2013).  A plaintiff must show that his injury was the direct result of a predicate act targeted toward him such that he was the

intended victim.  Petlechkov v. FedEx Corporation, 2023 WL 2871651 (N.D. Ga.),

citing, Wylie v. Denton, 323 Ga. App. 161, 746 S.E.2d 689, 694 (2013); citing also,

Nicholson v. Windham, 257 Ga. App. 429, 571 S.E.2d 429 (2002) (holding that a

RICO plaintiff "must show a direct nexus between at least one of the predicate acts

… and the injury [he] purportedly sustained").   The standard for establishing

causation is high: "When a court evaluates a RICO claim for proximate causation,

the central question it must ask is whether the alleged violation led directly to the

plaintiff's injuries." Petlechkov v. FedEx Corporation, 2023 WL 2871651 (N.D.

Ga.), citing, Pollman v. Swan, 314 Ga. App. 5, 723 S.E.2d 290, 292 (2011).  Section

4(a) makes it unlawful for any person, through a pattern of racketeering activity or

proceeds therefrom, to acquire or maintain any interest in or control of any

enterprise, real property, or personal property.  O.C.G.A. §16-14-4(a).  Section 6(c)

of the statute creates a private right of action that allows a person who has suffered

an injury "*by reason of* any violation" of the statute to bring a civil claim for

damages.  O.C.G.A. §16-14-6(c) (emphasis added).  The language "by reason of"

creates a proximate cause requirement for civil plaintiffs:  they may not recover

damages unless the claimed injury is proximately caused by the violation of the

statute.  See, Pollman v. Swan, 314 Ga. App. 5, 6-7 (2011) ("When a court evaluates

a RICO claim for proximate causation, the central question it must ask is whether

the alleged violation led directly to the plaintiff's injuries."), citing, Anza v. Ideal

Steel Supply Corp., 547 U.S. 451, 461, 126 S.Ct. 119, 164 L.Ed.2d 720 (2006);

Sedmia v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)

("[T]he plaintiff only has standing if, and can only recover to the extent that, he has

been injured . . . by the conduct constituting the violation.") (emphasis added).  As

the Court explained in Wylie v. Denton, 323 Ga. App. 161, 166, 746 S.E.2d 689

(2013), (reversing the trial court's denial of Defendants' motion to dismiss RICO

and common law fraud claims), to satisfy the proximate cause element of RICO, a

plaintiff must show that the injury complained of flowed directly from at least one

of the predicate acts.  The burden is not met where a plaintiff shows merely that the

injury was an eventual consequence of the predicate act or that he would not have

been injured but for the predicate act.  Id.  Therefore, to survive a motion to dismiss,

a plaintiff asserting a RICO claim must show more than a mere allegation that an act

of racketeering occurred and that the plaintiff was injured, instead, the plaintiff must

show that the injury was the direct result of a predicate act targeted at the plaintiff

such that the plaintiff was the intended victim.  Id. citing, Longino v. Bank of Ellijay,

228 Ga. App. 37, 41, 491 S.E.2d 81 (1997); Nicholson v. Windham, 257 Ga. App.

429, 431, 571 S.E.2d 466 (2002); Green Leaf Nursery v. E.I. DuPont De Nemours

and Co., 341 F.3d 1292, 1307 (11th Cir. 2003).  As the Eleventh Circuit Court of

Appeals succinctly put it, a plaintiff has standing to sue only to the extent he has

been injured by the conduct constituting the violation.  Morast v. Lance, 807 F.2d

926, 933 (11th Cir. 1987) (affirming dismissal of Plaintiff's Complaint, including RICO claims for failure to state a claim and lack of jurisdiction).

In summary, Plaintiff lacks standing to assert claims based on predicate acts against third parties such as Georgia Power and unnamed illegal migrants. Plaintiff has failed to show that any alleged act by Ms. Conner proximately caused any injury directly to Mr. Montoya, including specifically acts alleged to have occurred after his death. Plaintiff's use of the language "aided and abetted" to try to link Ms. Conner to the acts of Pablo Rangel is facially inadequate to state a predicate act because a predicate act requires either the commission of the act, the attempt of the act, or the **solicitation or coercing of another to commit the act**, that act being a "crime which is chargeable by indictment" under one of forty categories of offenses. Wylie v. Denton, 323 Ga. App. 161, 746 S.E.2d 689, 693 (2013). Finally, Plaintiff has failed to state a claim because Plaintiff has failed to state how Ms. Conner individually acquired or maintained, directly or indirectly, any interest in or control over any enterprise, real property or personal property as the result of any alleged act, that is to say, Plaintiff has failed to state an "acquisition injury" which is an essential element of Plaintiff's RICO claim.[6] Plaintiff has failed to state a RICO claim against Ms. Conner.

---

[6] Five Star Athlete Mgt., Inc. v. Davis, 355 Ga. App. 774, 781, 845 S.E.2d 754 (2020) (Acquisition is an essential element of a RICO claim).

III.   **Plaintiff Has Failed to State a Claim of RICO Conspiracy.**

Plaintiff alleges in Count 3 of the Amended Complaint that Ms. Conner is civilly liable for racketeering conspiracy pursuant to O.C.G.A. Section 16-4-4(c). (Amended Complaint, doc. 123, para. 164).  **There are no factual allegations within that claim that are specific to Ms. Conner.   There is not even an allegation that Ms. Conner agreed to join a conspiracy.**  (Amended Complaint, doc. 123, para. 162-175).  Instead, throughout Count 3 of the Amended Complaint, Plaintiff makes blanket statements regarding the actions of "the Defendants" and "Each of the Defendants".  (Amended Complaint, doc. 123, para. 162-175).  While Plaintiff was permitted by the Court to supplement with the RICO statement required by the Court's local rules, such 108-page Local Rule statement does not cure the facial inadequacies of this claim in the Amended Complaint.

A RICO conspiracy claim that does not specify any act of any defendant but instead lumps all defendants together in vague allegations of conspiracy without providing any details such as who did what when, or when and how the conspiracy was formed is insufficient to plead a RICO conspiracy.  Omnipol, A.S. v. Multinational Def. Servs., LLC, 32 F.4th 1298, 1309-1310 (11th Cir. 2022).  The law does not authorize a finding that a conspiracy exists merely because of speculative suspicion.  Benevolent Lodge No. 3 v. Davis, 365 Ga. App. 564, 572, 878 S.E.2d 760 (2023).  Plaintiff has failed to state a claim against Ms. Conner for conspiracy.

**IV.**   **Plaintiff's Battery Claim Fails as a Matter of Law.**

In Count 4 of the Amended Complaint, Plaintiff alleges a claim for battery against Ms. Conner.  (Amended Complaint, doc. 123, para. 176-179).  Plaintiff specifically alleges that "Defendants put in place actions to the intimidation and physical injury of Eliud Montoya.  These actions include, but are not limited to, repeated gunshots made **by Juan Rangel**, at the direction of Defendant Pablo Rangel, into Montoya's body, causing intense pain and suffering."  (Amended Complaint, doc. 123, para. 177, emphasis added).  There are no allegations in Count 4 that are specific to Ms. Conner.  (Amended Complaint, doc. 123, para. 177).  The tort of battery requires unlawful touching.  <u>Lawson v. Bloodsworth</u>, 313 Ga. App. 616, 618 (2012); O.C.G.A. Section 51-1-13.  There is no allegation in the Amended Complaint that Ms. Conner unlawfully touched Mr. Montoya.  (Amended Complaint, doc. 123, para. 176-179).  There is no allegation that Ms. Conner directed or solicited any unlawful touching of Mr. Montoya.  Because there is no allegation that Ms. Conner unlawfully touched Mr. Montoya, Plaintiff has failed to adequately plead a claim against Ms. Conner for battery and this claim fails as a matter of law.

**V.**   **Plaintiff's Assault Claim Fails as a Matter of Law.**

In Count 5 of the Amended Complaint, Plaintiff alleges a claim for assault against Ms. Conner.  (Amended Complaint, doc. 123, para. 180-184).  Plaintiff's specific allegations pleaded in support of this claim are that "Defendants, through

Cruz and Rangel, threatened Montoya with violence and had the apparent ability to perform said acts of violence." (Amended Complaint, doc. 123, para. 181).  Plaintiff further alleged that, "Defendants, through Juan Rangel, threatened Montoya with physical injury on August 19, 2017, in the moments leading up to his death." (Amended Complaint, doc. 123, para. 182). Plaintiff does not allege that **Ms. Conner** threatened Mr. Montoya at any time.  (Amended Complaint, doc. 123, para. 180-184).   Plaintiff does not allege that **Ms. Conner** had an intention to commit an injury to Mr. Montoya, coupled with the apparent ability to do so.  (Amended Complaint, doc. 123, para. 180-184). There are no allegations specific to Ms. Conner within Count 5 of the Amended Complaint.

While the tort of assault does not require actual touching, or striking, or doing bodily harm, to the person of another, assault does require the "intention to commit an injury, coupled with the apparent ability to do so."  Wallace v. Stringer, 250 Ga. App. 850, 853, 553 S.E.2d 166 (2001); O.C.G.A. Section 51-1-14.  It is also fair to say that such intention must be expressed in some manner in order to cause the apprehension of the harm that is the basis of the tort.  For example, in the Wallace case, the offending party shouted at and threatened Plaintiff, including making direct threats that she would have Plaintiff dragged to the office in the back of the store. Id.  Plaintiff has failed to allege that Ms. Conner threatened Mr. Montoya.  Plaintiff has failed to allege that Ms. Conner had the intention to commit an injury coupled

with the apparent ability to do so.  Plaintiff has failed to state a claim for assault against Ms. Conner.

## VI.   **Plaintiff Fails to State a Negligence Claim Against Conner.**

The four elements of any tort action are duty, a breach of that duty, causation and damages.  McKenna Long & Aldridge, LLP v. Keller, 267 Ga. App. 171, 598 S.E.2d 892 (2004).  The threshold issue in a negligence action is whether and to what extent the defendant owes a duty to the plaintiff.  Hare Krishna Roswell Hotel, LLC v. Corsino, 369 Ga. App. 166, 168, 892 S.E.2d 785 (2023) There is no such thing as a general duty to all the world not to subject others to an unreasonable risk of harm. Id. at 169.  A legal duty sufficient to support liability in negligence is either a duty imposed by statute or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts.  Id.

Ms. Conner was, during all times at issue, in-house counsel for Davey and it was in that capacity that she received and investigated Mr. Montoya's allegations made in his April 2017 workplace complaint.  (Amended Complaint, doc. 123, para. 7).  There is no claim that sounds in ordinary negligence against a lawyer for actions undertaken in the performance of legal duties.  McKenna Long & Aldridge, LLP v. Keller, 267 Ga. App. 171, 173, 598 S.E.2d 892 (2004).  The whistleblower policy of the companies itself also did not give rise to any duty because a company's internal policies and procedures do not give rise to a legal duty.  Hare Krishna Roswell Hotel,

LLC v. Corsino, 369 Ga. App. 166, 170, 892 S.E.2d 785 (2023), citing, Sheaffer v. Marriott, 349 Ga. App. 338, 342, 826 S.E.2d 185 (2019).

Plaintiff's negligence claim against Ms. Conner is based on the following allegations:

(a) that Ms. Conner had a duty to provide Mr. Montoya a safe work environment (Amended Complaint, doc. 123, para. 187);

(b) that Ms. Conner had a duty to adequately review and address Mr. Montoya's allegations set forth in his April 2017 letter (Amended Complaint, doc. 123, para. 188);

(c) that Ms. Conner "was involved in" providing Mr. Montoya's April 2017 letter to Pablo Rangel and/or Oscar Cruz (Amended Complaint, doc. 123, para. 189);

(d) that Ms. Conner "failed to address" Mr. Montoya's allegations (Amended Complaint, doc. 123, para. 190);

(e) that Ms. Conner "breached the duty of ordinary care" by "forwarding" Mr. Montoya's April 2017 letter to Pablo Rangel (Amended Complaint, doc. 123, para. 191); and

(f) that Ms. Conner breached "the duty of ordinary care" by failing to address Mr. Montoya's allegations (Amended Complaint, doc. 123, para. 192).

Beginning with the first allegation, that Ms. Conner had a duty to provide Mr. Montoya with a safe work environment, while there is a duty under Georgia law that

**an employer** must provide its employees with a safe work environment, such requirement only extends to the employer and contemplates safety in the physical sense, that is that the workplace be organized and maintained in such a manner as to minimize the likelihood of physical injury.  Metropolitan Atlanta Rapid Transit Authority v. Mosley, 280 Ga. App. 486, 492, 634 S.E.2d 466 (2006).  Ms. Conner was not Mr. Montoya's employer.  Mr. Montoya was employed by Wolf Tree, Inc. (Amended Complaint, doc. 123, para. 38).  Mr. Montoya's murder did not occur at the workplace but near his home.  (Amended Complaint, doc. 123, para. 87). Intimidation and/or harassment without a threat of physical injury do not state a claim for a failure to provide a safe work environment.  Id.

Plaintiff then alleges that Ms. Conner had a duty to adequately review and address Mr. Montoya's allegations.  (Amended Complaint, doc. 123, para. 188, 190, 192).  Ms. Conner was, during all times at issue, in-house counsel for Davey and it was in that capacity that she investigated Mr. Montoya's allegations.  (Amended Complaint, doc. 123, para. 7).  Ms. Conner's duty to adequately review and address allegations that she investigated as a lawyer is to her client.  Mr. Montoya was not Ms. Conner's client.  Davey was Ms. Conner's client.  (Amended Complaint, doc. 123, para. 7).  There is no claim that sounds in ordinary negligence against a lawyer for actions undertaken in the performance of legal duties.  McKenna Long & Aldridge, LLP v. Keller, 267 Ga. App. 171, 173, 598 S.E.2d 892 (2004).  The

whistleblower policy of the companies itself also did not give rise to any duty because a company's internal policies and procedures do not give rise to a legal duty. Hare Krishna Roswell Hotel, LLC v. Corsino, 369 Ga. App. 166, 170, 892 S.E.2d 785 (2023), citing, Sheaffer v. Marriott, 349 Ga. App. 338, 342, 826 S.E.2d 185 (2019).

Finally, Plaintiff alleges that Ms. Conner breached the duty of ordinary care by forwarding Mr. Montoya's April 2017 workplace complaint to Pablo Rangel and by failing to address Mr. Montoya's allegations.  (Amended Complaint, doc. 123, para. 191-192).  There is no claim for ordinary negligence against a lawyer for actions undertaken in the performance of legal duties.  McKenna Long & Aldridge, LLP v. Keller, 267 Ga. App. 171, 173, 598 S.E.2d 892 (2004).  The company's internal policies did not give rise to a duty.  Hare Krishna Roswell Hotel, LLC v. Corsino, 369 Ga. App. 166, 170, 892 S.E.2d 785 (2023).  Ordinary diligence and ordinary negligence are defined by statute in O.C.G.A. Section 51-1-2.  Although the statute defines those terms, it does not impose a corresponding duty.  O.C.G.A. Section 51-1-2.  There is no general legal duty to all the world not to subject others to an unreasonable risk of harm.  Hare Krishna Roswell Hotel, LLC v. Corsino, 369 Ga. App. 166, 169, 892 S.E.2d 785 (2023), citing, Dept. of Labor v. McConnell, 305 Ga. 812, 816 (3)(a), 828 S.E.2d 352 (2019).  There is no claim for negligence where there is no duty.  There is no legal duty from Ms. Conner to Mr. Montoya.  Plaintiff

has failed to state a claim for negligence against Ms. Conner because Plaintiff has failed to state a legal duty owed to Mr. Montoya by Ms. Conner.

Plaintiff has also failed to adequately plead causation, that is how any alleged failure on the part of Ms. Conner to address Mr. Montoya's allegations made in his April 2017 workplace complaint or her alleged forwarding of that complaint to Pablo Rangel caused Juan Rangel to shoot Mr. Montoya near Mr. Montoya's home.  As the Georgia Court of Appeals has explained, where there is intervening criminal conduct, unless the intervening criminal conduct was foreseeable to the defendant, the intervening criminal conduct will be considered the proximate cause of the injury. Johnson v. Avis Rent A Car System, 311 Ga. 588, 858 S.E.2d 23 (2021); Self v. Local Mechanical Networking, Inc., 369 Ga. App. 153, 892 S.E.2d 578 (2023). There are no allegations in Plaintiff's negligence claim against Ms. Conner that adequately set forth the causal connection between the allegations regarding Ms. Conner's actions and Mr. Montoya's murder at the hands of Juan Rangel.  Plaintiff has also failed to adequately state a claim on this ground as well.

## VII.   **Plaintiff's Intentional Infliction of Emotional Distress Claim Fails.**

Plaintiff has alleged a claim for intentional infliction of emotional distress against Ms. Conner.  (Amended Complaint, doc. 123, para. 258-261).  In order to properly allege a claim based on the intentional infliction of emotional distress, a complaint must contain at least four elements: (1) [t]he conduct must be intentional

or reckless; (2) [t]he conduct must be extreme or outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; and (4) [t]he emotional distress must be severe.  Joyner v. Lifeshare Mgt. Group, LLC,  2018 WL 6092743 (S.D. Ga. 2018), citing, Cottrell v. Smith, 299 Ga. 517, 521, 788 S.E.2d 772 (2016).  Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.  Fisher v. Toombs County Nursing Home, 223 Ga. App. 842, 946, 479 S.E.2d 180 (1996).  The burden is high.  The defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be atrocious and utterly intolerable in a civilized community.  Turnbull v. Northside Hospital, Inc., 220 Ga. App. 883, 884, 470 S.E.2d 464 (1996).

As the basis of this claim, Plaintiff alleges specifically that Ms. Conner "repeatedly" exposed Mr. Montoya's identity and complaints, as well as the identity and complaints of other whistleblowers.[7]  (Amended Complaint, doc. 123, para. 257-261).  Plaintiff alleges that Ms. Conner, directly or indirectly, disclosed Mr. Montoya's identity and complaints in connection with Mr. Montoya's April 2017 workplace complaint.  (Amended Complaint, doc. 123, para. 55-56, 189).  These factual allegations being taken as true for purposes of this motion only, Mr. Montoya's identity and complaints were no great secret to Pablo Rangel based on

---

[7] Plaintiff does not have standing to assert a claim for intentional infliction of emotional distress based on conduct directed at anyone other than Mr. Montoya.

Plaintiff's own allegations that Pablo Rangel knew that Mr. Montoya had made complaints about him in 2016.  (Amended Complaint, doc. 123, para. 48).  In view of that, the conduct alleged here, that Ms. Conner disclosed Mr. Montoya's identity and complaints, could hardly be considered the type of conduct that is so extreme as to go beyond all possible bounds of decency and to be atrocious and utterly intolerable in a civilized community.  <u>Turnbull v. Northside Hospital, Inc.</u>, 220 Ga. App. 883, 884, 470 S.E.2d 464 (1996).  Plaintiff has failed to allege conduct sufficiently extreme and outrageous to support this claim under Georgia law and has therefore, failed to state a claim.

Additionally, the Amended Complaint is utterly silent as to any factual allegation regarding the alleged emotional distress.  (Amended Complaint, doc. 123, para. 258-261).  There is no allegation that Mr. Montoya suffered any physical sign or symptom of distress.  (Amended Complaint, doc. 123, para. 258-261).  There is no allegation that Mr. Montoya sought any medical treatment.  (Amended Complaint, doc. 123, para. 258-261).  The failure to plead factual allegations sufficient to establish severe emotional distress is fatal to Plaintiff's claim. <u>See</u>, <u>Monsrud v. Regenerative Orthopaedics and Spine Institute</u>, 2020 WL 12654451 (N.D. Ga.) (2020).  Simply stating a legal conclusion without supporting facts is insufficient to meet Plaintiff's burden to state a claim.  <u>Roberts v. JP Morgan Chase Bank</u>, 342 Ga. App. 73, 77, 802 S.E.2d 880 (2017).

## <u>Conclusion</u>

Ms. Conner respectfully requests that all claims against her be dismissed with prejudice.

Respectfully submitted, this 20th day of June, 2024.

BUTLER PRATHER LLP

*/s/ Kimberly Cofer Butler*

| | |
|---|---|
| P.O. Box 2766 | KIMBERLY COFER BUTLER |
| Columbus, GA 31902 | Georgia State Bar No. 172950 |
| T:  (706) 322-1990 | kcbutler@butlerprather.com |
| F:  (706) 323-2962 | Counsel for Defendant Marjorie L. Conner |

## <u>NOTICE OF ELECTRONIC SERVICE</u>

I hereby certify that I have this day served a true and correct copy of the within and foregoing document on all parties in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

This 20th day of June, 2024.

BUTLER PRATHER LLP

*/s/ Kimberly Cofer Butler*

| | |
|---|---|
| P.O. Box 2766 | KIMBERLY COFER BUTLER |
| Columbus, GA 31902 | Georgia State Bar No. 172950 |
| T:  (706) 322-1990 | kcbutler@butlerprather.com |
| F:  (706) 323-2962 | Counsel for Defendant Marjorie L. Conner |