IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| BRIAN J. HUFFMAN, as Administrator of the Estate of ELIUD MONTOYA-ARCOS, Deceased, | ) ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 4:18-cv-00184 |
| v. | ) ) ) | Hon. R. Stan Baker |
| THE DAVEY TREE EXPERT COMPANY; WOLF TREE, INC; MARJORIE L. CONNER; CHRISTOPHER Branch; OSCAR CRUZ; and PABLO RANGEL, also known as Pablo Rangel-Rubio, | ) ) ) ) ) ) | **Oral Argument Requested** |
| *Defendants.* | ) | |

**CHRISTOPHER BRANCH'S MOTION TO DISMISS
AND INCORPORATED BRIEF IN SUPPORT**

COMES NOW Christopher Branch ("Defendant" or "Branch") and files his Motion to Dismiss and Incorporated Brief in Support. This Motion seeks dismissal of Plaintiff's civil RICO, assault and battery, and intentional infliction of emotional distress ("IIED") claims.[1] *See* Doc. 123 at Counts 1-5 and 15.

I.      **Procedural Background**

Last year, Plaintiff filed an Amended Complaint and each of the named defendants filed Motions to Dismiss. *See* Doc. 193. Those Motions were denied without prejudice, and the Court ordered Plaintiff to comply with LR 9.1 by filing a complete RICO statement. *Id.* Plaintiff has

---

[1] In addition, Plaintiff has alleged negligence (Count 8), negligent hiring and retention (Count 10), and respondeat superior (Count 9). Doc. 123. Plaintiff also brought a survival claim (Count 20) and seeks attorney's fees (Count 21) and punitive damages (Count 22). *Id*. These claims will be addressed by a Motion for Summary Judgment at the appropriate time.

done so (*see* doc. 196), and – in accordance with this Court's orders (*see* doc. 193 and 203) – Defendant is now again seeking the dismissal of Plaintiff's RICO claims.

## II.   Statement of Alleged Facts[2]

Per the Amended Complaint (*see* Doc. 123 ¶ 16-95), Plaintiff makes the following allegations specific to Defendant Branch[3]:

- Branch was Pablo Rangel's supervisor.[4] Doc. 123 ¶ 55.

- Rangel supervised employees of the Company Defendants in the Savannah area. *Id.* ¶ 19. This included Eliud Montoya. *Id.* ¶ 43.

- In April 2017, Montoya created a "whistleblower report" alleging non-violent illegal activity on the part of Rangel. *Id.* ¶ 50.

- After receiving a copy of the 2017 "whistleblower report," Branch gave it to Rangel and told him that Montoya was the "whistleblower." *Id.* ¶ 55. This was an alleged violation of a whistleblower policy set by the Company Defendants. *Id.*

- Rangel confirmed to Branch that he had "provided Wolf Tree illegal-alien employees with false identifications in exchange for money." *Id.* ¶ 56. Branch reported this to the Company Defendants. *Id.*

---

[2] For purposes of this Motion only, the facts alleged in the Amended Complaint are assumed to be true. *See Ray v. Spirit Airlines, Inc.,* 836 F.3d 1340, 1347 (11th Cir. 2016) ("We accept, as we must at this stage, the allegations in the complaint as true and construe them in the light most favorable to the plaintiffs."). It should be noted, however, that Plaintiff has taken extensive liberties – and indeed, directly contradicts the record evidence – throughout the Amended Complaint and in his LR 9.1 statement.

[3] The general facts and background are set forth in greater detail in the Company Defendants' previously filed Motion to Dismiss. *See* Doc. 144.

[4] Plaintiff's LR 9.1 Statement contradicts this, and erroneously claims that Branch is "an officer" of Davey Tree and Wolf Tree. Doc. 196 at 75.

- At a May 2017 meeting, which was called by Rangel and Oscar Cruz and attended by the Savannah workforce, "Rangel read Montoya's whistleblower report aloud to all of the employees, stated that Montoya was the whistleblower, and threatened and intimidated Montoya." *Id.* ¶ 61. Plaintiff labels this May 2017 meeting a "riot." *Id.*

- At some point during the meeting, Branch – who was not present – called Cruz "to get an update on what was happening at the employee meeting." *Id.*

- Later that month, one of the Company Defendants' regional safety managers spoke to Montoya and read his April 2017 report. *Id.* ¶ 65-66. This safety manager then asked Branch about what should be done, and Branch said to contact the companies' general counsel, Marjorie Conner. *Id.* ¶ 66.

- A few days later, Cruz allegedly overhead Branch, Branch's supervisor (David Jackson), and another "corporate officer" discussing how to build a "paper trail" to "get rid of Montoya" and "silence him." *Id.* ¶ 68.

- At some point during this period, Branch allegedly "falsely assured" Montoya that his 2017 whistleblower report was being taken seriously by the Company Defendants. *Id.* ¶ 72.

- In early August 2017, Montoya gave Conner three statements signed by other Savannah employees reporting on Rangel's activities. *Id.* ¶ 75. Branch allegedly gave those statements to Rangel. *Id.* ¶ 77.

- On August 16, 2017, Montoya was suspended by David Jackson "for a false and fabricated 'safe practice violation'" and Branch was aware of this. *Id.* at 79.

This is the full extent of Branch's direct involvement in this matter, according to Plaintiff's own account of the facts as alleged in the Amended Complaint. *See* Doc. 193 ¶ 16-95. Notably absent are any **facts** that support the conclusion that Branch himself committed any crimes or was a knowing participant in an organized criminal enterprise.[5]

Plaintiff's Rule 9.1 Statement fares no better. That document regurgitates the following claims:

- Branch and others did not properly investigate Montoya's "whistleblower" letter. Doc. 196 at 6.

- Branch and others gave the letter to Rangel, "intending him to silence Montoya." *Id.*

- Branch and others did not prevent Rangel's "threatening and retaliatory actions." *Id.* at 7.

- Branch and others directed Cruz to cite Montoya with an employee violation notice. *Id.*

- Branch and Conner falsely assured Montoya that his allegations were being taken seriously. *Id.* at 8.

- Branch provided statements from other employees to Rangel. *Id.* at 9.

- Branch and Conner informed Rangel of Montoya's efforts to report Rangel's crimes. *Id.* at 10.

---

[5] "The Georgia General Assembly was specific in stating the limitations of the Georgia RICO Act: The General Assembly declares that the intent of this chapter is to impose sanctions against the subversion of the economy by organized criminal elements. This chapter shall be construed to further that intent." *Doxie v. Ford Motor Credit Co.*, 603 F. Supp. 624, 628 (S.D. Ga. 1984) (cleaned up).

More broadly, Plaintiff alleges that none of the Defendants appropriately addressed Montoya's complaints about Rangel, which resulted in Montoya going to the EEOC in August 2017. Doc. 193 ¶ 82. Two days later, Montoya was murdered. *Id*. ¶ 87. This murder was premeditated by Rangel, and it was carried out by his brother Juan and a third party (Higinio Perez-Bravo). *Id.* ¶ 87.

As a result of **Rangel's** criminal act, Plaintiff has brought a RICO claim against Branch, as well as IIED and assault/battery allegations. As shown below, these claims are defective and should be dismissed.

## III.   Argument and Citation to Authority

### A.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must present factual allegations sufficient "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (emphasis added).

On top of the *Twombly/Iqbal* standard, civil RICO claims require compliance with Rule 9(b) and LR 9.1. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (applying Rule 9(b) analysis, noting that "[c]ivil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."); *see also Williams v. Mohawk Indus., Inc.*, 314 F. Supp. 2d 1333, 1344 (N.D. Ga. 2004), *amended*, 4:04-CV-0003-HLM, 2004 WL 7333989 (N.D. Ga. May 27, 2004), *and aff'd in part, rev'd in part and remanded*, 411 F.3d 1252 (11th Cir. 2005), *cert. granted, judgment vacated*, 547 U.S. 516, 126 S. Ct. 2016, 164 L. Ed. 2d 776 (2006) ("[T]he plaintiff was required to plead predicate acts … with

particularity simply because Local Rule 9.1 for the United States District Court for the Southern District of Georgia requires such specificity.").

### B. Plaintiff has failed to plead a valid substantive RICO claim.

To state a Georgia civil RICO claim, Plaintiff must plead – with specificity – the following elements: (1) that Defendants violated the RICO statute (O.C.G.A. § 16-14-4), (2) that he has suffered injury, and (3) that Defendants' RICO violations were the proximate cause of the injury. *Functional Products Trading, S.A. v. JITC, LLC*, 1:12-CV-0355-WSD, 2014 WL 3749213, at *13–14 (N.D. Ga. July 29, 2014). "In order to make out a racketeering claim under Georgia's RICO statute, a claimant must allege two interrelated predicate offenses." *Jannuzzo v. Glock, Inc.*, 721 Fed. Appx. 880, 884 (11th Cir. 2018). And "[t]here must be a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury the plaintiff purportedly sustained." *Functional Products Trading, S.A.,* 2014 WL 3749213, at *13–14 (citations omitted and cleaned up). Finally, a plaintiff's RICO allegations "must be supported by specific facts upon which the Court can make a determination as to whether a plausible claim has been sufficiently alleged." *Schmitt v. Reimer*, CV 110-102, 2011 WL 13216939, at *9 (S.D. Ga. Aug. 17, 2011) (discussing the specificity requirements set forth in the Federal Rules and this Court's Local Rules).

In the Amended Complaint, Plaintiff lays out Defendants' alleged "pattern of racketeering activity" in "paragraphs 109 through 142." Doc. 123 ¶ 150. Of those, there are ten paragraphs that mention Branch – always lumped alongside at least one other person – "soliciting" or "aiding and abetting" a predicate offense. *See id.* ¶ 117-119 and 125-131. As demonstrated below, these allegations do not amount to a valid RICO claim.

Focusing first on the proximate cause element, Plaintiff's RICO claims fail because he has not shown that Branch's alleged conduct "**led directly** to the plaintiff's injuries." *Petlechkov v.*

*FedEx Corp.*, 2023 WL 2871651, at *3 (N.D. Ga. Apr. 7, 2023) (emphasis added); *see Otero v. Vito*, 5:04-CV-211 (CAR), 2007 WL 445277, at *6 (M.D. Ga. Feb. 6, 2007) ("Inherent in every Georgia RICO claim is a proximate-cause requirement."). The applicable authority is clear: "to survive a motion to dismiss, a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that she was injured." *Wylie v. Denton*, 323 Ga. App. 161, 166 (2013). "Rather, she must show that her injury was **the direct result of a predicate act targeted toward her**, such that she was the intended victim." *Id.* (emphasis added).

To satisfy this requirement, Plaintiff must "must show that one of the predicate acts directly harmed *[him],* not a third party," **and** that the "injury flowed directly from the predicate acts targeted at [him]." *Smith v. Morris, Manning & Martin, LLP*, 293 Ga. App. 153, 165–66 (2008) (emphasis in the original). This rule immediately disposes of Plaintiff's claims about Branch's alleged participation in any scheme to use undocumented immigrants in violation of 8 U.S.C. § 1324(a)(1)(A) (doc. 123 ¶ 117), defraud Georgia Power in violation of O.C.G.A. § 16-8-3 and 18 U.S.C. § 1343 (*id.* ¶ 118-119), or threaten two unnamed undocumented immigrants in violation O.C.G.A. § 16-11-37 (*id.* ¶ 129).[6] None of those alleged predicate offenses were directed at Montoya, so they must be set aside from the start. *See Lockhart v. Columbian Chemicals Co., Inc.*, 1:07-CV-0669-BBM, 2007 WL 9706424, at *3 (N.D. Ga. Aug. 31, 2007) ("A RICO plaintiff "can only recover for injuries incurred as a result of predicate acts directed towards himself, as opposed to predicate acts directed towards third parties.") (citations omitted); *see also Maddox v. S. Eng'g Co.*, 231 Ga. App. 802, 805, 500 S.E.2d 591, 594 (1998) ("If no injury flowed from a particular predicate act, no recovery lies for the commission of that act.").

---

[6] These alleged violations would have been directed at the federal government, Georgia Power, or the unnamed undocumented immigrants.

This leaves six predicate offenses allegedly committed by Branch *and* aimed at Montoya. *See* Doc. 123 ¶ 125-128 and 130-131. Plaintiff claims the following:

(1)     In a May 2017 meeting (which Plaintiff has termed a "riot"), "**Conner, Branch and others**" solicited a violation of O.C.G.A. § 16-10-93 (Influencing Witnesses) by **Rangel**, who was aided and abetted by **Cruz**. *Id.* ¶ 125.

(2)     At the so-called riot, "**Rangel**, aided and abetted by **Cruz and Branch**, solicited and coerced **others** to make terroristic threats against Montoya, in violation of O.C.G.A. § 16-11-37 [Terroristic Threats]." *Id*. ¶ 126.

(3)     On June 1, 2017, "**Cruz**, at the direction and solicitation of **Branch and other Wolf Tree and Davey Tree officers**, threatened economic harm to Montoya by citing him with a false and retaliatory employee violation… in violation of O.C.G.A. § 16-10-32(b) [Threatening of Witnesses]." Id. ¶ 127.

(4)     "From on or about April of 2017 through on or about August 7, 2017, **Conner and Branch** falsely assured Montoya that his whistleblower reports were being investigated and taken seriously by Davey Tree and Wolf Tree.... In so doing, **Conner and Branch** engaged in misleading conduct to influence a witness in violation of O.C.G.A. § 16-10-93(b) [Influencing Witnesses]." *Id*. ¶ 128.

(5)     "On or about August 16, 2017, **David Jackson**, a corporate officer of Davey Tree and Wolf Tree, aided, abetted, and solicited by **Branch**, caused and threatened economic harm to Montoya by citing him with a false, fabricated and retaliatory employee violation and three-day suspension… in violation of O.C.G.A. § 16-10-32(b) [Threatening of Witnesses]." *Id*. ¶ 130.

(6)      On August 16, 2017, "**Conner and Branch**" informed Rangel of Montoya's reporting of criminal activities to the EEOC. "In so doing, **Conner and Branch** aided, abetted and solicited retaliation against a federal witness, in violation of 18 U.S.C. § 1513 [Retaliating Against a Witness]." *Id.* ¶ 131.

These allegations are deficient for multiple reasons.

### 1. Plaintiff has failed to show a direct link between Branch's actions and Montoya's injuries.

As an initial matter, Plaintiff did not adequately plead proximate cause as to the six predicate acts that were allegedly directed towards Montoya. "A plaintiff bringing a RICO claim under Georgia law must show an injury by a pattern of racketeering activity." *Petlechkov v. FedEx Corp.*, 23-12259, 2024 WL 729006, at *4 (11th Cir. Feb. 22, 2024) (citations and punctuation omitted); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654–55 (2008) (for a RICO plaintiff to have standing, there must be a "**direct relation** between the injury asserted and the injurious conduct alleged."). "The standard for establishing causation is **high**: When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation **led directly** to the plaintiff's injuries." *Petlechkov*, 2024 WL 729006, at *4 (citations and punctuation omitted, and emphasis added).

Here, the injury to Plaintiff is the death of Montoya (and any pre-death pain and suffering, along with related costs). Doc. 123 ¶ 271; *see also* Doc. 196 at 102-103 (discussing the following injuries allegedly suffered by Plaintiff: murder, pain and suffering, emotional distress, and lost income due to the murder, as well as nebulous, nonspecific "injuries and damages caused by the threats of death and serious bodily injury" and the attempts to "influence and retaliate against him."). But Plaintiff fails to show a direct nexus between the murder of Montoya (or any other injury) and any purported racketeering activity on the part of **Branch**. "RICO does not provide a

remedy for every injury that may be traced to a predicate act, but instead requires proximate cause between the injury and the act." *Parker v. Diverse Staffing Georgia, Inc.*, 120CV01913TWTRGV, 2020 WL 10575029, at *10 (N.D. Ga. Dec. 23, 2020), *report and recommendation adopted*, 1:20-CV-1913-TWT, 2021 WL 3367263 (N.D. Ga. Jan. 12, 2021). Plaintiff's "burden is not met where a plaintiff shows merely that his injury was an eventual consequence of the predicate act or that he would not have been injured but for the predicate act." *Overlook Gardens Properties, LLC v. Orix, USA, LP*, 366 Ga. App. 820, 834, 884 S.E.2d 433, 447 (2023). At best, Plaintiff's allegations show that Montoya's injuries were an "eventual consequence" of Branch's acts or omissions.

Plaintiff claims that Branch was somehow a participant in **other people's** efforts to (a) keep Montoya from reporting Rangel's crimes (Doc. 123 ¶ 125, 127, 128, 130), (b) threaten Montoya (*id.* ¶ 126), or (c) retaliate against him (*id.* ¶ 131). But nothing Branch did – even taking the Amended Complaint as true – led **directly** to the murder of Montoya. The alleged predicate acts, at the very most, led **indirectly** to Plaintiff's injuries. This is fatal to Plaintiff's RICO claims, as "[t]he connection between the racketeering activity and the injury can be neither remote, purely contingent, nor **indirect**." *Ray v. Spirit Airlines, Inc.,* 836 F.3d 1340, 1349 (11th Cir. 2016) (emphasis added). Brach did not order the hit or pull the trigger, and he did not even participate in the alleged "riot," threaten Montoya, write any employee violation notices, etc. So, while a generous reading of the Amended Complaint might show that "Plaintiff's injuries may [have been] a potentially foreseeable outcome of [Branch's] alleged actions, … the [Amended] Complaint fails to show that they are the **direct result** of those acts." *Petlechkov*, 2024 WL 729006, at *4.

In stark contrast, Plaintiff specifically alleges proximate cause as to **Rangel's** predicate act (murder). *See, e.g.,* Doc. 123 ¶ 133 ("On August 19, 2017, Rangel, with malice aforethought, and with the intent to retaliate against Montoya and to silence Montoya from further reporting criminal

conduct to federal and state law enforcement, planned, aided, abetted and caused the murder of Montoya, in violation of 18 U.S.C. § 1513(a) (Federal Witness Retaliation) and O.C.G.A. § 16-5-1 (Murder)."). Of course, Plaintiff does not claim – because he cannot – that Branch had any hand in the commission of that crime. *Id.* And, per the allegations of the Amended Complaint, the cause of any non-murderous injuries to Montoya was due Rangel reading Montoya's "whistleblower report aloud" at the "riot" (*see* Doc. 123 ¶ 61), not any affirmative act by Branch. Thus, because Plaintiff cannot establish the essential element of proximate cause as to Branch, the Amended Complaint is due to be dismissed. *See Petlechkov*, 2024 WL 729006, at *4.

## 2. Plaintiff has failed meet Rule 9(b) and LR 9.1's specificity requirements.

"To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). "In a case with multiple defendants, the complaint should contain specific allegations with respect to **each defendant**; **generalized allegations lumping multiple defendants together are insufficient**." *W. Coast Roofing & Waterproofing. Inc. v. Johns Manville, Inc.*, 287 Fed.Appx. 81, 86 (11th Cir. 2008) (emphasis added, internal quotation marks omitted).

Despite being on notice of the 9(b) pleading requirements (*see* Doc. 100), Plaintiff continues to lump Defendants together in the paragraphs naming Branch. *See* Doc. 123 ¶ 117-119 and 125-131. In **each** of those paragraphs accusing Branch of wrongdoing, Branch is grouped with at least one other party (and, in four instances, some unnamed "others"). *Id.* And Plaintiff's 108-page RICO Statement does not cure this problem. *See* Doc. 196. A search of the word "Branch"

in that document yields 128 results, and – with just a few exceptions – every mention of Branch has him lumped in with others. *Id.* This does not comply with this Court's requirements for RICO claims. *See Christian v. Okefenokee Charlton Tr.*, 5:19-CV-034, 2020 WL 5242931, at \*4 (S.D. Ga. Sept. 2, 2020) ("Plaintiffs' RICO Statement is unhelpful in navigating this claim because instead of stating specifically what actions Defendants took that give rise to Plaintiffs' state and federal RICO claims, Plaintiffs instead present conclusory allegations that each Defendant committed various predicate offenses (many of which are not also alleged in the Amended Complaint), recount extraneous facts unrelated to their RICO claims, and generally fail to clearly connect what facts they do allege to their RICO claims…").

In short, none of the allegations against Branch "fairly "alert [Branch] to the **precise** misconduct with which [he] is charged." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (emphasis added). Indeed, nowhere in the Amended Complaint are there specific facts[7] directed at Branch telling him "the **precise** statements, documents, or misrepresentations made, the time and place of any such statement or documents, the content of those statements or documents, the manner in which any such statements or documents mislead the Plaintiff, or **what [he] had to gain** through any alleged fraud." *Walsh v. Carswell Cherokee Tr.*, 5:19-CV-49, 2019 WL 13211093, at \*6 (S.D. Ga. July 31, 2019) (emphasis added).

This Court should reject outright the vague, overbroad, and conclusory claims of criminal conduct lodged against Branch alongside the Company Defendants, Conner, Cruz, and "others." *See Burgess v. Religious Tech. Ctr., Inc.*, 600 Fed. Appx. 657, 661–62 (11th Cir. 2015) ("This court has repeatedly held that lumping multiple defendants together in such generalities is

---

[7] Plaintiff should have had no difficulty pleading specific facts, as he has the reams of evidence (including the transcripts of 50+ depositions) from the companion State Court case available to him.

insufficient under Rule 9(b)"); *see also Swanson v. Cobb Cnty. Dep't of Family & Children Servs.,* 1:21-CV-04978-JPB, 2023 WL 2169044, at \*3 (N.D. Ga. Feb. 21, 2023) ("Where a plaintiff brings claims against multiple defendants, 'the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient to permit the defendants, or the Court, to ascertain exactly what plaintiff is claiming.'"). Counts 1-3 of the Amended Complaint can be dismissed on this ground alone.

### 3. Plaintiff has failed to allege two predicate offenses committed by Branch.

Finally, Plaintiff has failed to provide factual support sufficient to show that Branch actually committed two predicate offenses. Again, Plaintiff must show that Branch "committed any predicate offense at least twice." *Benevolent Lodge No. 3 v. Davis*, 365 Ga. App. 564, 568–69, 878 S.E.2d 760, 764–65 (2022). Instead of such a showing, the Complaint only contains vague, conclusory, and speculative allegations about Branch "soliciting," "aiding and abetting," or "coercing" **others** to violate various predicate acts. And while "racketeering activity" can include soliciting, coercing, or intimidating another to commit a crime (*Dorsey v. State*, 279 Ga. 534, 539, 615 S.E.2d 512, 518 (2005)), these allegations must be supported by well-pled facts. This is where Plaintiff fails.

Boiled down, the facts demonstrate that Branch's actions were limited to (a) giving Rangel the "whistleblower report," (b) allegedly knowing about **other people** participating in a "riot" and **other people** citing Montoya with "fabricated" workplace violations, and (c) generally not conducting a thorough enough investigation into Montoya's complaints. *See* Docs. 193 and 196. **None of this amounts to criminal activity.**

The closest Plaintiff comes to pleading a predicate act is the claim that, two days before the murder, "Conner and Branch informed Rangel of Montoya's reporting of criminal activities to

13

the federal authorities." Doc. 123 ¶ 131. But Plaintiff does not allege that it was in fact Branch who "made sure Rangel knew of Montoya's efforts to report criminal activities to federal authorities." *Id.* at 82-83. Thus, Plaintiff has included no factual support – outside of the single, conclusory statement in paragraph 131 – to support the claim that Branch aided or abetted retaliation against a federal witness. Furthermore, regardless of who allegedly informed Rangel of Montoya going to the EEOC, that allegation – if believed – would provide support for **only one predicate act** – an act which has not been sufficiently supported because there is no indication that Branch "knowingly and substantially assisted the principal violation" (i.e., Rangel's murder scheme) as required in the RICO context. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1410 (11th Cir. 1994). Branch could not have aided and abetted any retaliation against Montoya because the facts as alleged do not show any "substantial assistance" from Branch, nor do they show that he was aware of Rangel's overall scheme to murder Montoya. *Id.*

Plaintiff tries to morph Branch's actions into predicate offenses by labeling his conduct as "solicit[ing]" or "aid[ing] and abet[ing]" violations of O.C.G.A. § 16-10-93 (Influencing Witnesses), O.C.G.A. § 16-11-37 (Terroristic Threats), O.C.G.A. § 16-10-32(b) (Threatening of Witnesses), and 18 U.S.C. § 1513 (Retaliating Against a Witness). *See* Doc. 123 ¶ 125-128 and 130-131. The facts, however, do not support that Branch personally committed any of these offenses or was a knowing participant in any such schemes. "Plaintiff merely references multiple criminal statutes in a threadbare manner" and fails to "plausibly allege that [Branch] engaged in a single act of racketeering—let alone a pattern of racketeering activity." *Delta Elite Investments, LLC v. U.S. Bank Tr. Nat'l Ass'n*, 1:23-CV-4265-SDG-JKL, 2024 WL 1009458, at *4 (N.D. Ga. Jan. 18, 2024) (analyzing Georgia's civil RICO statute). This is insufficient to state a colorable RICO claim. *See Jannuzzo v. Glock, Inc.,* 721 Fed. Appx. 880, 884 (11th Cir. 2018) (affirming the

dismissal of a plaintiff's RICO claims when the Complaint contained "conclusory statements

[un]supported by specific facts sufficient to plausibly constitute the alleged predicate offenses").

### C.  Count 3 fails because Plaintiff's substantive RICO claim fails.

O.C.G.A. § 16-14-4(c) provides that it is unlawful to conspire to violate O.C.G.A. § 16-

14-4(a)-(b). Plaintiff – in a deficient, conclusory fashion – brings his conspiracy claim based on

the same conduct as his underlying RICO claim (*see* Doc. 123 ¶ 163), but he "again fails to point

to specific facts indicating a 'pattern of racketeering activity' sufficient to support liability." *C.C.*

*v. H.K. Grp. of Co., Inc.*, 1:21-CV-1345-TCB, 2022 WL 467813, at *5 (N.D. Ga. Feb. 9, 2022)

(citations and punctuation omitted). And "[b]ecause [the] allegations are insufficient to plausibly

allege any RICO violation," as demonstrated in the preceding sections, Plaintiff's RICO conspiracy

claim fails. *Id*; *see also Jackson v BellSouth Telecomm'cns*, 372 F.3d 1250, 1269 (11th Cir. 2004)

(dismissing RICO conspiracy claim where the court "already found that the complaint failed to

state a substantive RICO claim"); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 728 (11th Cir. 2021)

(affirming dismissal of Section 4(c) conspiracy claim predicated on the same "allegations as the

substantive RICO claims").

### D.  Plaintiff's intentional infliction of emotional distress (Count 15) claim fails.

In addition to RICO, Plaintiff has brought an intentional infliction of emotional distress

("IIED") claim. *See, e.g.,* Doc. 123 at Count 15. This claim also fails.

> In order to properly allege a claim based on the intentional infliction of emotional
> distress, a complaint must contain at least four elements: (1) [t]he conduct must be
> intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3)
> [t]here must be a causal connection between the wrongful conduct and the
> emotional distress; and (4) [t]he emotional distress must be severe.

*Joyner v. Lifeshare Mgmt. Grp., LLC*, 2018 WL 6092743, at *4 (S.D. Ga. Nov. 21, 2018) (Moore,

J.). Ordinary mental distress is not enough. "The law intervenes **only where the distress inflicted**

**is so severe that no reasonable man could be expected to endure it.**" *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 230 (1985) (emphasis added).

The IIED claims must be dismissed because they consist of a rote recitation of the elements of the tort accompanied by blanket citations to the **entire** fact section of the Amended Complaint. *See, e.g., Monsrud v. Regnerative Orthopaedics & Spine Inst., P.C.*, 2020 WL 12654451, at *9 (N.D. Ga. Sept. 9, 2020) (dismissing IIED claim because "mostly formulaic recitations of the elements of the IIED claim, [] fall short of meeting the relevant pleading standard") *report and rec. adopted sub nom.*, 2020 WL 12654449 (N.D. Ga. Sept. 29, 2020). The Amended Complaint is silent on how any of Branch's conduct was "extreme and outrageous" and was causally related to any "severe" emotional distress suffered by Montoya. *Joyner*, 2018 WL 6092743, at *4.

Indeed, Plaintiff has not set forth a single fact concerning emotional distress, let alone **severe** emotional distress. For example, he does not allege that Montoya suffered any particular type of emotional distress (*e.g.*, terror, debilitating anxiety), experienced any physical manifestation or mental health symptoms (*e.g.*, psychotic break, despondency), or that he sought out or obtained any medical or psychological treatment.[8] The absence of such allegations is fatal. *See e.g.*, *Monsrud,* 2020 WL 12654451, at *10 (IIED claim dismissed where plaintiff "fail[ed] to allege facts showing that [she] has suffered extreme emotional distress;" that plaintiff was "under stress and forced to seek medical care, with no allegation about any resulting treatment or diagnosis of severe emotional distress, [were] insufficient"); *Roberts v. JP Morgan Chase Bank, Nat'l Ass'n*, 342 Ga. App. 73, 77 (2017) (dismissing IIED claim where complaint "says nothing at all about humiliation, embarrassment, fright, extreme outrage, or severe emotional distress"); *Timmons v.*

---

[8] Plaintiff also does not explain *which* of the Defendants' conduct is extreme and outrageous, and instead relies on every single factual allegation in the Amended Complaint. And since he does not allege any emotional distress, he also fails to plead the *causation* element of the claim.

*Bryson*, 2016 WL 4082710, at *7 (S.D. Ga. Aug. 1, 2016) (dismissing IIED claim where plaintiff failed "to set forth any facts making it plausible that the actions of [defendants] caused him severe emotional distress").

### E.  Plaintiff's assault and battery claims (Counts 4 and 5) fail.

The tort of battery requires an unlawful touching. *Lawson v. Bloodsworth*, 313 Ga. App. 616, 618 (2012); O.C.G.A. § 51-1-13. Assault requires the "intention to commit an injury, coupled with an apparent ability to do so." *Wallace v. Stringer*, 250 Ga. App. 850, 853 (2001); O.C.G.A. § 51-1-14. But the only acts alleged in these counts of the Amended Complaint are that **Juan Rangel** shot Montoya; that **Juan Rangel** "threatened" him with "physical injury . . . in the moments leading up to his death;" and that **Pablo Rangel** and **Cruz** made unspecified threats of violence "beginning in early May of 2017." Doc. 123 ¶ 177, 181–182. There are **zero** allegations that the Branch unlawfully touched or intended to injure Montoya. Accordingly, dismissal of Counts 4 and 5 is warranted.

## IV.    Conclusion

Based on the foregoing, Defendant Christopher Branch respectfully requests that Plaintiff's RICO, assault and battery, and intentional infliction of emotional distress claims against him be dismissed with prejudice. Defendant also hereby specifically joins in and adopts the arguments addressing Plaintiff's RICO claims set forth in the Company Defendants' Motion to Dismiss regarding (a) Plaintiff's failure to properly plead the elements of the alleged predicate acts, (b) his failure to plead acquisition injury, and (c) his failure to plead a distinct RICO enterprise.

*[Signature page follows.]*

Dated: June 21, 2024

BOUHAN FALLIGANT LLP

*/s/ Carlton E. Joyce*
CARLTON E. JOYCE
State Bar of Georgia No. 405515
GARY J. MCGINTY
State Bar of Georgia No. 602353

*Attorneys for Defendant Christopher Branch*

Post Office Box 2139
Savannah, Georgia 31402
T: 912.232.7000
F: 912.233.0811
Email:  cejoyce@bouhan.com
        gmcginty@bouhan.com

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was served through the Court's ECF system upon all

counsel registered to receive service, and served via regular U.S. mail on the following:

Pablo Rangel-Rubio (Pro Se)
USP Atwater
U.S. Penitentiary
P.O. BOX 019001
Atwater, CA 95301

       Dated: June 21, 2024

                             BOUHAN FALLIGANT LLP

                             */s/ Carlton E. Joyce*
                             CARLTON E. JOYCE
                             State Bar of Georgia No. 405515
                             GARY J. MCGINTY
                             State Bar of Georgia No. 602353
                             *Attorneys for Defendant Christopher Branch*

Post Office Box 2139
Savannah, Georgia 31402
T: 912.232.7000
F: 912.233.0811
Email:  cejoyce@bouhan.com
         gmcginty@bouhan.com