**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| BRIAN J. HUFFMAN, as Administrator of the Estate of ELIUD MONTOYA-ARCOS, Deceased, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 18-cv-00184 |
| v. | ) ) ) | Hon Stan R. Baker |
| THE DAVEY TREE EXPERT COMPANY; WOLF TREE, INC.; MARJORIE L. CONNER; CHRISTOPHER BRANCH; OSCAR CRUZ; and PABLO RANGEL, also known as Pablo Rangel-Rubio, | ) ) ) ) ) | **Oral Argument Requested** |
| *Defendants*. | ) ) | |

**DEFENDANT OSCAR CRUZ'S MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT AND INCORPORATED BRIEF IN SUPPORT THEREOF**

Defendant Oscar Cruz ("Cruz") hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice, as they are pled against him, Counts I-V, XIII, and XX-XXII of Plaintiff's Amended Complaint (ECF No. 123) ("Amended Complaint") for failure to state a claim upon which relief can be granted.

**Preliminary Statement**

Plaintiff is the Administrator of the Estate of Eliud Montoya-Arcos ("Montoya"). On August 19, 2017, Montoya, a former employee of Defendant Wolf Tree, Inc. ("Wolf"), was murdered near his home by Defendant Pablo Rangel and two co-conspirators not named in this lawsuit[1] following workplace complaints made by Montoya about Rangel. (Amended Complaint,

---

[1] Pablo Rangel, along with his brother Juan Rangel and Higinio Perez-Bravo, was indicted for, among other offenses, Conspiracy to Commit Murder for Hire. Perez-Bravo and Pablo Rangel pled

¶¶ 34-87). At the time of Montoya's murder, Oscar Cruz served as an assistant to Rangel. Where Plaintiff has pled facts, they are taken as true for purposes of this motion only.[2] *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Plaintiff's conclusory allegations masquerading as facts are not entitled to an assumption of truth. Plaintiff's legal conclusions, to have any meaning, must be sufficiently supported by well-pleaded facts.  Thus, in considering the Motion to Dismiss, the district court should assume, on a case-by-case basis, only that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. *ADA v. Cigna Corp*. 605 F. 3d 1283,1290 (11ᵗʰ Cir. 2010).

Plaintiff has alleged claims against Cruz for civil RICO under Georgia law, battery, assault, intentional infliction of emotional distress, as well as claims for punitive damages and attorneys' fees.  The Factual Allegations of the Amended Complaint and Cruz's Argument and Citations to Authority follow.

<u>**Factual Allegations of Plaintiff's Amended Complaint**</u>

**I.     Davey/Wolf's Work on Behalf of Georgia Power.**

The Davey Tree Expert Company ("Davey Tree") and Wolf Tree, Inc. ("Wolf Tree", and collectively "Davey/Wolf") are in the business of performing tree maintenance along power lines on behalf of utility companies.  (Amended Complaint ¶ 16.)  In the Savannah, Georgia area, Davey/Wolf contracted with the Georgia Power Company ("Georgia Power") to provide tree trimming services around Georgia Power's utility lines.  (*Id.* ¶ 27.)  According to the Amended Complaint, a majority of Wolf Tree's Savannah employees were not authorized to work in the

_____

guilty. Juan Rangel was convicted at trial for that and other offenses. *USA v. Rangel-Rubio, et al.* 4:18-cr-00274-LGW-BWC.

[2] In an abundance of caution, Cruz states that he denies many of the allegations in the Amended Complaint.  By filing this motion to contest the sufficiency of Plaintiff's allegations, he does not waive, but expressly reserves, his right to contest the truth of any of Plaintiff's allegations.

United States, and this fact was known to Cruz and the other Defendants (Id. ¶ 19.)

## II. Pablo Rangel's Scheme to Hire Undocumented Workers and Defraud Davey/Wolf and Georgia Power.

Pablo Rangel, Wolf Tree's supervisor of its Savannah crews, is at the center of the alleged RICO scheme. (*Id.* ¶¶ 20-26.) Rangel, a now convicted murderer (*see fn. 1 supra*) and himself an undocumented worker, operated a scheme where he hired and "provid[ed] . . . illegal-aliens with false identities and false identification documents," and which were then used to "conceal the illegal nature of the work force." (*Id.* ¶ 22.) Rangel also arranged for Davey/Wolf to mail employee paychecks to Rangel's home address or his P.O. Box or direct-deposited employee paychecks into his bank accounts. (*Id.* ¶ 23.) Rangel charged the workers for the false identities and false documents. (*Id.* ¶ 22.)

The Amended Complaint alleges that "Rangel solicited Cruz to assist him with his illegal activities by making cash withdrawals and providing cash payments to workers Cruz knew were illegal and from whom Rangel was receiving money in return. In exchange, Rangel paid Cruz thousands of dollars from the funds Davey/Wolf deposited into Rangel's bank accounts."(Id. ¶ 24.)

While falsely certifying to Georgia Power that they had verified the legality of their workforce, Davey/Wolf, through Rangel and Cruz, provided false identification documents to Georgia Power to deceive Georgia Power into issuing Georgia Power identifications to illegal aliens employed in Savannah." (*Id.* ¶¶ 29, 30.)

## III. Eliud Montoya Reports Pablo Rangel's Scheme.

In March 2016, Montoya filed an internal HR complaint to Davey Tree that Pablo Rangel provided stolen identification documents to unauthorized workers to hire them as Wolf Tree employees. (*Id.* ¶¶ 43–44.) Instead of investigating Montoya's complaint, Davey/Wolf told

Rangel about it, in violation of the Company Defendants' whistleblower policy.  (*Id.* ¶ 48.)

In April 2017, Montoya again complained orally and in writing internal HR complaint to the Davey/Wolf alleging that, among other things, Rangel had hired undocumented workers using stolen identities, paid them in cash, and stole a portion of their wages.  (*Id.* ¶¶ 49–50.)  This complaint claimed that Montoya had reported this conduct to the Department of Labor.  (*Id.* ¶ 51.)  Branch allegedly provided a copy of Montoya's internal HR complaint to Rangel, and Rangel admitted to Branch that he provided false identification to workers in exchange for money.  (*Id.* ¶¶ 56.) Plaintiff alleges that "Branch, Rangel and Cruz discussed calling a meeting of all Savannah Call Center employees during which Rangel would disclose Montoya's whistleblower report, and the fact that Montoya was the whistleblower, to all Savannah Call Center employees." (Id. ¶ 60.)

In response to Montoya's internal HR complaint, Rangel retaliated against Montoya.  (*Id.* ¶¶ 61–63.)  In May 2017, Rangel "read Montoya's whistleblower report aloud to all of the employees . . . and threatened and intimidated Montoya."  (*Id.* ¶ 61.)  After hearing the HR complaint read aloud, a number of the employees allegedly "became enraged, began rioting, and threatened Montoya with physical violence and death."  (*Id.* ¶ 61.)

In May 2017, Montoya provided Davey Tree's Regional Safety Manager with a copy of the internal HR complaint that he submitted in April 2017.  (*Id.* ¶ 65–66.)  Later that month, Montoya was cited with an "'unsatisfactory work' employee violation notice," allegedly in retaliation for complaining about Rangel's scheme.  (*Id.* ¶¶ 68–69.)

In August 2017, Montoya was suspended from work, pretextually for a safety violation, in an attempt to silence Montoya and deter him from providing further reports to governmental authorities.  (*Id.* ¶ 70.)

**IV.    Pablo Rangel Arranges for the Assassination of Eliud Montoya.**

After being suspended from work on August 16, 2017, Montoya informed Conner that he planned to submit a complaint with the EEOC. Conner advised Rangel (Am. Compl. ¶¶ 82–83.) The next day, Montoya went to the EEOC.  (*Id*. ¶ 84.)  Rangel then arranged for the assassination of Montoya.  He paid Higinio Perez-Bravo (a person having no affiliation with Cruz or any other Defendant) to drive the getaway car and enlisted his brother, Juan Rangel, to commit the murder. On August 19, 2017, Juan Rangel shot and killed Montoya.  (*Id*. ¶ 87.)

**V.    Pablo Rangel is Charged and Convicted of Murdering Eliud Montoya.**

In December 2018, Pablo Rangel, Juan Rangel, and Higinio Perez-Bravo were indicted on charges relating to the murder of Montoya.[3]  In March 2022, Rangel was convicted, by way of plea agreement with aiding and abetting the murder of Montoya as well as harboring illegal aliens and money laundering, among other crimes.  (Am. Compl. ¶ 93) Rangel admitted arranging for the assassination of Montoya, pled guilty to 18 U.S.C. § 1513(a)(1)(A), and was sentenced to 584 months in prison.[4]

In April 2022, after the prosecution presented its evidence at trial, Perez-Bravo pled guilty to conspiracy to commit murder for hire (Am. Compl. ¶ 94); and in October 2022, Juan Rangel, was convicted of the retaliatory murder of a federal witness, among other crimes (Am. Compl.

---

[3]    This Court may take judicial notice of public records, like an indictment or a judgment in a criminal action and consider them on a motion to dismiss.  *See Curry v. TD Ameritrade, Inc.*, 662 F. App'x 769, 771 n.3 (11th Cir. 2016) (taking judicial notice of defendant's indictment and related settlement); *Tatum v. Ellien*, 2014 WL 4774629, at *1 n.1 (S.D. Ga. Sept. 24, 2014) (court "may take judicial notice of [the] conviction and [the] sentence in criminal case" and "all matters of public record" on a motion to dismiss).  Here, Pablo Rangel's indictment was entered in *United States v. Rangel–Rubio*, No. 18-cr-274 (S.D. Ga. Dec. 7, 2018), at ECF No. 2.

[4]    *See* Judgment, *United States v. Rangel-Rubio*, No, 22-cr-030 (S.D. Ga. Nov. 21, 2022), at ECF No. 33.

95).[5]

## VI.    Cruz is Charged and Pleads Guilty to One Count of Conspiracy to Conceal, Harbor, and Shield Illegal Aliens

Plaintiff alleges, "On December 6, 2018, after providing false testimony in a civil action, Cruz pled guilty to a four-year conspiracy to conceal, harbor, and shield illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I)" (Am. Compl. ¶ 92.)

## VII.    The Aftermath of Montoya's Murder.

The Amended Complaint alleges that Cruz falsely testified at his deposition in the related state civil action when he said that he was not aware that Davey/Wolf had employed undocumented workers prior to Montoya's murder.  (Id. ¶ 91.)

## VIII.    The RICO Enterprise Allegations.

The Amended Complaint alleges that Davey/Wolf, Conner, Branch, and Cruz joined together with Rangel to form an "association-in-fact enterprise" – naming it the so-called "Davey-Rangel Enterprise" – which had the common purpose "of making money through a variety of illicit means and concealing and prevention detection of the enterprise's unlawful activities" – *i.e.*, the alleged scheme to hire undocumented workers and defraud Georgia Power.  (Am. Compl. ¶¶ 99–108.)

According to Plaintiff, Rangel's recruitment of illegal aliens was allegedly "[o]utside of his duties and responsibilities as the supervisor" of the Savannah cost center.   (*Id.* ¶ 102.) Davey/Wolf's alleged role in the enterprise was to defraud Georgia Power out of "millions of

---

[5]       *See* Indictment, *United States v. Rangel-Rubio*, No. 18-cr-274 (S.D. Ga. Dec. 8, 2018), at ECF No. 2; Plea Agreement, *United States v. Rangel-Rubio*, No. 22-cr-030 (S.D. Ga. Mar. 28, 2022), at ECF No. 17; Plea Agreement, *United States v. Perez-Bravo,* No. 18-cr-274-3 (S.D. Ga. Apr. 14, 2022), at ECF No. 605; Judgment, *United States v. Rangel-Rubio*, No. 18-cr-274-2 (S.D. Ga. Apr. 18, 2023), at ECF No. 741.

dollars," and "fund Rangel's outside recruitment of an illegal-alien workforce" and his harboring of undocumented workers by sending their paychecks to Rangel's address and/or by direct depositing their paychecks into his bank accounts. (*Id.* ¶ 105.) Cruz's alleged role was to assist Rangel in his alleged scheme.

<u>**Argument and Citations to Authority**</u>

## I.   **Relevant Pleading Standards.**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff "must state a claim to relief that is plausible on its face." *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). Facial plausibility "asks for more than a sheer possibility" of a defendant's liability – pleading "facts that are 'merely consistent with' a defendant's liability . . . stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). While a court must consider the factual allegations of a complaint to be true, under Supreme Court and Eleventh Circuit authority, "this tenet is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Reese v. Ellis, Painter, Ratteree & Adams, LLP,* 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)" *Chris v. McKesson, Inc.* 2023 U.S. Dist. LEXIS 133474 (S.D Ga. August 1, 2023). In other words, a court should not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as

facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

The pleading standard for civil RICO claims is even *more* exacting. "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). The substantive allegations underlying a RICO claim "must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal*, but also with [Rule] 9(b)'s heightened pleading standard." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). In "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id*.

Thus, to survive a motion to dismiss here, Plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Ambrosia*, 482 F.3d at 1316-17. In cases with multiple defendants, a plaintiff "must allege facts with respect to each defendant's participation in the fraud." *Am. Dental*, 605 F.3d at 1291; *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997).

## II.    The Alleged Racketeering Acts Did Not Proximately Cause Plaintiff's Injuries.

The Complaint fails to allege proximate causation, a prerequisite for standing under Georgia's civil RICO statute. In addition to a pattern of racketeering activity by *each* defendant,[6] Plaintiff must show  "a ***direct nexus*** between at least one of the predicate acts listed under the

---

[6]    To establish a "pattern of racketeering activity," a plaintiff must plead that each defendant "engag[ed] in at least ***two acts*** of racketeering activity."  O.C.G.A. § 16-14-3 (emphasis added); *see also Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990); *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir. 2011)

RICO Act and the injury [the plaintiff] purportedly sustained." *Rosen v. Protective Life Ins.*, 817 F. Supp. 2d 1357, 1381 (N.D. Ga. 2011) (emphasis added), *aff'd sub nom. Rosen v. Am. Guar. & Liab. Ins.*, 503 F. App'x 768 (11th Cir. 2013); *Schoenbaum Ltd. v. Lenox Pines, LLC*, 262 Ga. App. 457, 470 (Ga. Ct. App. 2003); *Petlechkov v. FedEx Corp.*, 2023 WL 2871651, at *3 (N.D. Ga. Apr. 7, 2023) (Proximate causation under RICO requires a showing that "the alleged violation led directly to the plaintiff's injuries."). *Wylie v. Denton*, 323 Ga. App. 161, 166 (2013) (emphasis added) *in accord Smith v. Morris, Manning & Martin, LLP*, 293 Ga. App. 153, 165–66 (2008) (RICO plaintiff must show that "her injury was the ***direct result of a predicate act targeted toward her***, such that she was the intended victim"). The Georgia RICO "direct nexus" requirement is consistent with the U.S. Supreme Court's test for RICO standing, which requires a "direct relation between the injury asserted and the injurious conduct alleged."[7] *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008); *Anza v. Ideal Steep Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

Here, the Amended Complaint fails to establish a direct nexus between any predicate act allegedly committed by Cruz and the harm suffered by Montoya. The alleged predicate acts fall into six categories:  (1) Pablo Rangel's scheme to hire undocumented workers ("Unauthorized Workers Scheme"); (2) an alleged scheme to "defraud Georgia Power" (the "Georgia Power Scheme"); (3) interference with a witness; (4) the events of the May 2017 meeting at which

---

[7]     The direct-relation standing requirement arises from the federal RICO civil remedy providing that "any person injured …. ***by reason*** of a [RICO] violation" may bring suit. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 463 (2006) (Thomas, J., concurring) (quoting 18 U.S.C. § 1964(c)) (emphasis added).  Since Georgia's civil RICO statute also includes the "by reason of" language, "Georgia RICO cases require some direct relation between the alleged injury and the prohibited conduct."  *KJ's Gen. Contractors, Inc. v. J.E. Dunn Constr. Co.*, 2015 WL 5680379, at *4 (S.D. Ga. Sept. 25, 2015); *see* O.C.G.A. §16–14–6.

Montoya's internal HR complaint was read aloud to other employees (the "May 2017 Meeting"); (5) murder; and (6) the alleged "cover up" of the events leading up to Montoya's death.

### A. The Unauthorized Workers Scheme and Georgia Power Scheme Did Not Directly Harm or Target Plaintiff.

The first two categories of alleged predicate acts – the Unauthorized Workers Scheme and Georgia Power Scheme – immediately fail because, as alleged, they neither harmed nor targeted *Montoya*. Under the Unauthorized Workers Scheme, Cruz and his co-Defendants allegedly accepted and used false identification documents, harbored undocumented workers, engaged in identity fraud, and participated in money laundering. (Am. Compl. ¶¶ 115–117, 121–123) (alleging violations of 18 U.S.C. §§ 1546(a), (b)); 8 U.S.C. § 1324(a)(1)(A);[8] O.C.G.A. §§ 16-9-121(a), (b), 18 U.S.C. § 1956(a)(1)(A)(i)).)  But even if these allegations were true, they did *not directly harm* Montoya.  Nor did Cruz or any other Defendant specifically target Montoya when they allegedly committed these acts.  Rather, the Amended Complaint depicts an alleged scheme where these predicate acts were designed to harm *other* parties.  Tellingly, the Amended Complaint identifies no harm, physical or financial, Montoya would have expected to suffer had there been some connection between these predicate acts and him.  If anyone was harmed by the string of immigration-related predicate acts Plaintiff alleges, it would have been the illegal workers themselves, perhaps Georgia Power Company, or the United States Government.  *Anza*, 547 U.S. at 460 (2006) (the State, not a private party, had standing to pursue RICO remedies when predicate acts were tax fraud); *Walters v. McMahen*, 684 F.3d 435, 443-44 (4th Cir. 2012) (finding no direct

---

[8]      The allegations in paragraph 117 are insufficient to support 8 U.S.C. § 1324(a)(1)(A) – smuggling aliens – as a predicate act.  The statute sets out five separate criminal offenses in subsections(a)(1)(A)(i) to (v), but the Amended Complaint does not specify which of these offenses any particular defendant has allegedly committed.  Nor does it adequately plead the elements of any of those offenses.  *See* 8 U.S.C. § 1324(a)(1)(A)(i)–(v).  Thus, the Amended Complaint fails to plead Section 1324 as a predicate act.

harm to civil RICO plaintiff for employer's alleged use of false documents to verify employment).

Neither can Plaintiff claim standing through the alleged Georgia Power Scheme, where Cruz is alleged to have aided Davey/Wolf to purportedly obtain "millions of dollars", not from Montoya, but from Georgia Power, by falsely certifying Wolf Tree had assigned authorized workers to the contract.  (*See* Am. Compl. ¶¶ 118-20.)   According to Plaintiff, the predicate acts underlying this scheme include, among others, theft by deception (O.C.G.A. § 16-8-3) (Am. Compl. ¶ 118); wire fraud (18 U.S.C. § 1343) (Am. Compl. ¶ 119); mail fraud (18 U.S.C. § 1341), and identity fraud (O.C.G.A. § 16-9-121(a)) (Am. Compl. ¶ 120).   However, Plaintiff has not alleged that any of this conduct was directed at, or harmed, Montoya.  *Lockhart v. Columbian Chemicals Co., Inc*, 2007 WL 9706424, at *3 (N.D. Ga. Aug. 31, 2007) (theft by deception fails as predicate act where alleged theft directed at a third party).  Indeed, given that the commission of these alleged predicate acts necessarily relate to the Georgia Power contract, these acts neither injured nor targeted Montoya.

Neither can Plaintiff claim that Montoya was the victim of Cruz's alleged participation in Davey/Wolf's retaliation for Montoya's internal complaints about the commission of these predicate acts. Courts in the Eleventh Circuit have routinely dismissed civil RICO claims where a plaintiff's purported injury is employment-related retaliation. For example, the Northern District of Georgia – in a case on all fours with this one – rejected a civil RICO claim alleging that plaintiff was fired for complaining internally about a scheme to hire undocumented workers, finding that such an injury did not directly result from the alleged racketeering activity but rather "from the tangentially related decision to fire him." *Parker v. Diverse Staffing Georgia, Inc.*, 2020 WL 10575029, at *10 (N.D. Ga. Dec. 23, 2020), *rep. & recommendation adopted*, 2021 WL 3367263 (N.D. Ga. Jan. 12, 2021); *see also Anderson v. Brown Indus.*, 2012 WL 12860887, at *8-9 (N.D.

Ga. June 13, 2012) (retaliatory termination for complaining about an alleged undocumented workers scheme and "harassment" and "discrimination" are "insufficient to confer standing" under RICO).

Similarly, here the direct harms resulting from Davey/Wolf's hiring of undocumented workers are those that the federal employment verification laws seek to mitigate.  Pretextual or adverse employment actions resulting from retaliatory conduct – of the kind allegedly suffered by Montoya (Am. Compl. ¶¶ 67, 68-69, 76, 79-81) – are *collateral* (and not direct consequences) to the predicate acts underlying the Unauthorized Workers Scheme.

### B.    Employment Retaliation is *Not* Witness Interference.

Plaintiff's attempts to transform garden-variety acts of employment retaliation into *criminal* interference with a witness under several statutory provisions should be rejected.   These statutes were never intended to criminalize employment retaliation – which is more appropriately addressed under various employment laws.  And in any event, Plaintiff fails to articulate a violation of any of the criminal statutes here.

Plaintiff initially attempts to reshape a workplace violation – *i.e.*,  alleged pretextual citations issued to Montoya for "unsatisfactory work" and a "safety violation" resulting in a three-day suspension for Montoya – as acts that amount to threatening a witness in an official proceeding, O.C.G.A. § 16-10-32(b).  (Am. Compl. ¶¶ 68, 69, 79, 80, 127, 130).  But the alleged workplace infractions – however pretextual or retaliatory – are not criminal acts under the Georgia statute Plaintiff has cited or any other Georgia statute.

Section 16–10–32(b) prohibits "threaten[ing] or caus[ing] physical or economic harm" to another person "with intent to hinder, delay, prevent or dissuade any person from . . . (1) [a]ttending or testifying in an official proceeding; or (2) [r]eporting in good faith to a law enforcement officer, . . . the commission or possible commission of an offense under the laws of

this state . . . ."  Plaintiff's vague allegation that Montoya, in his internal HR complaints, *claimed* that he planned to or had reported "illegal and dangerous conduct" to certain government agencies (Am. Compl. ¶¶ 45, 51) does not sufficiently satisfy the "official proceeding" element of the statute.[9]  The Amended Complaint does not allege that an official proceeding actually existed; the best it can do is to allege the possibility of a proceeding that may or may not have actually existed. Moreover, Plaintiff does not allege that Cruz verbally threatened Montoya with economic or physical harm to dissuade him from testifying in any proceeding. Nor does the Amended Complaint allege that Montoya ever indicated to Cruz that he planned to go to a law enforcement officer – such as the local police or a federal agency – to report the Unauthorized Workers Scheme.[10]  Or, that Cruz took any action or had any intent to deter him from going to the police or participating in a non-existent official proceeding.  Instead, Plaintiff alleges only that the write-ups were "retaliation" for Montoya's *internal* "whistleblower reports" at Davey Tree and were designed to deter Montoya from "further reports to [unspecified] government authorities."  (Am. Compl. ¶¶ 69, 80.)

This is insufficient to plead a predicate act under Georgia RICO. In *Scouten v. Amerisave Mortg. Corp*., 284 Ga. App. 242, 243 (2007), rev'd on other grounds, 283 Ga. 72 (2008), vacated in part on other grounds, 291 Ga. App. 493 (2008), Plaintiff Scouten alleged that "Amerisave

---

[9] "For the purposes of this Code section, the term "official proceeding" means any hearing or trial conducted by a court of this state or its political subdivisions, a grand jury, or an agency of the executive, legislative, or judicial branches of government of this state or its political subdivisions or authorities." O.C.G,A, §16-10-32(c)(1)

[10]     The statute does not define "law enforcement officer" but the terms is defined elsewhere in the Georgia code as "a person employed or appointed by a state or political subdivision who is granted, by state law, the authority to enforce criminal, traffic, or penal laws of his or her respective state and who possesses the power to effect arrests." O.G.C.A. § 35-1-15.

engaged in a fraudulent solicitation scheme under which it advertised mortgage interest rates lower than those it was prepared to offer, and then pressured those responding to accept higher rates. When Amerisave received complaints about these practices, it allegedly resolved them through payoffs which had the effect of concealing the scheme. Scouten's complaint also asserts that Amerisave attempted to influence unnamed "witnesses" (including Scouten himself) in violation of OCGA § 16-10-93, and that when he refused to execute a declaration to be used in an unidentified legal proceeding regarding Amerisave's practices, he was fired." *Id* at 242, 243. The Georgia Court of Appeals upheld the trial court's dismissal of Scouten's Civil RICO claim citing deficiencies much like those in the Plaintiff's Amended Complaint.

> To assert a claim under Georgia RICO, Scouten must show that his injury "flowed directly from the predicate offense."  As in *Nicholson v. Windham*, which also involved a whistleblower's RICO action against her ex-employer arising from a retaliatory firing, Scouten cannot make this showing. Amerisave's fraudulent practices were not directed at him, and he was fired not as a result of those practices, but because he refused to participate in them.  Nor does the complaint show that Amerisave was engaged in witness tampering, since it alleges only that Scouten's discharge "was not wholly unrelated to his refusal to execute a declaration." Without a specific allegation that Amerisave threatened Scouten with the economic harm of termination with the purpose of inducing him to sign the allegedly false declaration, Scouten's witness-tampering theory also fails.

> *Id. at 243.*

Not surprisingly, there is not a single reported decision in Georgia in which a supervisor was *criminally prosecuted* under Section 16–10–32 or 16–10–93 for issuing a pretextual work violation, suspending or terminating an employee, or falsely stating that an internal investigation of an HR complaint was ongoing.  This Court should not allow Plaintiff to convert a routine employment dispute into a RICO violation.  *See Lockhart v. Columbian Chemicals Co., Inc.*, 2007 WL 9706424, at *7 (N.D. Ga. Aug. 31, 2007) (dismissing RICO claim predicated on §16-10-32 because "proper vehicle" for alleged retaliatory termination was an employment discrimination

suit.)

**C.    The Alleged Predicate Acts from the May 2017 Meeting Are Insufficient.**

Plaintiff attempts to squeeze in two predicate acts.[11] – terroristic threats and influencing a witness – from the May 2017 Meeting at which Montoya's complaint was read out loud and certain workers allegedly threatened Montoya.  (Am. Compl. ¶¶ 61, 125-26.)  But these predicate acts are insufficient for several reasons.

*First*, as with the other witness interference allegations, Plaintiff fails to sufficiently plead the crime of influencing a witness because there are no allegations that Montoya ever expressed an intention to report his complaints to a law enforcement officer.   *Second*, Plaintiff alleges only that Rangel "solicited and coerced others to make terroristic threats against Montoya in violation of O.C.G.A. § 16–11–37."  (*Id*. at ¶ 126.), the elements of which are: "(a) that the defendant threatened to commit a crime of violence against the victim, and (b) that the defendant did so with the purpose of terrorizing the victim."  *State v. Stubbs*, 365 Ga. App. 630, 633–34 (2022).  Here, the required intent element is missing. Plaintiff makes no such allegation of Cruz.  *Third*, there are no allegations of *solicitation* – that there was a "relatively overt statement or request intended to bring about" the commission of a *felony*.  *Eng. v. State*, 290 Ga. App. 378, 380 (2008).  Terroristic threats are a misdemeanor, unless they involve a death threat (O.C.G.A. 16-11-37(d)(1)); nowhere

---

[11]    Even if Plaintiff had sufficiently plead the elements of both terroristic threats and influencing a witness, those two predicate acts cannot constitute a "pattern" of racketeering activity because they allegedly arose out of a single incident.  *McGinnis v. Am. Home Mortg. Servicing, Inc*., 817 F.3d 1241, 1253 (11th Cir. 2016) ("even if a court could technically ascribe more than one criminal offense to different aspects of the conduct," there is no pattern of racketeering activity when "everything that occurred . . . was the logical result of [the] same core thread of misconduct").

does Plaintiff allege that Oscar Cruz overtly asked the other employees to make death threats. [12]

In fact, all Cruz is alleged to have done is to call a meeting. There is no allegation of any actions taken towards or words spoken by Cruz to Montoya at this meeting <u>at</u> <u>all</u>. Thus, Plaintiff has failed to plead any predicate act by Cruz arising from this meeting.

### D.    Cruz Was Not Involved in the Murder.

Plaintiff alleges intentional murder (O.C.G.A. § 16-5-1) and retaliating against a federal witness (18 U.S.C. § 1513(a)) as additional predicate acts.  (Am. Compl. ¶ 133.)  But Cruz did not commit Montoya's murder.  The public record makes it clear that Pablo Rangel and his two co-conspirators <u>*alone*</u> were indicted and convicted for their role in Montoya's assassination.  *See Tatum v. Ellien,* 2014 WL 4774629, at *1 n.1 (S.D. Ga. Sept. 24, 2014) (considering conviction record on a motion to dismiss).

In the face of these convictions, and the extensive trial testimony from the criminal trials of Higinio Perez-Bravo and Juan Rangel in this very District, Plaintiff's credibility is the only casualty of his contention that Cruz was involved, in any way, with Montoya's death.  By alleging murder as one of Cruz's predicate acts, Plaintiff is, in fact, claiming that the United States Attorney for the Southern District of Georgia allowed a man who should have been indicted and convicted as a co-conspirator with the three men convicted of conspiring to murder Montoya, to plead guilty to one count of Conspiracy to Harbor Illegal Aliens. The US Attorney then filed a downward departure motion on his behalf, for which Cruz served a sentence of less than six months.  Since Plaintiff is held to the same exacting standard in pleading his Civil RICO claim as is required to plead a claim for fraud, he has fallen massively short of alleging facts sufficient to show to such

---

[12]    Rangel's alleged threats against two other workers who sent statements to Davey Tree do not confer standing because the purported threats were directed towards *other* people – not Montoya.  (Am. Compl. ¶ 129.)

an exacting standard that Cruz was involved with Montoya's murder. The allegations of ¶132 are all the Plaintiff offers. One would be hard pressed to find a Civil RICO predicate act pleading more illustrative than ¶132 of the Amended Complaint of the sort of "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts" rejected by the Eleventh Circuit in *Jaharis*.

### E.   The Purported "Cover Up" Following Montoya's Death Did Not Target Montoya.

The final predicate acts – "perjury" and "false statements" – do not confer RICO standing because Montoya was not injured by a purported "cover up" that occurred *after* his death. Plaintiff alleges that, *after the murder*, to "conceal criminal activities committed by Defendants' criminal enterprise," Cruz perjured himself at a deposition in the state case when he testified that he was not aware that unauthorized workers had been hired by the Company Defendants prior to Montoya's murder.  (*Id.* ¶¶ 91, 136.)

At most, Plaintiff has alleged that Cruz made false statements to "cover up" the Unauthorized Workers Scheme.  But as discussed above, Plaintiff lacks standing to bring a RICO claim predicated on the Unauthorized Workers Scheme because there is no direct nexus between those acts and Montoya's injuries.

Moreover, since Cruz's alleged statements were allegedly made after Montoya's death, these acts were not and could not have been directly targeted towards him.  *See Testone v. Niagara Mohawk Power Corp.*, 1992 WL 72145, at *10 (N.D.N.Y. Mar. 26, 1992) (in civil RICO case, "by alleging that he was injured by the purchase of the highly overvalued corporation in 1975, plaintiff destroys standing by pleading predicate acts which *occur after the injury* or which have no causal connection to the injury").  Therefore, the so-called "cover-up" does not confer standing on Plaintiff to bring a RICO claim against Cruz.

**III.      The Amended Complaint Fails to Plead a Distinct RICO Enterprise.**

Plaintiff's allegations also fail to satisfy the "distinct enterprise" element of his Section 4(b) RICO claim.  Section 4(b) confers liability on a "person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."  O.C.G.A. § 16–14–4(b).  Because an enterprise cannot be employed by or associated with itself, *McCullough v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985), the U.S. Supreme Court – and virtually every Court of Appeals, including the Eleventh Circuit – has required a "distinction between the defendant 'person' and the 'enterprise' itself."  *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355 (11th Cir. 2016); *Cedric Kushner Promos. Ltd. v. King*, 533 U.S. 158, 161–62 (2001).  An "enterprise may not simply be a 'person' referred to by a different name." *Ray*, 836 F.3d at 1355; *accord Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) ("a corporate person cannot violate the [RICO] statute by corrupting itself").

Here, the Amended Complaint attempts to patch up the deficiencies plaguing the original complaint's enterprise allegations by introducing a new term – the "Davey-Rangel Enterprise." But the Amended Complaint  still hasn't cured the fatal pleading deficiencies of the original complaint.  The newly named Davey-Rangel Enterprise is in sum and substance, a group of the same tree-trimming and utility clearing companies consisting of Davey Tree, Wolf Tree, and its former and current employees.  Plaintiff has merely alleged a "RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant". This does not satisfying the distinctness requirement to make out a Section 4(b) claim.  *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994).

The Eleventh Circuit's decision in *Ray* is instructive.  There, the court rejected an alleged RICO enterprise consisting of a corporate defendant, two of its officers, and four employees.  *Ray*,

836 F.3d at 1352–58.   The court held that "in an association-in-fact enterprise, a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation."   *Id*. at 1355 (emphasis added).   Indeed, "permitting plaintiffs to plead an enterprise consisting of a defendant corporation and its officers, agents, and employees acting within the scope of their employment would broaden RICO beyond any reasonable constraints" and "turn every claim of corporate fraud into a RICO violation."   *Id*. at 1357.

Nothing in the Amended Complaint remotely suggests that the alleged activities of the Davey-Rangel Enterprise are any different from the ordinary course activities of Davey Tree, Wolf Tree, and its employees.   This deficiency is fatal to Plaintiff's claim because a parent company and its subsidiaries cannot form an "enterprise" for RICO purposes unless there is some suggestion that the vehicle of corporate separateness was deliberately used to facilitate unlawful activity.   See *Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 934 (7th Cir. 2003) (separate incorporation does not constitute "sufficient distinctness to trigger RICO liability . . . unless the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitated its unlawful activity"); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 449 (1st Cir. 2000) ("Without further allegations, the mere identification of a subsidiary and a parent in a RICO claim fails the distinctiveness requirement."); *Chagby v. Target Corp.*, 2009 WL 398972, at *1 n.2 (C.D. Cal. Feb. 11, 2009) ("If, as alleged, Target Corp. and its subsidiaries are a RICO enterprise, then every corporation that has subsidiaries and commits fraud is an enterprise for RICO purposes.   That is not the law.").

The Fifth Circuit's decision in *Atkinson v. Anadarko Bank & Tr.*, 808 F.2d 438 (5th Cir. 1987), is particularly apt.   In *Atkinson*, the plaintiff alleged that a bank, its holding company, and

three of its employees formed a RICO association-in-fact for the purpose of mailing false and fraudulent loan statements that charged a higher amount of interest than the agreement provided. Id. at 439.  Following a jury verdict in favor of the plaintiff, the district court set aside the verdict for lack of distinctness in the claimed enterprise.  *Id*. at 439–40.  The Fifth Circuit affirmed, finding that there was "no evidence that the bank, its holding company, and the three employees were associated in any manner apart from the activities of the bank."  *Id*. at 441.  The court found that the alleged illegal activity – mail fraud associated with mailing fraudulent loan statements – was the activity of the bank, not of some separate, alleged association-in-fact enterprise.  *Id*. Because Defendants are nothing more than a corporation, a subsidiary, and their employees, the distinctness requirement has not been satisfied, and the Section 4(b) claim must be dismissed for lack of standing.

## IV.    The Amended Complaint Fails to Plead a RICO Conspiracy.

Plaintiff's conspiracy claims under Section 4(c) of Georgia's RICO statute fail because his Section 4(a) and 4(b) claims fail to allege a substantive RICO claim.  Plaintiff's conspiracy claim fails to allege a single specific fact against Cruz or any other Defendant. Amended Complaint ¶¶ 162-175. Where the underlying RICO claims are deficient, and (as here) the conspiracy claim adds nothing new but is wholly reliant on the underlying claims, the conspiracy claim fails as well. *Jackson v BellSouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (dismissing RICO conspiracy claim where court "already found that the complaint failed to state a substantive RICO claim, and the RICO conspiracy adds nothing"); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 728 (11th Cir. 2021) (affirming dismissal of Section 4(c) conspiracy claim predicated on the "same threadbare allegations as the substantive RICO claims").  Thus, as pled, the conspiracy claim rises and falls with the substantive RICO claims.  And since Plaintiff *failed* to allege a primary violation of either Section 4(a) or 4(b), the conspiracy claim *also fails*.

Plaintiff's conspiracy claim must be dismissed because it is a "formulaic recitation...of a conspiracy claim that the Supreme Court declared insufficient in *Twombly* and *Iqbal*." *Omnipol, A.S. v. Multinat'l Def. Servs., LLC*, 32 F.4th 1298, 1310 (11th Cir. 2022).  Plaintiff has done no more than "simply allege" that Defendants collectively endeavored to violate Sections 4(a) and (b) – without a single specific detail about the alleged conspiracy or which Defendant did what.  *See Omnipol*, 32 F.4th at 1309–10; *Parker*, 2020 WL 10575029, at *11 (dismissing RICO conspiracy claim that failed to allege with particularity an agreement to commit a conspiracy, the dates when such conspiracy formed, or when the specific defendants joined the conspiracy); *Parker*, 2020 WL 10575029, at *11 (dismissing RICO conspiracy claim where complaint merely "offer[ed] conclusory statements," that the defendants conspired to commit the predicate acts") (citation and quotation omitted).

Repeatedly, the RICO conspiracy count, and the facts on which it and Plaintiff's Section 4(a) and 4(b) claims rely, allege conduct against "the Defendants" generally, rather than assigning specific conduct to each defendant. [13] so that they can understand what it is that they allegedly have done to violate the RICO statute.  *Christian v. Okefenokee Charlton Tr.*, 2020 WL 5242931, at *3 (S.D. Ga. Sept. 2, 2020) (The "Eleventh Circuit has expressed little tolerance for such pleadings because they waste scarce judicial resources and inexorably broaden the scope of discovery," among other things); *see also  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 WL 88129, at *31 (S.D.N.Y. Mar. 15, 1994) ("Grouping defendants is no more permissible in a RICO conspiracy claim, which must allege that *each* defendant agreed to commit at least two predicate acts. . . .").

---

[13]     Specific reference is made to ¶¶ 53, 54, 59, , 63, 68, 76, 85, 104, 118,  and 124.

**V.      Plaintiff Has Failed to State a Claim for Battery**

The tort of battery requires an unlawful touching. *Lawson v. Bloodsworth*, 313 Ga. App. 616, 618 (2012); O.C.G.A. § 51-1-13. Yet the only act of touching alleged in Plaintiff's battery claim is that Juan Rangel shot Montoya. Assault requires the "intention to commit an injury, coupled with an apparent ability to do so." *Wallace v. Stringer*, 250 Ga. App. 850, 853 (2001); O.C.G.A. § 51-1-14. Cruz, Plaintiff alleges, threatened Montoya with violence, yet Plaintiff could find no place in his 278 paragraphs to identify the occasion when Cruz verbalized this threat or what Cruz said that threatened Montoya with violence.

**VI.     Plaintiff Has Failed to State a Claim Against Cruz for Assault**

In Count 5 of the Amended Complaint, Plaintiff asserts a claim for assault against Cruz. (Amended Complaint, ¶¶ 180-184).   All that is offered in support of this claim are the rote recitations of elements of the tort of assault. "Defendants, through Cruz and Rangel, threatened Montoya with violence and had the apparent ability to perform said acts of violence."  (Amended Complaint, ¶181).  Plaintiff has failed to allege a single specific factual occurrence wherein Cruz actually threatened Montoya, much less a circumstance where Cruz did so with the intent and apparent ability to harm Montoya. The closest he comes is to allege that Cruz called a meeting where Montoya was threatened by others.  Plaintiff further alleges that Cruz should be held vicariously liable for the threat posed by Juan Rangel, the trigger man in the conspiracy of three men, neither of which is Oscar Cruz, to kill Montoya in the moments before he was murdered (Amended Complaint, ¶182). Nowhere in Plaintiff's 278 paragraphs of his Amended Complaint does Plaintiff make a factual allegation that Cruz himself threatened Montoya at any time.  Neither does Plaintiff allege that Cruz himself had an intention to commit an injury to Mr. Montoya, coupled with the apparent ability to do so.  Neither does Plaintiff ever allege that Cruz ever

expressed to Montoya, or manifested in conduct towards Montoya, any such intention to physically harm Montoya. Plaintiff has failed to state a cause of action for assault.

## VII.   Plaintiff Has Failed to State a Claim Against Cruz for Intentional Infliction of Emotional Distress

Count 13 alleges against Cruz the tort of Intentional Infliction of Emotional Distress. It should be dismissed for failure to state a claim under Rule 12 (b)(6).  To state a claim based on the intentional infliction of emotional distress, the factual allegations of a complaint must contain at least four elements:  (1) [t]he conduct must be intentional or reckless; (2) [t]he conduct must be extreme and outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; and (4) [t]he emotional distress must be severe.  *Joyner v. Lifeshare Mgmt. Grp., LLC*, 2018 WL 6092743, at *4 (S.D. Ga. Nov. 21, 2018) (Moore, J.); *Northside Hosp. v. Ruotanen,* 246 Ga. App. 433, 435 (Ga. App. 2000). Yet not just any extreme, intentional or reckless conduct will suffice. "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cottrell v. Smith* 299 Ga. 517, 521-522 (Ga. 2016).

"Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Ferrell v. Mikula*, 295 Ga. App. 326, 333 (Ga. App. 2008). "With respect to the severity of the emotional distress, "[t]he conduct must inflict emotional distress so severe that no reasonable person could be expected to endure it." (Citation and punctuation omitted.)  This Court has noted

that '[e]motional distress inflicted by another is not an uncommon condition; emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Ellison v. Burger King Corp*., 294 Ga. App. 814,818 (Ga. App. 2008).

Plaintiff, however, fails to either allege that Montoya suffered any emotional distress, or offer any factual support for such an allegation.[14]   This omission alone requires dismissal of Plaintiff's  claim for intentional infliction of emotional distress.  *See e.g.*, *Monsrud,* 2020 WL 12654451, at *10; *Roberts v. JP Morgan Chase Bank, Nat'l Ass'n*, 342 Ga. App. 73, 77 (2017); *Timmons v. Bryson*, 2016 WL 4082710, at *7 (S.D. Ga. Aug. 1, 2016); *Kogut v. L.L.J., Inc.*, 2005 WL 8156176, at *14 (N.D. Ga. July 29, 2005). Even if he had, dismissal for failure to state a claim is still warranted because an objective standard is used to measure whether the conduct in question satisfies the elements of the tort.

## VIII.   Plaintiff Has Failed to State a Survival Claim, Claim for Attorneys' Fees and Expenses, and Punitive Damages

As Plaintiff has failed to plead a single substantive claim against Cruz, his derivative Survival, OCGA §13-6-11 and Punitive Damages claims fail as well and should therefore be dismissed.

## IX.   Joinder and Adoption of Arguments of Co-Defendants

In addition to the arguments set forth herein, Cruz hereby joins in and adopts any and all

---

[14]     Plaintiff also does not explain *which* of the Defendants' conduct is extreme and outrageous, and instead relies on every single factual allegation in the Amended Complaint.  And since he does not allege any emotional distress, he also fails to plead the *causation* element of the claim

additional arguments relating to Plaintiff's RICO claims set forth in the Motions to Dismiss Plaintiff's Amended Complaint filed by his co-Defendants, including without limitation Plaintiff's failure to properly plead acquisition injury, proximate cause, and a distinct RICO enterprise.

## **CONCLUSION**

For the foregoing reasons, Oscar Cruz respectfully requests that this Court dismiss with prejudice all claims asserted against him in Plaintiff's Amended Complaint and grant all such other and further relief as is just and proper.

This 21st day of June, 2024.

BRENNAN & WASDEN, LLC

By:   /s/ Wiley A. Wasden, III
     Wiley A. Wasden, III
     Lead Counsel
     State Bar No. 738750

     William E. Dillard
     State Bar No. 222030

     *Attorneys for Defendant Oscar Cruz*

Post Office Box 8047
Savannah, Georgia 31412
912-232-6700 TELEPHONE
912-232-0799 FACSIMILE
wwasden@brennanwasden.com
bdillard@brennanwasden.com
1394-2

## <u>CERTIFICATE OF SERVICE</u>

This is to certify on this 21ˢᵗ day of June, 2024, the foregoing was served through the

Court's ECF system upon all counsel registered to receive service, and served via regular U.S.

mail on the following:

**Pablo Rangel-Rubio (Pro Se)**
**USP Atwater**
**U.S. Penitentiary**
**P.O. BOX 019001**
**Atwater, CA  95301**

BRENNAN & WASDEN, LLC

By:    /s/ Wiley A. Wasden, III
    Wiley A. Wasden, III
    Lead Counsel
    State Bar No. 738750

    William E. Dillard
    State Bar No. 222030

    *Attorneys for Defendant Oscar Cruz*

Post Office Box 8047
Savannah, Georgia 31412
(912) 232-6700 TELEPHONE
(912) 232-0799 FACSIMILE
wwasden@brennanwasden.com
bdillard@brennanwasden.com