IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| BRIAN J. HUFFMAN, as Administrator of the Estate of ELIUD MONTOYA-ARCOS, Deceased, <br><br> *Plaintiff*, <br><br> v. <br><br> THE DAVEY TREE EXPERT COMPANY; WOLF TREE, INC; MARJORIE L. CONNER; CHRISTOPHER Branch; OSCAR CRUZ; and PABLO RANGEL, also known as Pablo Rangel-Rubio, <br><br> *Defendants*. | Case No. 4:18-cv-00184 <br><br> Hon. R. Stan Baker |

**CHRISTOPHER BRANCH'S REPLY BRIEF IN FURTHER SUPPORT**
**OF HIS MOTION TO DISMISS**

COMES NOW Defendant Christopher Branch ("Defendant" or "Branch"), and hereby files this Reply Brief in Further Support of his Motion to Dismiss (Doc. 207) and in response to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (Doc. 223). The focus of this Reply is the arguments relevant to Branch and his Motion (Doc. 207). However, Branch specifically joins in and adopts the entirety of the Reply filed by Defendants The Davey Tree Expert Company and Wolf Tree, Inc.[1]

**I.      Plaintiff's RICO Claims**

Plaintiff's RICO claim "requires more than labels and conclusions." *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010). "[A] formulaic recitation of the elements of a

---

[1] Just as Defendant joined in and adopted the arguments set forth in the Defendants The Davey Tree Expert Company and Wolf Tree, Inc.'s Motion to Dismiss regarding (a) Plaintiff's failure to properly plead the elements of the alleged predicate acts, (b) his failure to plead acquisition injury, and (c) his failure to plead a distinct RICO enterprise. *See* Doc. 207 p. 17.

1

cause of action will not do." *Id.* Plaintiff has slapped on labels, jumped to conclusions, and repeatedly recited elements that ring of a RICO action. But Plaintiff has not alleged facts specific enough to survive Rule 9(b) analysis. And Plaintiff has not alleged facts demonstrating that Branch's actions **directly** caused any injury. Finally, Plaintiff has not alleged facts demonstrating Branch actually engaged in racketeering activity. Thus, the RICO claims should be dismissed.

### a. Plaintiff has failed to plead with specificity.

Every allegation against Branch has him lumped together with at least one other Defendant. *See* Doc. 123 ¶ 117-119 and 125-131. The RICO statement (Doc. 196) and Plaintiff's Response (Doc. 223) are no different. Plaintiff had the opportunity – in nearly 200 pages[2] of pleadings – to spell out his claims with clarity and specificity.[3] Instead, Plaintiff lumps.

The Eleventh Circuit "has repeatedly held that lumping multiple defendants together in such generalities is insufficient under Rule 9(b)." *Burgess v. Religious Tech. Ctr., Inc.*, 600 Fed. Appx. 657, 661–62 (11th Cir. 2015). "RICO claims… must be pled with an increased level of specificity." *Pombert v. Glock*, Inc., 171 F. Supp. 3d 1321, 1335 (N.D. Ga. 2016). This standard applies to all RICO claims, not just those sounding in fraud (as Plaintiff argues in his Response). "**All pleadings**, including those in removed and transferred actions, which allege violations of … **RICO, and other similar statutes,** whether federal or **state**, shall specifically state each alleged violation." LR 9.1 (emphasis added); *see also Williams v. Mohawk Indus., Inc.*, 314 F. Supp. 2d

---

[2] The Amended Complaint is 62 pages, the RICO statement is 108 pages, and the Response is 24 pages. *See* Docs. 123, 196, and 203.

[3] Despite the parties remaining at the pleadings stage in this case, Plaintiff has at his fingertips the thousands of pages of record evidence developed in the related state court case. *See e.g.* Doc. 97 p. 4-5 (The Rule 26 report, where Plaintiff indicates that "a significant amount of relevant evidence was admitted during related criminal prosecutions by the Department of Justice and significant discovery that may be applicable in this case has been accomplished in a wrongful death claim pending in the State Court of Chatham County").

1333, 1344 (N.D. Ga. 2004), *amended*, 4:04-CV-0003-HLM, 2004 WL 7333989 (N.D. Ga. May 27, 2004), *and aff'd in part, rev'd in part and remanded*, 411 F.3d 1252 (11th Cir. 2005), *cert. granted, judgment vacated*, 547 U.S. 516, 126 S. Ct. 2016, 164 L. Ed. 2d 776 (2006) ("**[T]he plaintiff was required to plead predicate acts … with particularity simply because Local Rule 9.1 for the United States District Court for the Southern District of Georgia requires such specificity.**") (emphasis added). Plaintiff fails to meet this baseline pleading requirement, and the Amended Complaint can be dismissed on that basis alone.

### b. Plaintiff has failed to plead proximate cause.

The Court must first, for each Defendant, "scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations." *Corcel Corp., Inc. v. Ferguson Enterprises, Inc.*, 551 Fed. Appx. 571, 575 (11th Cir. 2014). This is a threshold issue. *See Parker v. Diverse Staffing Georgia, Inc.*, 120CV01913TWTRGV, 2020 WL 10575029, at *9 (N.D. Ga. Dec. 23, 2020), *report and recommendation adopted*, 1:20-CV-1913-TWT, 2021 WL 3367263 (N.D. Ga. Jan. 12, 2021) (in order to "establish standing to bring a RICO claim, proximate cause is required") (punctuation omitted); *see also Otero v. Vito*, 5:04-CV-211 (CAR), 2007 WL 445277, at *6 (M.D. Ga. Feb. 6, 2007) ("Inherent in every Georgia RICO claim is a proximate-cause requirement.").

Plaintiff initiated this action because of Montoya's murder. And yet Plaintiff failed to sufficiently plead that the alleged predicates committed **by Branch** led directly to that murder. In response to that point, Plaintiff argues that because he has pled that Montoya suffered other non-specific "injuries and damages," Branch cannot "cabin the direct nexuses" that only relate to murder/retaliation. Doc. 223 p. 17. However, Plaintiff must still "show that [any] injury was the **direct result** of a predicate act targeted toward [him], such that [he] was the intended victim."

3

*Wylie v. Denton*, 323 Ga. App. 161, 166 (2013) (emphasis added). The question is "whether the injury was directly caused by any RICO violation, not whether the injury was reasonably foreseeable," *Gentry v. Volkswagen of Am.,* 238 Ga. App. 785, 791 (1991), and "not merely that [his] injury was an eventual consequence of the predicate acts." *Smith vs. Morris, Manning & Martin, LRP*, 293 Ga. App. 153, 165-168 (2008). "The standard for establishing causation is high: When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation **led directly** to the plaintiff's injuries." *Petlehckov v. FedEx Corp.*, 2024 WL 729006, at *4 (11th Cir. Feb. 22, 2024). Even when reading the Amended Complaint as true and in the light most favorable to Plaintiff, the facts show that at best Branch was a participant on the sidelines while others actually committed the acts that directly injured Montoya. A close look at Branch's personal, direct involvement[4] here (per the alleged facts, *see* Doc. 123 ¶ 16-95) demonstrates a total failure to allege a "direct relation between [Branch's] conduct and [Montoya's] injury." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016).

Here, again, are the facts concerning Branch: After receiving a copy of the April 2017 "whistleblower report," Branch gave it to Rangel and informed him that Montoya was the "whistleblower." Doc. 123 ¶ 55. This may have violated a company policy, but the link between Branch giving Rangel the whistleblower document and Montoya's alleged pre-death injuries (several months later) or murder (in August 2017) is tenuous at best. Later, at a May 2017 meeting, which was called by Rangel and Oscar Cruz and attended by the Savannah workforce (**but not**

---

[4] Note that Plaintiff, with his lack of specificity and sweeping allegations, apparently wants this Court to conduct the RICO analysis collectively rather than individually. This would be a mistake. *See Aquino v. Mobis Alabama, LLC*, 3:22-CV-145-TCB, 2024 WL 2764047, at *26–27 (N.D. Ga. May 28, 2024) (finding that an R&R "failed to properly consider the allegations against each Defendant independently"). This Court must "address each of the purported members' alleged involvement to determine if [the plaintiff] sufficiently describe[s] the who, what, when, where, and how of each Defendant's participation in the allegedly fraudulent [scheme]." *Id*. (cleaned up).

**Branch**), Rangel "read Montoya's whistleblower report aloud to all of the employees, stated that Montoya was the whistleblower, and threatened and intimidated Montoya." *Id.* ¶ 61. Plaintiff labels this meeting a riot, and he claims that Montoya sustained injuries and damages caused by threats. *Id.* But those alleged threats were not made by Branch (since he wasn't at the so-called riot), and there is no direct link between any involvement on the part of Branch in connection with this meeting and the death of Montoya months later. Next, there are allegations of Branch (and others) being involved in discussions about how to retaliate against and "silence" Montoya (*id.* ¶ 68), as well as allegations of Branch (and others) providing false assurances to Montoya about the whistleblower report being taken seriously by the Company Defendants (*id.* ¶ 72). While this may have been against company policy or amount to employment discrimination, Branch's actions were not the immediate cause of Montoya's assassination and did not directly result in him sustaining any injury.

Put simply, Plaintiff's causal chain, while creative, is too attenuated to support a RICO claim. *See Berber v. Wells Fargo, NA*, 798 Fed. Appx. 476, 482–83 (11th Cir. 2020) ("Creative utilization of RICO notwithstanding, under no interpretation could we envision the intent of the law to allow for liability under [the plaintiff's] remote casual chain. Accordingly, even under a generous pleading standard, [the plaintiff] has failed to plead a plausible claim under RICO."). Plaintiff's "theory of proximate cause [against Branch] is just but-for cause repackaged," and is thus insufficient to state a claim. *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712 (11th Cir. 2014) (cleaned up); *see also Maddox v. S. Eng'g Co.*, 231 Ga. App. 802, 806, 500 S.E.2d 591, 594 (1998) ("It may well be true that the commission of the predicate acts constituted the 'but for' cause of the firings. However, that tenuous a relation between the harm and the predicate acts is not sufficient to confer standing. RICO does not provide a remedy for every injury that may be

traced to a predicate act.") (cleaned up). Plaintiff's conclusory labels to the contrary can be ignored.[5]

### c. Plaintiff has failed to plead two predicate acts.

"Under the Georgia RICO Act, a pattern of racketeering activity is also the linchpin to liability." *Tom's Amusement Co., Inc. v. Total Vending Servs.*, 243 Ga. App. 294, 299, 533 S.E.2d 413, 419 (2000). "Georgia defines a pattern of racketeering activity as at least two interrelated acts indictable under certain categories of state and federal laws." *Id.* In his Response, Plaintiff claims that he has properly alleged violations of O.C.G.A. § 16-10-93 (influencing witnesses), O.C.G.A. § 16-10-32(b) (threatening a witness), O.C.G.A. § 16-11-37 (terroristic threats), and 18 U.S.C. § 1513 (federal witness retaliation). *See* Doc. 223 p. 14-16. Those predicates allegedly stem from Branch giving Rangel the "whistleblower report," Branch and others agreeing that Rangel should call an all-employees meeting (which allegedly turned into a riot), Branch and others having Cruz cite Montoya with a "baseless and concocted employee violation notice," Branch and Conner giving Montoya vague, unspecified "false and misleading information," and Branch and Conner informing Rangel of Montoya going to the EEOC. *Id.* p. 13-17. But these conclusory claims "are

---

[5] While not the focus of Plaintiff's Response (Doc. 223), Defendant also reiterates that any alleged participation in the so-called schemes to hire illegal immigrants (doc. 123 ¶ 117), defraud Georgia Power (*id.* ¶ 118-119), or threaten unnamed illegal immigrants (*id.* ¶ 129) have no direct bearing on any injury sustained by Montoya. *See Berber v. Wells Fargo, NA*, 798 Fed. Appx. 476, 482–83 (11th Cir. 2020) ("RICO claims have long required 'some direct relation' between the injury and alleged RICO violation. … Despite its ever-expanding scope, RICO was never intended to allow for sprawling civil causes of action. The Supreme Court … expressly said there was 'no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly.'") (citations omitted).


not supported by specific facts sufficient to **plausibly constitute** the alleged predicate offenses." *Jannuzzo v. Glock, Inc.*, 721 Fed. Appx. 880, 884 (11th Cir. 2018).

In his RICO statement, Plaintiff purports to outline Branch's misconduct. *See* Doc. 196 p. 42-46. But the alleged misconduct, when read in light of the **facts** – not labels – set forth in the Amended Complaint, does not amount to "acts of racketeering." *See* O.C.G.A. § 16-14-3(5) (listing the crimes that constitute racketeering activity). Here is what Plaintiff alleges:

- Branch violated an internal company policy and gave Rangel a copy of Montoya's "whistleblower report." (This is not a crime.)
- After that, Branch and others "discussed calling a meeting of all Savannah Call Center employees during which Rangel with disclose Montoya's whistleblower report." (This is not a crime.)
- At this "meeting," a "riot… broke out." (The rioting may have been a crime, but Branch did not participate in the riot nor was he in attendance when the riot took place.)
- Branch subsequently talked about the whistleblower report with another Davey Tree employee, and Branch told the other employee to discuss the matter with Davey Tree's general counsel. (This is not a crime.)
- A few days later, Branch and others discussed building a "paper trail to get rid of Montoya." This led to Montoya being cited (by others, not Branch) for allegedly bogus employment violations. (This may be an employment violation, but it is not a crime.)
- Later that summer, Branch and Conner "falsely assured Montoya that his 2017 whistleblower reports were being promptly investigated and taken seriously." (This may have been untrue, but it is not a crime.)
- Finally, Branch provided to Rangel three statements from other employees about the issues at the company. (This may have been a violation of company policy or a foolish move, but again it is not a crime.)

Doc. 196 p. 42-46.

The clear theme is that Branch's conduct as alleged in the Amended Complaint was not criminal. Even taking the Amended Complaint as true, there are no facts demonstrating that Branch individually threatened Montoya, kept him from reporting anything to law enforcement, personally cited him with any employment violations, retaliated against him, or physically harmed him in any way, shape, or form. And there are likewise **zero facts** supporting the idea that Branch had any hint that Rangel was planning to murder Montoya. Unsurprisingly, Branch has neither been

charged nor convicted of any crimes in connection with this Montoya/Rangel situation. *See* Doc. 196 p. 63-64 and 106. Indeed, as Plaintiff stated, "[t]here have been several criminal convictions for violations of the predicate acts," but none of those convictions were against Branch. *Id.* And this is true despite the Department of Justice conducting a federal criminal investigation (*id.* at 106) and the U.S. Attorney's Office for the Southern District of Georgia – at one point spearheaded by Plaintiff's own counsel (*see* Doc. 197) – pursuing federal criminal actions against multiple persons involved in Montoya's death. Doc. 196 p. 63-64. In short, Plaintiff is attempting to contort Branch's alleged actions into crimes via creative pleading and nefarious sounding labels. This is insufficient for a valid RICO claim.

### d. Plaintiff fails to plead acquisition injury.

In his Motion to Dismiss, Branch joined and adopted the Company Defendant's arguments concerning, among other things, Plaintiff's failure to plead acquisition injury. Doc. 207 p. 17. In his Response, Plaintiff does not elaborate on how the Amended Complaint alleges an acquisition injury as to Branch, and instead only mentions in passing that all of the "Defendants acquired and maintained interest in an enterprise and property through a pattern of racketeering activity." Doc. 223 p. 10. But it's worth noting that Plaintiff has never alleged with any specificity how Branch **individually** acquired or maintained, directly or indirectly, any interest in or control over any enterprise, real property or personal property as the result of any alleged act, as required by O.C.G.A. § 16-14-4(a). In other words, in addition to all the other problems with the RICO claim, Plaintiff has failed to state an "acquisition injury."

### e. Plaintiff fails to adequately plead RICO conspiracy.

Plaintiff bases his RICO conspiracy claim on the alleged "overt acts" laid out in "paragraphs 109-142" the Amended Complaint. Doc. 123 ¶ 163, 164, and 171. Since those

8

paragraphs do not adequately allege a pattern of racketeering activity, as shown above and in Defendant's topside brief (Doc. 207), Plaintiff's RICO conspiracy must also fail. *See A.B. v. H.K. Grp. of Co., Inc.,* 1:21-CV-1344-TCB, 2022 WL 467786, at *5 (N.D. Ga. Feb. 9, 2022) ("Plaintiff bases her allegations on the same conduct as her substantive RICO claims, but again fails to point to specific facts indicating a pattern of racketeering activity sufficient to support liability… [And] because those allegations are insufficient to plausibly allege any RICO violation, the Court will dismiss Plaintiff's RICO conspiracy claim.") (cleaned up); *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (dismissal appropriate where "the complaint failed to state a substantive RICO claim, and the RICO conspiracy adds nothing"); and *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1309–10 (11th Cir. 2022) (dismissal appropriate where conspiracy claim was based on formulaic recitation of elements).

## II. Plaintiff's Non-RICO Claims

Plaintiff's claims for Intentional Infliction of Emotional Distress (IIED), assault, and battery against Branch likewise fail.

First, regarding IIED, this Court must determine whether Plaintiff has adequately pled that Branch engaged in (1) "intentional or reckless" conduct that (2) was "extreme and outrageous" and (3) causally related to (4) "severe" emotional harm. *See* Doc. 223 p. 20 (Plaintiff's Response, citing to *Gifford v. City of Broxton, Georgia*, No. CV 508-084, 2010 WL 11607353, at *12 (S.D. Ga. Sept. 24, 2010)). Plaintiff has not sufficiently pled **facts** supporting those elements. Plaintiff claims that Branch "inspired death threats," helped "incite a riot," and "aided, abetted, and solicited retaliation against Montoya." Doc. 223 p. 21. But the facts as alleged, even taken as true, show that Branch never made any death threats, did not **personally** retaliate against Montoya, and wasn't even at the so-called riot. At most, Branch was a secondary participant whose conduct was not

9

what a "reasonable person" would call "extreme and outrageous." *Gifford,* 2010 WL 11607353, at *12. Put differently, the facts do not show that Branch's conduct was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Benson v. Deere & Co.*, 1:18-CV-5710-MHC-JSA, 2019 WL 12382920, at *10 (N.D. Ga. May 10, 2019), *report and recommendation adopted*, 1:18-CV-5710-MHC-JSA, 2019 WL 12383089 (N.D. Ga. May 30, 2019) (holding that "the isolated handful of incidents alleged by Plaintiff, none of which includes direct or express insulting or demeaning statements or actions, falls far short of what is needed to support a plausible case for intentional infliction of emotional distress."); *compare Gifford*, 2010 WL 11607353, at *12 (involving a defendant who threatened to kill the plaintiff). When setting aside the formulaic labels, the Amended Complaint is silent on any emotional harm allegedly sustained by Montoya that was **causally** related to the **intentional** conduct of Branch.

Plaintiff's assault and battery claims also fail. A person commits assault when he "attempts to commit a violent injury to the person or another" or "commits an act which places another in reasonable apprehension of immediately receiving a violent injury." *Sanchez v. Clark*, CV 308-054, 2008 WL 11419018, at *4 (S.D. Ga. Nov. 25, 2008) (citing to O.C.G.A. § 16-5-20). A person commits a battery when he "intentionally makes **physical contact** of an insulting or provoking nature with the person of another," or "intentionally **causes** physical harm to another." *Id.* (citing to O.C.G.A. § 16-5-20) (emphasis added). The *Sanchez* case is instructive. In *Sanchez*, a mother sued a school superintendent after a school counselor engaged in an illicit sexual relationship with the mother's child. *Id.* The relationship was allegedly reported to the superintendent, and the superintendent allegedly failed to respond to the issue, hindered the investigation, and threatened to retaliate against any whistleblowers. *Id.* But because the facts did not show that superintendent

10

physically touched the student or personally attempted to harm her, the plaintiff did not allege facts sufficient to state a claim for assault and battery. *Id.* The result in this case should be the same.

Plaintiff claims that Branch committed assault and battery through the acts of **others**. Doc. 223 p. 21-22. Yet Plaintiff does not allege facts showing that Branch **personally** committed a "touching of [Montoya's] person." *Lawson v. Bloodsworth*, 313 Ga. App. 616, 618 (2012). Plaintiff does not allege facts showing that Branch **personally** attempted to "commit a violent injury" on Montoya. *Sanchez,* 2008 WL 11419018, at *4. And Plaintiff does not allege facts showing that Branch **personally** put Montoya "in reasonable apprehension of immediately receiving a violent injury." *Id.* Plaintiff's assault and battery claims should therefore be dismissed. *See Hammett v. Paulding Cnty. Georgia*, 4:14-CV-0260-HLM, 2016 WL 7386983, at *16 (N.D. Ga. Aug. 1, 2016), *aff'd sub nom. Hammett v. Paulding Cnty.,* 875 F.3d 1036 (11th Cir. 2017) (finding no assault claim when the plaintiff never "apprehended a violent injury coming from" the defendant and there was no evidence that the plaintiff "even saw" the defendant); *Cross v. Stafford Hosp., Inc.*, CIV.A.7:07-CV-80-HL, 2009 WL 927763, at *9 (M.D. Ga. Mar. 31, 2009) (finding no assault and battery claim when the defendant did not "make physical contact with Plaintiff or attempt to physically harm Plaintiff"); *Cho v. United States,* 5:13-CV-153 (MTT), 2016 WL 1611476, at *8 (M.D. Ga. Apr. 21, 2016), *aff'd sub nom. Dae Eek Cho v. United States*, 687 Fed. Appx. 833 (11th Cir. 2017) (dismissing assault claim when the plaintiff failed to show that the defendant's actions and statements created "an apprehension of violent injury.").

**III.    Conclusion**

Plaintiff's RICO claims against Branch are flawed on multiple levels. Plaintiff lumps Defendants together, he fails to establish direct proximate cause, and he misses the mark when trying to plead predicate acts. In the same way, Plaintiff fails to allege facts sufficient to give rise

11

to a plausible inference that Branch could be liable for IIED or assault and battery.

Accordingly, based on the foregoing, Defendant respectfully requests that his Motion to Dismiss (Doc. 207) be GRANTED.

Dated: August 23, 2024

                                      BOUHAN FALLIGANT LLP

                                      */s/ Carlton E. Joyce*
                                      CARLTON E. JOYCE
                                      State Bar of Georgia No. 405515
                                      GARY J. MCGINTY
                                      State Bar of Georgia No. 602353

                                      *Attorneys for Defendant Christopher Branch*

Post Office Box 2139
Savannah, Georgia 31402
T: 912.232.7000
F: 912.233.0811
Email:  cejoyce@bouhan.com
         gmcginty@bouhan.com

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing was served through the Court's ECF system upon all counsel registered to receive service, and served via regular U.S. mail on the following:

Pablo Rangel-Rubio (Pro Se)
USP Atwater
U.S. Penitentiary
P.O. BOX 019001
Atwater, CA 95301

 Dated: August 23, 2024

            BOUHAN FALLIGANT LLP

            */s/ Carlton E. Joyce*
            CARLTON E. JOYCE
            State Bar of Georgia No. 405515
            GARY J. MCGINTY
            State Bar of Georgia No. 602353
            *Attorneys for Defendant Christopher Branch*

Post Office Box 2139
Savannah, Georgia 31402
T: 912.232.7000
F: 912.233.0811
Email: cejoyce@bouhan.com
   gmcginty@bouhan.com