UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| BRIAN J. HUFFMAN, as Administrator of the Estate of ELIUD MONTOYA-ARCOS, Deceased,<br><br>*Plaintiff*,<br><br>v.<br><br>THE DAVEY TREE EXPERT COMPANY; WOLF TREE, INC.; MARJORIE L. CONNER; CHRISTOPHER BRANCH; OSCAR CRUZ; and PABLO RANGEL, also known as Pablo Rangel-Rubio,<br><br>*Defendants*. | Case No. 18-cv-00184<br><br>Hon. R. Stan Baker<br><br>**Oral Argument Requested** |

**DEFENDANT OSCAR CRUZ'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Oscar Cruz and for his reply brief in support of his Motion to Dismiss, respectfully shows the Court as follows:

**Introduction**

A constant refrain in both the Huffman and Montoya filings in this and the companion State Court action is the moral equivalence they assert between the conduct of Oscar Cruz and the three men who alone conspired to murder Eliud Montoya, two of whom neither Huffman nor Montoya ever even bothered to sue. We see it again early in Huffman's response to Cruz's Motion to Dismiss in the form of this sentence, which would be libelous were it not in a pleading.

> Individual Defendants Cruz and Rangel, who were supervisors of the Corporate Defendants, pled guilty to a host of crimes surrounding Montoya's murder, including conspiracy, retaliation against a federal witness resulting in death, harboring and concealing illegal aliens and money laundering.

Huffman Response, p.2.

In fact, Cruz was not indicted, and did not "[plead] guilty to a host of crimes surrounding Montoya's murder". Cruz did not plead guilty to any "conspiracy" or other crime "surrounding", or involving, connected or related to Montoya's murder. Cruz did not plead guilty to "retaliation against a federal witness resulting in death". Cruz was not even indicted. For his bit part in Rangel's illegal activities, Cruz did plead guilty to a one Count information for harboring and concealing illegal aliens, for which he served four months and five days. In sharp contrast, the three men who alone conspired and carried out the murder of Mr. Montoya (Pablo Rangel Rubio, Juan Rangel, and Higinio Perez-Bravo) will die in jail.

The distinction we make here on behalf of Mr. Cruz is not dispositive of the pending motion, but Huffman evidently believes it favors his position to infer to the Court that Mr. Cruz is one of a kind with the three men who actually murdered Mr. Montoya. Mr. Cruz therefore presents the facts so the Court can assess the weight it should assign to Huffman's characterization of the criminal proceedings.

Huffman is right that Cruz's Motion to Dismiss in significant part regurgitates arguments he has previously made, because Huffman's Amended Complaint regurgitated the allegations of Huffman's Original Complaint. Huffman's 108-page RICO statement is a regurgitation of both Complaints, lengthened with redundancies. As with his first two attempts to plead his case, Huffman has:

(a) Failed to satisfy the element of a direct nexus between any predicate act attributed as to Mr. Cruz and any harm sustained by Montoya;

(b) Failed to plead with specificity the elements of even a single predicate act against Cruz;

(c)   Failed to plead any acquisition injury by Montoya in support of his Section 4(a) claim;

(d)   Failed to plead a separate and distinct RICO enterprise in support of his Section 4(b) claim;

(e)   Failed to plead either the terms of the alleged agreement of his conspiracy claim, or to particularize the conduct of the persons he alleges have conspired; and

(f)   Failed to state a cause of action under FRCP 12(b)(6) for the state law claims of intentional infliction of emotional distress, assault and battery.

Cruz reiterates all the arguments originally asserted in his Motion to Dismiss Huffman's Amended Complaint on each of the foregoing points. Additionally, in his argument below, Cruz addresses Huffman's failure to satisfy the element of proximate cause and his failure to plead a predicate act against Cruz on his RICO Counts I-III.

## Argument and Citation to Authority

**I.   Huffman has not Alleged, and Cannot Allege, Facts Sufficient to show the Causal Connection between any Predicate Act he Attributes to Cruz and the Murder of Eliud Montoya**

The insurmountable obstacle facing Huffman is that only the actions of the three men convicted of murdering Mr. Montoya satisfy the degree of causation for that murder required of a plaintiff proceeding under Georgia or federal RICO. No RICO liability is created unless Huffman can "show that [his] injury was the direct result of a predicate act targeted toward [him], such that [he] was the intended victim." *Wylie v. Denton*, 323 Ga. App. 161, 166 (2013) (emphasis added). Stated differently, the "question is whether the injury was directly caused by any RICO violation, not whether the injury was reasonably foreseeable," *Gentry v. Volkswagen of Am.*, 238 Ga. App. 785, 791 (1999), and "not merely that [his] injury was an eventual consequence" of the

predicate acts. *Smith v. Morris, Manning & Martin LLP,* 293 Ga. App. 153, 165-66 (2008) (citation omitted). "The standard for establishing causation is high: When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Petlehckov v. FedEx Corp.*, 2024 WL 729006, at *4 (11th Cir. Feb. 22, 2024) (citing Pollman v. Swan, 314 Ga. App. 5, 6-7 (2011)).

Huffman's deflection from this incurable flaw is to argue that "there is no requirement that plaintiff suffer direct harm from each and every alleged predicate act introduced to show a pattern of racketeering activity." *Huffman Response,* p. 12. Huffman is correct, and Cruz makes no such contention. Rather, Cruz contends Huffman has failed to show that Montoya suffered direct harm (i.e., was murdered) from **any** conduct of Cruz.

It is telling that Huffman begins the references to his allegations purportedly establishing the direct nexus between Cruz's conduct and Montoya's murder by citing ¶53 of his Amended Complaint, which is perhaps the highest exponent of Huffman's reliance upon scattershot generalities, in which he attributes to all his targets general categories of misdeeds.[1] When Huffman tries to particularize his allegations against Cruz, referring to his allegations in ensuing paragraphs, he is reduced to asking the Court to accept that Montoya was murdered by a May 2017 meeting and a June 2017 "baseless and concocted employee violation notice" rather than the bullet fired by Juan Rangel three months later in August 2017. *Huffman Response*, pp.14-16. Finally, Huffman alleges that, on Friday August 18, 2017, Cruz called off work for the entire Savannah call center for Saturday August 19, 2017, the day Montoya was murdered, in order to

---

[1] "Instead of promptly, confidentially and lawfully addressing Montoya's whistleblower reports of serious criminal and dangerous conduct, each of the Defendants, aided and abetted by each other, engaged in a systematic effort to silence Montoya, through physical threats, economic threats, intimidation, retaliation, deception, and eventually murder." Amended Complaint ¶53

aid and abet the murder.[2] Yet Huffman offers no rationale for how this would aid and abet the murder of Montoya, who would not be at work that day anyway because of a three day suspension issued to him the previous Thursday by an out of town Wolf Tree supervisor over Cruz's objection.

The **only** predicate act that caused the **only** injury of consequence sustained by Mr. Montoya – his death and pain and suffering – is the murder conceived by Pablo Rangel and his co-conspirators. The federal convictions of these three men in the Southern District of Georgia for that crime, and more significantly, the absence of any charge by indictment or information against Mr. Cruz for that crime, or on any charge related to that crime after a thorough investigation, by either federal or state authorities, draw a clear line of demarcation between the persons responsible for Mr. Montoya's death and those who are not. Paraphrasing the Court of Appeals decision in *Wylie,* all that can be inferred from Huffman's voluminous filings is that "act[s] of racketeering occurred and that [Mr. Montoya] was injured." *Wylie*, 323 Ga. App. at 166. Left unpled is any viable link connecting the alleged racketeering activity to Mr. Montoya's murder.

## II. Huffman has failed to plead with specificity any Predicate Act against Mr. Cruz

***Influencing and Threatening a Witness.*** Cruz is accused of violating Georgia's "witness threatening" statute under O.C.G.A. 16–10–32(b), and the "witness influencing" statute under O.C.G.A. 16–10–93(b)(1)(C) by his presence at the May 2017 meeting (Amended Complaint ¶¶ 59-63) and the allegedly pretextual citations for workplace policy violations (*id.* ¶¶ 68-69, 80). Huffman fails to allege a violation of either statute for two reasons.

Both statutes require conduct to deter someone from communicating unlawful conduct to

---

[2] None of this is true, but of course must be assumed to be true for the present Motion.

a *law enforcement officer*[3]. Huffman erroneously contends that "the Georgia Department of Labor is law enforcement. *See, e.g.*, Huffman's Response at 14-15 ("as alleged multiple times in the Amended Complaint, Montoya revealed to all Defendants, including Cruz, that he had reported to law enforcement, the Department of Labor, the criminal and dangerous conduct he observed, and intended to again if the "problem [was] not solved" by Davey Tree and Wolf Tree.").

In Georgia, the term "law enforcement officer" is codified by statute to mean "a person employed or appointed by a state or political subdivision who is granted, by state law, the authority to ***enforce criminal, traffic, or penal laws*** of his or her respective state and ***who possess the power to effect arrests***." O.C.G.A. § 35-1-15(a)(2) (emphasis added) The Department of Labor does not "possess the power to effect arrests" or "enforce criminal, traffic or penal laws". It is not a law enforcement agency. It is an administrative agency. Thus, the Complaint fails to allege a violation of the witness influencing and threatening statutes.

Additionally, the crime of "witness threatening" prohibits the act of threatening or causing "physical or economic harm to another person …with the intent to hinder, delay, prevent, or dissuade any person from [a]ttending or testifying in an *official proceeding*." O.C.G.A. § 16–10–32(b)(1) (emphasis added). Huffman is correct that an "official proceeding" – which the statute specifically defines as a "***hearing or trial*** conducted by … an agency of the executive, legislative, or judicial branches of the government" (*id.* at § 16–10–32(c)(1)) – does *not* have to be pending for the crime to be committed, arguing that Cruz was on notice that Mr. Montoya had been

---

[3] The crime of "witness influencing" prohibits any person from using "intimidation, physical force, or threats" toward another person with intent to "hinder, delay, or prevent the communication to a law enforcement officer …." O.C.G.A. 16–10–93(b)(1)(C) (emphasis added). The "witness threatening" statute also bars the use of physical or economic threats to prevent someone from "[r]eporting in good faith to a law enforcement officer … the commission or possible commission of an offense." O.C.G.A. 16–10–32(b)(2)

"speaking to the Department of Labor." (Opp. at 17.) Still, while a proceeding does not have to be pending, it must at least be foreseen. *U.S. v. Friske*, 640 F.3d 1288 (11th Cir. 2011) (It is "one thing to say that a proceeding need not be pending or about to be instituted at the time of the offense, and quite another to say a proceeding need not even be foreseen." Id. at 1292) (interpreting 18 U.S.C. § 1512(e)(1), the federal witness tampering/threatening analog to O.C.G.A. 16–10–32(b)(1)); *Arthur Andersen LLP v. U.S.*, 544 U.S. 696, 707-08 (2005). Huffman does not undertake to plead any facts upon which it could be said that Mr. Cruz, who has no formal legal training, foresaw a trial or hearing at the time of any of the incidents of which Huffman complains.

*Terroristic Threats.*  Huffman contends his Complaint sufficiently pleads the commission by Mr. Cruz of the crime of making "terroristic threats." A "person commits the offense of a terroristic threat when he or she threatens to [c]ommit any crime of violence" with the "purpose of terrorizing another." O.C.G.A. § 16-11-37(b)(1). The "plain and ordinary meaning of the word 'threat' refers to a communication, declaration, or intention to inflict harm or damage." *Cooley v. Woods*, 642 F. Supp. 3d 1363, 1374-75 (N.D. Ga. 2022) (citing *Bryant v. State*, 306 Ga. 687, 690 (2019)). The crime of terroristic threats "focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize." *McQueen v. State*, 184 Ga. App. 630, 631 (1987). The sole factual support of the foregoing is an allegation that Mr. Cruz "called a meeting of the approximately 30 Savannah Call Center employees," where Rangel "read Montoya's whistleblower report aloud to all of the employees," after which "many of the Savannah Call Center illegal alien employees became enraged, began rioting, and threatened Montoya with physical violence and death." (Amended Complaint ¶ 61) The glaring omission is an allegation of any threat made by Mr. Cruz. Huffman only alleges unidentified "Savannah Call Center illegal alien employees" who allegedly "threatened Montoya with physical violence and

death." (Id.).

***Federal Witness Retaliation and Murder.*** Huffman also fails to explain how the predicate acts of federal witness retaliation and murder can be attributed to Oscar Cruz. There is no factual basis in the Complaint to attribute to Mr. Cruz the knowledge that Mr. Rangel was capable of resorting to violence. Huffman fails to make a single allegation to support his assertion that Mr. Rangel was a "dangerous criminal" *before* Mr. Montoya's death, or that others knew about (or could foresee) his violent and criminal disposition.

This is Huffman's best shot.

> "Rangel told Cruz about Montoya's report to federal authorities. (Id., ¶ 132). At the time, Cruz was already aware that, in early August 2017, Rangel had threatened with bodily harm two other illegal-alien employees after the employees signed declarations describing various criminal conduct. (RS, p. 35)" On August 18, 2017, aware that Montoya had taken his allegations of criminal activities to federal authorities, Cruz informed all of the Savannah Call Center employees that work for the next day had been cancelled, with the intent to aid and abet retaliation against a federal witness, in violation of 18 U.S.C. § 1513. (Id., ¶ 132). The next day, August 19, 2017, Rangel caused the murder of Montoya, in violation of 18 U.S.C. § 1513 (Federal Witness Retaliation) and O.C.G.A.§ 16-5-1 (Murder). (Id., ¶ 133)."

Huffman's Response, p. 18.

On this tenuous and unsubstantiated character assassination, the Court should heed the admonition of the Eleventh Circuit that "conclusory allegations that are not entitled to an assumption of truth." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010); *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal."). Huffman's claim that Cruz was somehow involved in aiding and abetting witness retaliation in violation of 18 U.S.C. § 1513 fails. Huffman's claim that Cruz was involved in Mr. Montoya's murder under O.C.G.A. § 16–5–1 fails.

### III.    Adoption and Joinder

In further support of his Motion to Dismiss, Cruz adopts and joins in the arguments advanced by all co-Defendants in support of their respective Motions to Dismiss. Without limiting the generality of the foregoing, Cruz expressly adopts and joins in the arguments of co-Defendants The Davey Tree Expert Company and Wolf Tree, Inc. with respect to (i) Huffman's failure to plead an acquisition injury in support of his Section 4(a) claim, (ii) Huffman's failure to plead a separate and distinct RICO enterprise in support of his Section 4(b) claim, and (iii) Huffman's failure to plead either the terms of the alleged agreement of his conspiracy claim, or to particularize the conduct of the persons he alleges have conspired.

### Conclusion

For the foregoing reasons, Oscar Cruz respectfully requests that this Court dismiss with prejudice all claims asserted against him in Huffman's Amended Complaint and grant all such other and further relief as is just and proper.

This 23rd day of August, 2024.

              BRENNAN & WASDEN, LLC

              By: /s/ Wiley A. Wasden, III
                  Wiley A. Wasden, III
                  Lead Counsel
                  State Bar No. 738750
                  William E. Dillard
                  State Bar No. 222030

                *Attorneys for Defendant Oscar Cruz*

Post Office Box 8047
Savannah, Georgia 31412
912-232-6700 TELEPHONE
912-232-0799 FACSIMILE
wwasden@brennanwasden.com
bdillard@brennanwasden.com
1394-2

## CERTIFICATE OF SERVICE

This is to certify on this 23rd day of August, 2024, the foregoing was served through the Court's ECF system upon all counsel registered to receive service, and served via regular U.S. mail on the following:

**Pablo Rangel-Rubio (Pro Se)**
**USP Atwater**
**U.S. Penitentiary**
**P.O. Box 019001**
**Atwater, CA  95301**

                              BRENNAN & WASDEN, LLC

                              By:   /s/ Wiley A. Wasden, III
                                   Wiley A. Wasden, III
                                   Lead Counsel
                                   State Bar No. 738750
                                   William E. Dillard
                                   State Bar No. 222030
                                   *Attorneys for Defendant Oscar Cruz*

Post Office Box 8047
Savannah, Georgia 31412
(912) 232-6700 TELEPHONE
(912) 232-0799 FACSIMILE
wwasden@brennanwasden.com
bdillard@brennanwasden.com