IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| BRIAN J. HUFFMAN, as Administrator of the Estate of Eliud Montoya-Arcos, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV 418-184 |
| THE DAVEY TREE EXPERT COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |

**O R D E R**

The Court has previously detailed the unique procedural history of this case in several orders, familiarity of which is presumed. Presently at issue is whether discovery should be stayed for consideration of summary judgment motions and, if not, the extent of discovery that is appropriate in light of the efforts already undertaken in the related state *Montoya* case. This issue has sparked much debate in status conferences and briefing, (see doc. nos. 278, 306, 316, 323, 326), because in Montoya the parties conducted more than 50 depositions, received tens of thousands of pages of discovery, conducted three trial depositions, and conducted a two-week trial that resulted in a verdict of $5.45 million. The parties agreed to use in this case the extensive discovery from *Montoya*.

Unlike *Montoya*, the Estate as plaintiff here is seeking damages for pre-death pain and suffering, and asserting a RICO claim against Defendant Rangel.  The claims remaining after rulings on motions to dismiss are as follows:

| | |
|---|---|
| Counts 1 to 3 | RICO (Rangel) |
| Count 4 | Battery (Rangel) |
| Count 5 | Assault (Rangel) |
| Count 8 | Negligence (Branch) |
| Count 9 | Respondeat Superior for Branch Negligence (Corporate Defendants) |
| Count 10 | Negligent Hiring and Retention (Corporate Defendants) |
| Count 11 | Intentional Infliction of Emotional Distress (Rangel) |
| Count 12 | Respondeat Superior for Rangel IIED (Corporate Defendants) |
| Counts 20 to 22 | Survival (All Defendants) |

The Corporate Defendants ask to stay discovery while they refile summary judgment motions on the negligence claims asserted in Counts 9 and 10, contending these claims fail for lack of proximate cause due to the intervening and unforeseeable act of Mr. Montoya's murder. (Corp. Defs' Br., doc. no. 316.)  They also plan to seek summary judgment on the only other claim pending against them in Count 12.  Defendant Branch joins in the stay request and recently filed a motion for judgment on the pleadings as to Count 8, the only remaining claiming against him, arguing he owed no legal duty to provide Mr. Montoya with a safe workplace. (Doc. no. 310.)  After careful consideration, the Court allows the limited discovery detailed below to be completed by **January 30, 2026**.  Defendants may move for summary judgment as soon as they deem appropriate but no later than **March 2, 2026**, the deadline for parties to file all civil motions including *Daubert* motions but excluding motions in limine.  The Court turns to a discussion of the discovery requested by Plaintiff in light of the efficiency and proportionality considerations in Federal Rule of Civil Procedure 26(b)(1).

1. **Expert Discovery**

Plaintiff requests three months of expert discovery but fails to identify the types of expert witnesses he intends to call, state whether these experts testified in *Montoya*, and explain why additional discovery is necessary for plaintiff and defense experts who already testified. The Court cannot make a proportionality finding on this record and will not allow any expert discovery.

**2.  Interrogatories and Requests for Production**

Plaintiff "intends to receive responses to the interrogatories and request for production of documents . . . that were served upon Davey Tree and Wolf Tree in 2023." Because Plaintiff does not specify any particular interrogatory and the Court sees no obvious need to start at discovery step one, no interrogatory responses will be permitted or compelled.

Plaintiff intends to seek production from the Corporate Defendants and third parties of (1) "documents produced or provided to any state or federal law enforcement entity, prosecutor, or grand jury located within the Southern District of Georgia from August 19, 2017 to the present"; and (2) documents concerning "the fraud upon Georgia Power and their hiring, harboring, and transporting illegal aliens." (Doc. no. 306, p. 4.) In support, Plaintiff references the $4 million settlement between the Corporate Defendants and United States and argues the documents to be requested "are likely to show the Corporate Defendants knew about their criminal subordinate Rangel's illegal immigration scheme; knew they were profiting handsomely from same, and wanted the scheme to continue." (Doc. no. 323, p. 8.)

These are, however, basic facts undoubtedly covered *ad nauseum* in *Montoya* and, more importantly, they are merely background facts in the case *sub judice*. Indeed, the presiding District Judge determined, when considering motions to dismiss, that (1) the Corporate

3

Defendants' scheme to employ illegal aliens does not give rise to RICO liability because murdering Mr. Montoya in retaliation for his refusal to participate in the scheme does not create RICO proximate causation; and (2) the RICO claim against Mr. Rangel passes scrutiny because it alleges predicate acts by him directly in relation to Mr. Montoya's murder. In light of these critically important determinations, the trial will focus on the murder of Mr. Rangel, and basic facts concerning the illegal employment scheme will merely provide a broader context. For these reasons, the information gleaned from copious discovery and a lengthy trial in *Montoya* concerning the scheme to employ illegal aliens is likely more than sufficient, and there is likely little benefit of obtaining additional documents.

An important countervailing consideration is that Plaintiff seeks in part documents already produced by the Corporate Defendants in connection with the federal investigation, as well as all related communications. The burden of producing these documents for a second time should be light notwithstanding the need for the Corporate Defendants to remove "confidential settlement communications with the Department of Justice provided pursuant to grand jury subpoenas that continue to be protected by Rule 6(e) (in the hands of the government)." (Doc. no. 316, p. 18.) Accordingly, the Court will permit Plaintiffs to obtain, from the Corporate Defendants but not third parties, any non-privileged documents previously produced in connection with the federal investigation as well as all related communications between the Corporate Defendants and the government.

These efficiencies do not exist with respect to Plaintiff's broader attempt to obtain from the Corporate Defendants and third parties all documents concerning "the fraud upon Georgia Power and their hiring, harboring, and transporting illegal aliens." (Doc. no. 306, p. 4.) In

4

light of their limited relevance, the higher burden of collecting these documents and producing them for the first time outweighs the likely benefit, and the Court will not permit this discovery.

Plaintiff briefly mentions the need to obtain "additional bank account and phone records . . . which are relevant to Plaintiff's RICO and punitive damages claims and were not subpoenaed" in *Montoya*. Plaintiff also generally states the need to conduct discovery concerning the Corporate Defendants' resources and assets in support of his punitive damages claim. Such discovery should be conducted only if claims against the Corporate Defendants survive summary judgment, and at that time the Court should carefully consider whether the considerable amount of discovery conducted in *Montoya* concerning these topics is sufficient. (Doc. no. 326, p. 12.)

### 3. Party Depositions

Plaintiff generally states his intention to depose the Corporate Defendants, Defendant Rangel, and Defendant Christopher Branch. The Corporate Defendants point out that, in *Montoya*, their 30(b)(6) designees provided testimony concerning 109 topics. Plaintiff does not provide any reason why additional 30(b)(6) testimony is necessary, and the Court will not permit any further testimony. The Court will permit the deposition of Defendant Rangel because his initial deposition in *Montoya* was taken for the limited purpose of the prison visit inquiry, and his trial deposition is not the equivalent of a discovery deposition. The Court will not permit the deposition of Mr. Branch because he testified at a deposition and at trial in *Montoya*, and Plaintiff has provided no reason he should testify a third time. (See Branch Discovery Resp. Br., doc. no. 315).

### 4. Non-Party Depositions

5

The Court will permit the depositions of Juan Rangel and Higinio Perez-Bravo because they participated in the murder and never testified in *Montoya*. The Court will permit the deposition of Dr. Natashs Grandhi, the forensic pathologist who performed the autopsy. While the Corporate Defendants point out that she did testify in *Montoya* concerning the condition of Mr. Montoya's body and cause of death, a second deposition is necessary here to the extent, if any, she will offer additional information and opinions relevant to the claim for pre-death mental pain and suffering. The Court will not permit the depositions of Beverly Strom, Joseph Paul, and Ann Davis because they testified in depositions and at trial in *Montoya*, and the sole reason given for requiring them to testify a third time is to explore alleged inconsistencies between their trial and deposition testimonies.

In his initial brief, Plaintiff stated the need to depose Pat Covey, the CEO of Davey Tree, who testified at length in the *Montoya* trial but was never deposed because he "was never identified as an individual with relevant information in Davey Tree's discovery." (Corp. Defs' Br., doc. no. 306, p. 5.) The Corporate Defendants argue it is clear from his trial testimony that Mr. Covey had no independent knowledge of the relevant facts. (Corp. Defs' Resp. Br., doc. no. 316, p. 22.) In reply, Plaintiff explains Mr. Covey testified at trial concerning Dave Tree's hierarchy, structure, and goals. Plaintiff seeks to depose Mr. Covey concerning the Corporate Defendants' financial resources and assets as relevant to the punitive damages claim. (Corp. Defs'. Reply, doc. no. 323, p. 10.) The Court will not permit Mr. Covey's deposition at this time because (1) Mr. Covey's trial testimony should be sufficient to cover basic hierarchy, structure, and goals; and (2) punitive damages testimony concerning financial resources and assets is best taken after summary judgment rulings and on the eve of trial, and likely from someone other than the CEO in light of the apex doctrine.

6

Plaintiff seeks to depose Marjorie Conner, former general counsel of Davey Tree, who conducted the internal investigation into Mr. Montoya's whistleblower complaint. According to the parties, the *Montoya* Court held the attorney-client and work product privileges do not apply to Ms. Conner's conversations with Mr. Rangel, and thus required Davey Tree to produce notes of Ms. Conner's conversations with Mr. Rangel. Plaintiff has never had the opportunity to question Ms. Connor concerning this limited topic. The Corporate Defendants quote an order from the *Montoya* Court that prohibits usage of Ms. Conner's notes in the case *sub judice* in the absence of an application directly to this Court. Plaintiff's request to depose Ms. Connor in the context of the current discovery briefing is sufficient to constitute an application, which the Court grants. Accordingly, Plaintiff may use the notes in connection with this civil action and may depose Ms. Connor on this limited topic.

SO ORDERED this 7th day of October, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA