**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

BRIAN J. HUFFMAN, as Administrator of the
Estate of Eliud Montoya-Arcos, Deceased,

      Plaintiff,

      v.

THE DAVEY TREE EXPERT COMPANY;
WOLF TREE, INC.; MARJORIE L.
CONNER; CHRISTOPHER BRANCH;
OSCAR CRUZ; and PABLO RANGEL, a/k/a
PABLO RANGEL-RUBIO,

      Defendants.

CIVIL ACTION NO.: 4:18-CV-184

**O R D E R**

For the reasons explained below, the Court **GRANTS** Plaintiff's Renewed Motion to Remand.  (Doc. 364.)

Defendants removed this case to this Court nearly eight years ago.  (Doc. 1.)  After some initial dispute, the parties eventually agreed that, though Plaintiff asserted only state-law claims, his claims under the Georgia civil Racketeer Influenced and Corrupt Organizations ("RICO") statutes created federal question jurisdiction because those claims implicated significant federal issues.  (See doc. 123, p. 3.)  In the ensuing years, the Court reviewed hundreds of filings by the parties and issued dozens of rulings under the belief that federal question jurisdiction existed over the RICO claims and supplemental jurisdiction existed over the related state tort claims.  (See, e.g., doc. 261.)  Then, on January 27, 2026, after the Court had dismissed most of his claims, Plaintiff filed a Renewed Motion to Remand arguing that the Court never had subject matter jurisdiction over the case.  (Doc. 364.)  In contrast to his earlier representations, Plaintiff asserts that his

Georgia RICO claims do not raise substantial federal issues sufficient to confer jurisdiction. (Id.) All Defendants except Defendant Pablo Rangel-Rubio filed responses in opposition to Plaintiff's Renewed Motion, (docs. 372, 373 & 374), Plaintiff filed a Reply, (doc. 378), and Defendants The Davey Tree Expert Company ("Davey Tree") and Wolf Tree, Inc. ("Wolf Tree) filed a Sur-Reply, (doc. 385).[1]

Plaintiff's Georgia RICO claims do not raise a necessary and substantial federal issue sufficient to confer subject matter jurisdiction over those claims. Therefore—despite the considerable time and resources expended on this case—the Court **GRANTS** Plaintiff's Renewed Motion to Remand, (doc. 364), and **REMANDS** the case to the State Court of Chatham County. Given that the case falls outside of this Court's subject matter jurisdiction, the Court cannot rule on Defendant Branch's Motion for Judgment on the Pleadings, (doc. 310), or Plaintiff's (second) Motion for Reconsideration, (doc. 334). The Court thus **DIRECTS** the Clerk of Court to **TERMINATE** those motions, (docs. 310 & 334), and any other pending motions.

## BACKGROUND

The Court provided an extensive factual background in its March 3, 2025, Order. (See doc. 261, pp. 2–9.) The facts below are relevant to Plaintiff's Renewed Motion to Remand.

On July 3, 2018, Plaintiff Brian Huffman, as administrator Montoya's estate, filed a complaint against Davey Tree, Wolf Tree, Marjorie L. Conner, Christopher Branch, Oscar Cruz, and Pablo Rangel in the State Court of Chatham County, Georgia. (Doc. 1, pp. 1–2.) Defendants

---

[1] Defendants Christopher Branch and Oscar Cruz both filed notices of their intent to join the Response of Defendants Davey Tree and Wolf Tree. (Docs. 372 & 374.) While Defendant Branch's filing offered some of his own arguments against remand, those arguments were consistent with Davey Tree and Wolf Tree's arguments. (Compare doc. 372 (Branch's response), with doc. 373 (Davey Tree and Wolf Tree's Response).) Throughout this Order, the Court thus addresses Defendants' arguments against Remand as they are presented in Davey Tree and Wolf Tree's Response and refers to that Response as "Defendants' Response."

removed the case to this Court on August 2, 2018.[2]  (See generally id.)  On August 31, 2018, Plaintiff filed a Motion to Remand, arguing the Court lacked subject matter jurisdiction.  (Doc. 28.)  Before the Court could rule on that motion, on January 8, 2019, the Court granted a motion by the United States to intervene in the case and to stay proceedings pending the outcome of related federal criminal proceedings.  (Doc. 38.)  The Government eventually moved to lift the stay on December 1, 2022.  (Doc. 67.)  On March 13, 2023, before the Court ruled on the Government's request to lift the stay, Plaintiff filed a Motion to Withdraw his 2018 Motion to Remand.  (Doc. 82.)  The Court subsequently lifted the stay and withdrew Plaintiff's Motion to Remand.  (Doc. 83.)  On July 14, 2023, with the action resumed and Plaintiff's Motion to Remand withdrawn, Plaintiff filed an Amended Complaint.  (Doc. 123.)

Plaintiff's Amended Complaint asserted twenty-two causes of action against Defendants.[3] (Id.)  Nineteen counts alleged an assortment of tort claims and derivative claims for survival, punitive damages, and attorneys' fees—all under Georgia law.  (Id. at pp. 45–60.)  The three other counts asserted claims against all Defendants under Georgia civil RICO statutes: Count I alleged Defendants violated O.C.G.A. § 16-14-4(b) by participating in an enterprise through a pattern of racketeering activity; Count II alleged Defendants violated O.C.G.A. § 16-14-4(a) by maintaining control of an enterprise or property through a pattern of racketeering activity; and Count III alleged

---

[2]  Although defendant Rangel did not join in the removal, the participating parties provided a copy of Rangel's signed consent to removal.  (Doc. 1, p. 2; doc. 1-10.)

[3]  The Court details the claims of the Amended Complaint because, under recent Supreme Court precedent, the Court must determine whether it has jurisdiction over this matter based on that currently operative pleading rather than the pleadings that had been filed at the time of removal.  See Royal Canin U.S.A., Inc. v. Wullschleger, 604 U.S. 22, 30 (2025) ("When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says.").  At any rate, the Court's jurisdictional finding would remain the same whether considering Plaintiff's original Complaint, (doc. 1-2), his Amended Complaint, (doc. 123), or only those claims remaining in place following the Court's rulings on the Defendants' motions to dismiss, (see doc. 261).

Defendants violated O.C.G.A. § 16-14-4(c) by conspiring or endeavoring to violate the provisions of §§ 16-14-4(a–b).[4]  (Id. at pp. 25–44.)  In support of his RICO claims, Plaintiff alleged that, "[f]rom 2008 through at least 2018, Wolf Tree, Davey Tree, Conner, Branch, Cruz, Rangel and others . . . conducted and participated in an association-in-fact enterprise" of which the common purpose was to "s[eek] out, f[i]nd, and recruit[] illegal aliens for employment by Wolf Tree and Davey Tree, and s[ell] false identities and false identity documents to those illegal aliens in exchange for money, enabling Wolf Tree and Davey Tree to claim they only employed legal workers." (Id. at pp. 25–26.)  "When the crimes of the Davey-Rangel Enterprise were in danger of being exposed," the RICO claims alleged, "Rangel, with the participation of the other defendants and others, threatened, intimidated, retaliated against, and silenced those who sought to report the enterprise's activities, including Montoya." (Id. at p. 26.)

As to subject matter jurisdiction, the Amended Complaint alleged, in line with Defendants' Notice of Removal:

> This Court has subject matter jurisdiction over Counts 1 through 3 of this Complaint, Plaintiff's Georgia RICO claims, pursuant to federal question jurisdiction, as the RICO claims raise issues of substantial importance and serious federal interests.  This Court has subject matter jurisdiction over Plaintiff's remaining, non-Georgia RICO claims pursuant to supplemental jurisdiction.

(Id. at p. 3.)

Plaintiff further clarified the basis for federal question jurisdiction in April 2024 when he filed a Local Rule 9.1 RICO Statement. (Doc. 196.)  As part of that Statement, Plaintiff described the "enterprise" at the center of Defendants' alleged RICO violation as "exist[ing] primarily to profit from the recruiting, employment and exploitation of illegal alien workers." (Id. at p. 73.)

---

[4]  The Amended Complaint's headings for Counts I and III both referenced Chapter 4 of O.C.G.A. Title 16, with Count I listing § 16-4-4(b) and Count III listing § 16-4-4(c). (Doc. 123, pp. 25, 42.)  However, it is clear from the substance of these counts that Plaintiff intended to assert violations of Chapter 14: Count I is for violations of § 16-14-4(b) and Count III for § 16-14-4(c). (Id.)

The RICO Statement also listed the "predicate acts" that Defendants had allegedly committed as part of the "pattern of racketeering activity" required for RICO liability. (See generally id.) Plaintiff stated that Defendants had committed fourteen categories of predicate acts—eight in violation of Georgia law and six in violation of federal law. (Id. at pp. 51–64.) For the state-law predicate acts, Plaintiff alleged Defendants committed these crimes:

> (a) theft by deception, in violation of O.C.G.A. § 16-8-3; (b) identity fraud in violation of O.C.G.A. § 16-9-21; (c) threatening to influence a witness, in violation of O.C.G.A. § 16-10-93; (d) making terroristic threats or soliciting or coercing others to make terroristic threats, in violation of O.C.G.A. § 16-11-37; (e) threatening witnesses in official proceedings, in violation of O.C.G.A. § 16-10-32; (f) murder in violation of O.C.G.A. § 16-5-1; (g) false statements against public officers or public employees, in violation of O.C.G.A. § 16-10-20; and (h) perjury in violation of O.C.G.A. § 16-10-70.

(Doc. 364, p. 3 (citing doc. 196, pp. 54–61).) Plaintiff alleged Defendants committed the following predicate acts in violation of federal law:

> (a) mail fraud in violation of 18 U.S.C. § 1341; (b) wire fraud in violation of 18 U.S.C. § 1343; (c) money laundering in violation of 18 U.S.C. § 1956; (d) use of false identification documents, in violation of 18 U.S.C. § 1546; (e) concealing, harboring and shielding from detection illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A); and (f) retaliating against a federal witness or abetting and soliciting retaliation against a federal witness, in violation of 18 U.S.C. § 1513.

(Id. at pp. 3–4 (citing doc. 196, pp. 52–56, 59–60).)

On March 3, 2025, the Court granted motions to dismiss filed by Defendants Branch, Conner, Cruz, Davey Tree, and Wolf Tree. (Doc. 261.) In that Order, the Court dismissed all RICO claims against all Defendants except for Defendant Rangel, who had not moved for dismissal. (Id. at pp. 11–22.) But the Court denied Defendants' request that it dismiss Plaintiff's non-RICO claims for lack of subject matter jurisdiction. (Id. at pp. 23–24.) The Court stated, "[e]ven after dismissing all the RICO claims against the moving Defendants, there are still federal claims remaining before the Court: Rangel is still a Defendant and has not moved to dismiss

5

Plaintiff's Amended Complaint." (Id. at p. 23.)  The Court reasoned that, because it could continue to exercise federal question jurisdiction over the RICO claims against Rangel, it could exercise supplemental jurisdiction over the other remaining claims.  (Id. at pp. 23–24.)

Following the March 3, 2025, Order, the parties filed several motions—some of which remain pending.  On July 18, 2025, Defendant Branch filed a Motion for Judgment on the Pleadings, asking the Court to dismiss the negligence claim against him in Count VIII.  (Doc. 310.)  On November 20, 2025, Plaintiff filed a (second) Motion for Reconsideration, asking the Court (once again) to reconsider its prior order dismissing his RICO claims as to most of the Defendants.  (Doc. 334.)  Finally, on January 27, 2026, Plaintiff filed the Renewed Motion to Remand that is the subject of this Order.  (Doc. 364.)

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted).  As such, a defendant may only remove an action from state court to federal court if the federal court possesses original jurisdiction over the subject matter.  See 28 U.S.C. § 1441(a).  A federal district court has original jurisdiction over two types of civil actions: (1) those arising under federal law ("federal question jurisdiction"); and (2) those involving diversity of citizenship.  See 28 U.S.C. §§ 1331, 1332.  Removal jurisdiction based on a federal question "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112–13 (1936)).

"A removing defendant bears the burden of proving proper federal jurisdiction." Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002).  "Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008).  A district court must assess whether removal jurisdiction exists not only in response to a motion to remand, but also on its own initiative throughout litigation, pursuant to its "obligation to inquire into its own jurisdiction." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

## DISCUSSION

Defendants originally removed this action to this Court pursuant to the rule that "[f]ederal courts may exercise jurisdiction over state law claims that implicate significant federal issues." (Doc. 1, p. 3 (citing Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005).)  Federal question jurisdiction generally exists when a plaintiff pleads a claim "arising under" federal law.  28 U.S.C. § 1331.  The basic test is whether "a federal question appears on the face of the plaintiff's well-pleaded complaint." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009) (citing Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908)).  The most typical way for a claim to satisfy this test and "arise under" federal law is where federal law creates the plaintiff's cause of action. See Gunn v. Minton, 568 U.S. 251, 257 (2013).

However, claims may still arise under federal law for purposes of jurisdiction even where a complaint pleads only state-law claims. See Dunlap v. G & L Holding Grp., Inc., 381 F.3d 1285, 1290 (11th Cir. 2004) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 13

(1983)).  In those cases, federal question jurisdiction is warranted if the state claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  Grable, 545 U.S. at 314.  In other words, "[t]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 (1986).  Instead, federal question jurisdiction exists over a state-law claim only where the claim contains a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Gunn, 568 U.S. at 258.

For a federal issue to meet the "necessity" requirement, "federal law must be an essential element of [the plaintiff's] claim."  Dunlap, 381 F.3d at 1290 (alterations adopted) (quoting Mobil Oil Corp. v. Coastal Petroleum Co., 671 F.2d 419, 422 (11th Cir. 1982)).  Further, to meet the "substantiality" requirement, the federal issue must "substantially involve[] a dispute or controversy respecting the validity, construction or effect of [federal] law."  Id. (quoting Mobil Oil, 671 F.2d at 422).  That is, "the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another."  Id. (quoting Mobil Oil, 671 F.2d at 422).

Defendants argue that, under the substantial-federal-issue rule, Plaintiff's Georgia RICO claims create subject matter jurisdiction.  (See docs. 372, 373, & 374.)  To prevail on any of his RICO claims, Plaintiff must show that Defendants engaged in, or conspired to engage in, "a pattern of racketeering activity"—which in turn requires that Defendants committed, or conspired to commit, at least two RICO predicate acts.  O.C.G.A. §§ 16-14-4(a)–(c); see also Ruiz v. Sewon Am., Inc., 766 F. Supp. 3d 1251, 1280–81 (N.D. Ga. 2025).  Defendants argue that substantial-

federal-issue jurisdiction exists here because "the two federal predicate acts involving violations of the immigration laws—18 U.S.C. § 1546 and 8 U.S.C. § 1324(a)(1)(A)—are quite literally the fulcrum that controls every other state and federal predicate act of racketeering activity."  (Doc. 373, p. 16.)

On the other hand, Plaintiff contends that the Court lacks jurisdiction because, though Plaintiff's Georgia RICO causes of action allege federal law predicate acts, the federal issues implicated by the RICO claims are neither necessary to resolution of those claims nor substantial. (Doc. 364, pp. 8–17.)  According to Plaintiff, the alleged federal predicate acts do not render resolution of a federal issue sufficiently necessary because he has also alleged Georgia-law predicate acts and can prevail on his RICO claims based purely on those state-law allegations. (Id.)  Further, even if resolution of federal issues were necessary, Plaintiff contends that the issues would not be sufficiently substantial because their resolution would depend on "simple application of non-disputed federal law" to the specific facts of this case, rather than on potential precedent-creating interpretations of federal statues or legal principles.  (Id. at pp. 10–11.)

Plaintiff has the better argument.  While the RICO claims implicate federal issues, those issues are not dispositive to the claims and do not require any substantial legal interpretation— much less a decision that could meaningfully affect future applications of federal law.  Thus, even assuming the federal issues raised by the Amended Complaint are "actually disputed" and "capable of resolution in federal court," they fail both the "necessity" and "substantiality" requirements for conferring subject matter jurisdiction under the substantial-federal-issue rule.  See Gunn, 568 U.S. at 258.  Defendants repeatedly point out that the Court already addressed the question of jurisdiction when, after granting motions to dismiss filed by some of the Defendants, the Court

9

stated that the remaining RICO claims against Rangel were "federal claims."  (See, e.g., doc. 385, pp. 5–6 (citing doc. 261, pp. 23–24).)  The Court was wrong, and this Order corrects that error.

### A. Plaintiff's RICO Claims do not Meet the Necessity Requirement.

First, because Plaintiff also alleges numerous state-law predicate acts, his federal-law-predicate-act allegations are not sufficiently "necessary" to his RICO claims.  The necessity requirement, furthermore, is also not met by the allegation that the defining characteristic of Defendants' alleged RICO enterprise was a shared intent to violate federal immigration laws.

Several courts in the Eleventh Circuit have found jurisdiction lacking where, as here, a plaintiff alleges both federal and state law predicate acts in support of a state RICO claim.  For instance, in Hoipkemier v. Miller, No. 1:24-CV-00600, 2024 WL 4829486, at *2–3 (N.D. Ga. Nov. 18, 2024), investors brought a Georgia RICO claim against fund managers, alleging they had purchased units of a fund in reliance on the managers' misrepresentations.  The investors claimed that the managers committed RICO predicate acts both by violating federal IRS regulations and by violating Georgia securities laws.  Id. at *5.  The Northern District of Georgia granted the investors' motion to remand the case to state court, finding the RICO claims failed the "necessity" requirement for substantial-federal-issue jurisdiction.  Id.  The court reasoned that resolution of the federal IRS issue was not sufficiently necessary considering that "[the investors'] Georgia RICO claim does not rely entirely on federal law because the [investors] also appear to allege a violation of state law—specifically state securities law . . .—as a separate predicate act to the RICO claim."  Id.  Because the investors could thus sustain their RICO claims purely by reference to state law, "[t]he presence of both state and federal predicate acts means that interpreting federal law is not strictly necessary or otherwise 'essential' to the cause of action."  Id.  Hoipkemier's holding typifies a considerable collection of cases from this Circuit that likewise find Georgia

RICO claims alleging both state and federal predicate acts fail the necessity requirement for creating substantial-federal-issue jurisdiction. See, e.g., KJ's Gen. Contractors, Inc. v. J.E. Dunn Constr. Co., No. 4:14-CV–181, 2015 WL 5680379, at *3 (S.D. Ga. Sept. 25, 2015) (resolution of federal law not necessary when "Plaintiffs' Georgia RICO claims do not rest solely on predicate offenses grounded in federal law . . . [given that] Plaintiffs allege that Defendants also violated Georgia's theft by deceiving and theft by conversion statutes"); Neighborhood Mortg., Inc. v. Fegans, No. 1:06-CV-1984, 2007 WL 2479205, at *2 (N.D. Ga. Aug. 28, 2007) ("[T]he federal statutes cited in the complaint . . . to show predicate acts for Plaintiff's state law RICO cause of action . . . are not necessary to the complaint because Plaintiff cited two other state statutes that can stand as predicate acts."); Austin v. Ameriquest Mortg. Co., 510 F. Supp. 2d 1218, 1227 (N.D. Ga. 2007) (even though plaintiff alleged predicate act of federal mail fraud, resolution of federal issue was unnecessary because "plaintiff's allegations of violations of Georgia's theft by deception and theft by taking statutes could serve as plaintiff's predicate acts under Georgia's RICO statute").

Courts typically only find that a state RICO claim requires the resolution of federal issues where, unlike here, the claimant alleges *only* federal predicate acts. For example, in Ayres v. General Motors Corp., 234 F.3d 514, 516 (11th Cir. 2000), car buyers brought Georgia RICO claims against a manufacturer and alleged, as the lone predicate act, that the manufacturer had violated federal mail and wire fraud statutes. The Eleventh Circuit held there was federal-question jurisdiction—finding the "necessity" prong was satisfied because, given the buyers had only alleged a federal predicate act to support their Georgia RICO claims, "resolution of th[e] case depend[ed] entirely on interpretation of the federal mail and wire fraud statutes." Id. at 518; see also TJM Columbus, LLC v. Holiday Hosp. Franchising, LLC, No. 1:22-cv-02541, 2023 WL

11

10407390, at *3 (N.D. Ga. Mar. 27, 2023) (resolution of federal issue necessary to Georgia RICO claim only where "claim [was] predicated solely on a violation of federal law").

These authorities make it clear that Plaintiff's RICO claims cannot satisfy the "necessity" requirement for substantial-federal-issue jurisdiction. As in Hoipkemier and similar cases, Plaintiff has alleged not only federal but also state law predicate acts. Accordingly, Plaintiff does not have to prove that Defendants violated any federal laws to succeed on his RICO claims. Put another way, even if Defendants did not violate any federal laws, Plaintiff could still prevail on his Georgia RICO claims by proving that Defendants committed the state-law predicate acts alleged in the Amended Complaint, such as threatening a witness and murder.

Defendants seek to escape this result by arguing that "the alleged scheme to violate federal immigration laws is the fulcrum that controls every aspect of the Plaintiff's civil RICO claims." (Doc. 373, p. 2; see also doc. 385, pp. 1–5.) In this regard, Defendants point out that the defining feature of the "Davey-Rangel Enterprise" at the center of Plaintiff's RICO claims is a shared purpose to recruit, hire, and harbor illegal aliens in violation of federal law. (Doc. 373, pp. 2–3, 14–20.) Defendants argue that this alleged enterprise requires the Court to resolve federal issues because, if not for the decidedly federal scheme, then Defendants would have had no reason to commit any of the federal, or state, predicate acts. (Id.) Further, Defendants contend, the central nature of the alleged immigration violations makes those federal predicate acts essential to Plaintiff's claims—such that removing them would render all the other predicate acts "a hodgepodge of disparate, isolated incidents" and "unravel the pattern of alleged racketeering activity." (Id. at p. 16; see also doc. 385, p. 3 ("The Plaintiff's inability to prove the '*existence*' of an '*enterprise*' would render the rest of his RICO theory utterly baseless and incoherent.").)

The Court disagrees. To establish a RICO violation, a claimant must show that a defendant controlled or participated in an "enterprise" through a "pattern of racketeering activity." O.C.G.A. § 16-14-4. The federal flavor of Defendants' alleged RICO enterprise here does not necessarily raise a substantial federal issue because "an 'enterprise' itself need not be illicit." Faillace v. Columbus Bank & Tr. Co., 605 S.E.2d 450, 454 (Ga. Ct. App. 2004). Rather, it is the "pattern of racketeering activity"—that is, the predicate acts—that must be illegal. Id. Accordingly, while the immigration scheme at the center of Plaintiff's RICO claims might evoke federal law, the Court need not determine whether the scheme in fact violated federal law to decide whether it fits the bill of a RICO enterprise.[5]

The Court is also unconvinced by Defendants' related argument that, to establish the requisite "pattern of racketeering activity," Plaintiff must prove the "federal predicate acts involving violations of the immigration laws." (Doc. 373, p. 16.) RICO claimants establish a "pattern" of racketeering activity by showing that "two or more"[6] predicate acts occurred in furtherance of the enterprise, and that those predicate acts were "interrelated by distinguishing characteristics and are not isolated incidents." O.C.G.A. § 16-14-3(4)(A). Predicate acts satisfy this interrelatedness requirement when they "have the same or similar intents, results, accomplices, victims, or methods of commission." Id. Here, in addition to the federal crimes, Plaintiff has alleged eight predicate acts under Georgia law—many of which share the same intent,

---

[5] To put a finer point on this issue, even if Defendants' employees were lawfully in the United States and Defendants only mistakenly believed that they had violated federal immigration laws, Plaintiff's RICO claims would not "fall away," (doc. 373, p. 16). Rather, Plaintiff could still prevail on his RICO claims by proving that, to cover up employment activities that turned out to be lawful under federal law, Defendants committed or conspired to commit two or more of the state-law predicate acts alleged in the Amended Complaint.

[6] InterAgency, Inc. v. Danco Fin. Corp., 417 S.E.2d 46, 53 (Ga. Ct. App. 1992).

13

accomplices, and victims.  (Doc. 123; see also doc. 196.)  For instance, Plaintiff alleges that the two state-law predicate acts of threatening a witness and murder were committed in quick succession by the same person, Rangel, against the same victim, Montoya.  (See generally docs. 123 & 196.)  These state-law predicate acts, regardless of the alleged federal crimes, could alone satisfy the interrelatedness requirement and establish a pattern of racketeering activity. Accordingly, contrary to Defendants' contention that Plaintiff's claims would "unravel" without proving the federal illegality of the immigration scheme, assessing whether Defendants violated federal law is not strictly necessary or otherwise essential to assessing Plaintiff's Georgia RICO claims.

For all these reasons, Plaintiff's RICO claims do not necessarily raise a federal issue.  The Court therefore cannot exercise federal question jurisdiction over those claims. [7]

**B**.    **Plaintiff's RICO Claims do not Meet the Substantiality Requirement.**

Even if Plaintiff's Georgia RICO claims did satisfy the necessity requirement, the federal issues Defendants have identified are not sufficiently substantial to create federal question jurisdiction.  A federal issue is not "substantial" when it merely entails the application of established federal laws to a given set of facts.  Rather, the federal issue must "substantially involve a dispute or controversy respecting the validity, construction or effect of federal law."  Dunlap, 381 F.3d at 1290 (alterations adopted) (quoting Mobil Oil, 671 F.2d at 422).

Once more, Hoipkemier v. Miller is illustrative.  2024 WL 4829486, at *5.  After finding resolution of a federal issue was not necessary to the investors' Georgia RICO claims, the court observed that, even if the RICO claims *did* depend on proving the alleged IRS predicate act, the

---

[7]  Also, neither the federal government's previous intervention here nor the existence of related federal criminal proceedings confer jurisdiction.  See Hoipkemier, 2024 WL 4829486, at *5 n.4 ("[T]he mere existence of a separate investigation involving federal law does not present a federal question that this Court must decide.").

14

federal issues presented by that inquiry would fail at the "substantiality prong." Id.  In reaching this conclusion, the court was persuaded that determining whether the IRS predicate act occurred would only require "simple application of a federal regulation," rather than "a legal interpretation of the meaning of a federal statue or regulation."  Id.  Hoipkemier's finding that fact-specific application of settled federal law does not present a substantial federal issue, again, represents the consensus view of courts in this Circuit.  See, e.g., Adventure Outdoors, 552 F.3d at 1299 (federal issue not sufficiently substantial where it concerned the "factual basis" for defendants' alleged violations of federal law and "[c]lear federal guidance exist[ed]"); Bates v. Great Lakes Power Serv. Co., No: 8:19-cv-2378, 2019 WL 13245177, at *5 (M.D. Fla. Dec. 3, 2019) ("[C]ases that present near 'pure issues of law' . . . are more likely to qualify as substantial, and cases that are 'fact-bound and situation-specific' . . . are less likely to qualify as substantial." (alteration adopted) (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700–01 (2006))).

Unlike in Hoipkemier and similar cases, the federal issues involved in Ayres v. General Motors Corp., 234 F.3d at 514, called for nuanced legal analysis that would potentially impact future applications of federal law.  The federal predicate act alleged by the car buyers in that case required determination of whether the National Traffic and Motor Vehicle Safety Act created a duty for manufacturers to disclose safety defects and, in turn, whether breaching such a duty could violate federal mail fraud statutes.  Id. at 519–20.  The Eleventh Circuit observed that resolving these questions required a layered interpretation of multiple federal statutes and had the potential to leave a lasting impact on "a matter of considerable magnitude and substantial federal interest." Id. at 520.

Here, the federal issues underlying Plaintiff's allegations as to both Defendants' enterprise and their predicate acts are far closer to the factually intensive but legally straightforward inquiries

15

in <u>Hoipkemier</u> than the substantial questions presented in <u>Ayres</u>.  Again, Defendants contend that whether they complied with federal immigration law is the "fulcrum" of Plaintiff's claims.  (Doc. 373, p. 2.)  They argue that "the success of the Plaintiff's RICO claim turns on a finding of whether the defendants willfully failed to comply with the regulations and programs within the federal immigration framework, including that they 'purposefully chose not' to comply with the 'U.S. Department of Homeland Security E-Verify program' or file valid I-9 forms."  (<u>Id.</u> at p. 18.)  Even if Plaintiff's RICO claims required such a showing to succeed—which, for the reasons stated above, they do not—whether Defendants complied with the E-Verify program or filed valid I-9 forms is a straightforward legal question.  Such a determination requires a "simple application of a federal regulation," rather than "a legal interpretation of the meaning of a federal statute or regulation."  <u>Hoipkemier,</u> 2024 WL 4829486, at *5.  To this point, in opposing Plaintiff's request to remand, Defendants have not identified a single dispute of federal law, such as an ambiguous statute, a contradictory regulation, or a split in precedent, that the Court would have to resolve to address Plaintiff's claims.  (<u>See generally</u> docs. 372, 373, 385.)  The questions of whether Defendants sought to violate federal immigration laws in forming their enterprise and whether they violated the federal immigration laws through their predicate acts involve law that is settled and facts that are in dispute, not the inverse.  Indeed, despite the years of extensive motions practice, Defendants have not asked the Court to rule on any substantial question of federal immigration law.  It simply cannot be said that the "the federal right or immunity that forms the basis of [Plaintiff's RICO claims] . . . are such that the claim[s] will be supported if the federal law is given one construction or effect and defeated if it is given another."  <u>Dunlap</u>, 381 F.3d at 1290 (quoting <u>Mobil Oil</u>, 671 F.2d at 422).[8]

---

[8]  Furthermore, this is not a situation like in <u>Ayres</u>, 234 F.3d at 518, where the need to analyze the interaction between multiple federal statutes created a substantial issue.  The closest Defendants come to raising this

For all these reasons, even if Plaintiff's Georgia RICO claims required the Court to determine an issue of federal law, that issue is not sufficiently substantial to confer federal question jurisdiction.

## CONCLUSION

This ruling comes after the parties and the Court have expended considerable time and resources on the merits of this case under the assumption that jurisdiction existed. The Court erroneously based its assumption on the parties' representations, including Plaintiff's statement in his Amended Complaint that "[t]his Court has subject matter jurisdiction . . . as the RICO claims raise issues of substantial importance and serious federal interests." (Doc. 123, p. 3.) The Court does not begrudge Plaintiff for raising the issue of subject matter jurisdiction as it is a threshold issue that cannot be waived. That said, the Court does not appreciate the manner by which Plaintiff argued for removal. For one, Plaintiff repeatedly warned the Court that, if it did not address subject matter jurisdiction, it would be subject to reversal by the Eleventh Circuit Court of Appeals. (See, e.g., doc. 364, p. 1 ("It is becoming increasingly evident that this case will be appealed to the Eleventh Circuit . . . . Upon appeal of this case, the Eleventh Circuit will not be . . . satisfied."); id.

---

argument is in the limited substantive discussion included in Defendant Branch's notice of joinder. (Doc. 372, p. 2.) Branch suggests that, because the alleged RICO predicate acts include violations of both federal immigration laws and federal mail and wire fraud statutes, they raise federal issues requiring "interpretation of federal immigration law and its interplay with other federal criminal statutes." (Id.; see also Ayres, 234 F.3d at 518 (substantial-federal-issue jurisdiction existed where "th[e] case depend[ed] entirely on interpretation of the federal mail and wire fraud statutes *and their interaction with* the Safety Act") (emphasis added).) But Branch's observation of potential "interplay" between federal statutes does not confer jurisdiction. First, Branch's suggestion that not only the immigration predicate acts, but also the wire fraud predicate acts are necessary to Plaintiff's RICO claims is questionable—especially given Defendants' own assertion that the immigration offenses, alone, are "the fulcrum that controls every aspect of the Plaintiff's civil RICO claims." (Doc. 373, p. 2.) Second, even if the RICO claims did require interpretation of the "interplay" between multiple federal laws, Defendants cite no authority suggesting that this fact would render the otherwise straightforward federal issues sufficiently substantial for jurisdiction. See Hoipkemier, 2024 WL 4829486, at *5 (federal issue not sufficiently substantial even though it "'involve[d] two levels of federal questions' due to the interaction between (a) IRS regulations and (b) federal mail and wire fraud"). Put another way, the fact that multiple federal statutes are at play would not in and of itself make the questions raised by those statutes substantial.

at p. 7 ("[U]pon the eventual appeal of this case to the Eleventh Circuit, that court too will have to make the [subject matter jurisdiction] inquiry. . . . [T]he Eleventh Circuit will not be . . . satisfied, as this Court lacks subject matter jurisdiction."); doc. 378, p. 2 ("[E]ven if this Court were to forego a determination of subject matter jurisdiction, upon appeal to the Eleventh Circuit, *that* court would have to make such a determination.") (emphasis in original).)  The Court understands its Orders are subject to review and does not need to be reminded of that fact.  Moreover, the Court always endeavors to reach the right result regardless of the prospect of appeal.  More concerning, in both his Motion and his Reply, Plaintiff never acknowledges that, directly opposite to his current arguments, he asserted in his Amended Complaint that this case fell within the Court's subject matter jurisdiction because his RICO claims "raise issues of substantial importance and serious federal interests."  (Doc. 123, p. 3.)  The Court understands that Plaintiff was mistaken in that assertion.  Nevertheless, basic principles of candor should have compelled Plaintiff's counsel to at least acknowledge their prior, contradictory statements to the Court.  Plaintiff's counsel should keep in mind that others may be more willing to listen to them when they are right if they are willing to admit when they are wrong.

At any rate, while Plaintiff's conduct and prior representations have been noted, they do not allow the Court to exercise jurisdiction.  As other courts have observed: "Though the plaintiff is generally 'the master of the complaint,' a plaintiff cannot create federal jurisdiction . . . simply by alleging a federal claim where in reality none exists."  Empire HealthChoice Assur., Inc. v. McVeigh, 396 F.3d 136, 140 (2d Cir. 2005) (internal citations omitted).  And, despite the numerous rulings that have been issued, the Court remains obligated to remand this case if, as here, "at any time before final judgment it appears that [the Court] lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  Accordingly, because Plaintiff's state claims do not necessarily raise a substantial

federal issue, the Court lacks subject matter jurisdiction and must **GRANT** Plaintiff's Renewed Motion to Remand.  (Doc. 364.)  The Court **REMANDS** this case to the State Court of Chatham County.  The Court furthermore **DIRECTS** the Clerk of Court to **TERMINATE** Defendant Branch's Motion for Judgment on the Pleadings, (doc. 310), Plaintiff's (second) Motion for Reconsideration, (doc. 334), and any other pending motions.

**SO ORDERED**, this 25th day of March, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA